# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Bostwick Laboratories, Inc., *et al.*,[1] | Case No. 17-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF
INTERIM AND FINAL ORDERS AUTHORIZING
THE DEBTORS TO PAY PREPETITION WAGES, COMPENSATION,
EMPLOYEE BENEFITS AND OTHER ASSOCIATED OBLIGATIONS**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") file this *Motion of the Debtors for Entry of Interim and Final Orders Authorizing the Debtors to Pay Prepetition Wages, Compensation, Employee Benefits and Other Associated Obligations* (the "Motion"). In support hereof, the Debtors respectfully submit the following:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtors confirm their consent pursuant to Rule 9013-1(f) of the *Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware* (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): (i) Bostwick Laboratories, Inc., a Delaware corporation (3169); and (ii) Bostwick Laboratories Holdings, Inc., a Delaware corporation (1042). The mailing address for the Debtors is 100 Charles Lindbergh Blvd., Uniondale, NY 11553.

parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. The statutory bases for the relief requested herein are sections 105(a), 363(b), 507(a), and 541 of title 11 of the United States Code (11 U.S.C. §§ 101 *et. seq.*, the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4. On March 15, 2017 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases.

5. The Debtors operate an independent, full-service anatomic pathology laboratory and are a specialty provider of diagnostic testing services for urologists and gynecologists in the U.S. The Debtors operate a reference laboratory offering a comprehensive suite of anatomic pathology and molecular testing services to independent physicians nationally.

6. The Debtors continue to operate their business and manage their property as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7. No trustee, examiner, creditors' committee, or other official committee has been appointed in these chapter 11 cases.

8. Additional information regarding the Debtors and these cases, including the Debtors' business, organizational structure, financial condition, and the reasons for and objectives of these cases, is set forth in the *Declaration of Tammy Hunt in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

# RELIEF REQUESTED

9. By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"): (a) authorizing the Debtors to: (i) pay and/or perform, as applicable, prepetition obligations to current employees including accrued prepetition wages, salaries, commissions, incentives and other cash and non-cash compensation claims (collectively, the "Employee Wage Obligations"); (ii) maintain and continue to honor their practices, programs, and policies for their employees that were in effect as of the Petition Date, as such may be modified, amended or supplemented from time to time in the ordinary course, including without limitation, the continuation and maintenance of the Debtors' various employee benefit plans and programs (and to pay all fees and costs in connection therewith, including those that arose prepetition) (collectively, the "Employee Benefit Obligations"); (iii) reimburse employees for prepetition expenses incurred on behalf of the Debtors in the ordinary course of business (the "Employee Expense Obligations"); (iv) continue to pay and/or contest in good faith all amounts related to workers' compensation claims that arose prepetition (the "Workers' Compensation Obligations"); (v) pay all related prepetition withholdings and payroll-related taxes and deductions (the "Employer Taxes and Deductions" and collectively with the Employee Wage Obligations, Employee Benefit Obligations, Employee Expense Obligations and Workers' Compensation Obligations, the "Employee Obligations") associated with the Employee Wage Obligations and Employee Benefit Obligations (each, as described herein) and (b) authorizing and directing financial institutions to receive, process, honor, and pay all related checks and electronic payment request for payment of any prepetition Employee Obligations.

10. The Debtors submit that it is in the best interest of their estates for this Court to authorize the Debtors to make such payments and honor obligations owed to, or for the benefit of, the Employees so as to enable the Debtors to maintain morale, retain their remaining Employees during this critical time, and minimize the personal hardship such Employees may suffer if prepetition employee-related obligations are not paid when due or honored as expected. At this critical stage of these chapter 11 cases, the Debtors simply cannot risk the substantial disruption that would accompany any decline in workforce morale resulting from the Debtors' failure to pay the Employee Obligations in the ordinary course of their businesses, which could jeopardize the Debtors' efforts to preserve and maximize the value of their assets in these cases for the benefit of their creditors.

## THE DEBTORS' EMPLOYEE OBLIGATIONS

### A. Overview of the Debtors' Workforce

11. As of the Petition Date, the Debtors employ 193 employees (the "Employees").

12. The Debtors' Employees perform a variety of critical functions relating to the Debtors' business, including billing and registration, sales and marketing, and laboratory operations. The remaining Employees' skills, knowledge, and understanding of the Debtors' infrastructure, operations and business relations are essential in connection with the restructuring of the Debtors' business.

13. Just as the Debtors depend on the Employees to maintain the business on a daily basis, these individuals also depend on the Debtors. Indeed, the vast majority of these individuals rely exclusively on payments received from the Debtors for their basic living necessities.

B.  **The Employee Wage Obligations**

14. In the ordinary course of business, the Debtors incur payroll obligations for salaries, hourly wages, commissions, and incentives owed to their Employees. Salaries and hourly wages for the Employees are paid bi-weekly. The Employees are paid on a Thursday for amounts earned through the prior Saturday (e.g., the payroll paid on March 9, 2017 covered the period through March 4, 2017). Commissions and physician incentives are paid monthly. The commissions and incentives earned in a month are paid at the end of the subsequent month (e.g., amounts earned for February 2017 are due to be paid the end of March 2017).

15. The average total monthly payroll obligations are approximately $2.1 million for the Employees.

16. The Debtors administer their payroll and the disbursements of payroll funds to Employees through ADP, LLC ("ADP").

17. As of the Petition Date, the Debtors estimate that they owe approximately $71,000 per day to their Employees for prepetition Employee Wage Obligations since the last payroll on March 13, 2017 earned through March 11 2017. In addition, the Debtors' owe approximately $110,000 and $65,000 respectively in unpaid commissions and incentives earned from February 1, 2017 through the Petition Date (collectively with the unpaid payroll, the "Prepetition Wage Obligations").

18. By this Motion, the Debtors seek the authority to pay and honor Prepetition Wage Obligations and to continue to honor the Employee Wage Obligations on a postpetition basis in the ordinary course of business.

C.  **Other Benefits: Vacation, Personal, Sick Time, and Reimbursable Expenses**

19. The Debtors offer their Employees other benefits, including vacation time, paid holidays, other personal time off, and reimbursement of certain business expenses. These benefits are usual and customary, and they are necessary to enable the Debtors to retain qualified employees to operate their businesses.

  i. *Paid Time Off*

20. Generally, the Debtors' Employees are eligible to accrue paid vacation ("PTO"). PTO can be used as vacation time, sick time or to take care of personal matters. PTO for vacation cannot be carried over without specific approval, but can be paid out. Sick time and personal time may carry over but there is no payout. Generally, Employees may use their PTO at their discretion, subject to management preapproval of the timing of vacation time.

21. As of the Petition Date, the Debtors estimate that they are responsible for unused PTO totaling approximately $166,407 for Employees.

22. By this Motion, the Debtors seek authority, but not direction, to continue their PTO policies in the ordinary course of business on a postpetition basis. None of the Debtors' Employees will receive an aggregate amount in excess of the statutory cap of $12,850 under Bankruptcy Code section 507(a)(4) on account of Employee Wage Obligations and PTO.

  ii. *The Employee Expense Obligations*

23. By this Motion, the Debtors seek authority to pay all prepetition Reimbursable Expenses (as defined below) in the ordinary course of business. The Debtors routinely reimburse Employees for certain expenses within the scope of their employment, including expenses for travel and out-of-pocket business related expenses (collectively, the "Reimbursable Expenses"). The Debtors require the expense reports to be submitted and the Debtors process the expense reimbursements every two weeks. As of the Petition Date, certain

Employees have not yet been reimbursed for Reimbursable Expenses previously incurred. The Debtors typically pay approximately $40,000 in Reimbursable Expenses per month. Based on the two week processing time the Debtors may have requests for reimbursement outstanding as of the Petition Date and there may be certain additional Reimbursable Expenses for which a reimbursement request has not yet been received by the Debtors (collectively, the "Unpaid Business Expenses").

24. To avoid unnecessary disruption, and due to the nature of delay sometimes associated with the timely submission of expense reports, the Debtors seek the authority to pay the Unpaid Reimbursable Expenses in an amount not to exceed $40,000 and to continue to honor such Reimbursable Expenses in the ordinary course of business postpetition.

D. **Employee Benefit Plans**

25. Certain of the Debtors' employees and their dependents participate in a number of employee benefit plans (the "Participating Employees"). The Debtors provide medical, dental, vision, short-term and long-term disability insurance, life insurance plans, health savings accounts and 401(k) plans (collectively, the "Employee Benefit Plans").

   i. *Medical, Dental, Vision, Health Savings Accounts and 401(k) Plans*

26. The Debtors offer medical benefits to the Participating Employees. The Debtors estimate that they pay approximately $102,000 per month in premiums to United HealthCare Services, Inc. ("UHC") for coverage under the medical, dental and visions plans. As of the Petition Date, the Debtors estimate that there are no prepetition amounts due to UHC for premiums under the plans.

27. The Debtors offer Health Savings Accounts (the "HSA's") to the Participating Employees. Employees can elect to contribute a maximum amount of $1,000 to be

used for health related expenditures. The Debtors are billed monthly for these expenditures by the administrator. Employees can elect to spend the entire amount of their elected contribution at any time throughout the plan year. Year to date 2017, the Company has expended approximately $23,000 of a potential annual obligation of $46,000.

28. The Debtors provide their Employees with the ability to participate in a 401(k) retirement savings plan (the "401(k) Plan") managed by Transamerica Corporation ("Transamerica"). The Debtors match 25% up to 6% of the Employees' base salary. The maximum matched amount for each Employee is $1,000. As of the Petition Date, the Debtors have approximately $81,000 in company match unpaid for the 2016 Plan Year. There is currently no estimate of a potential match for the 2017 Plan Year

29. By this Motion, the Debtors seek authority to continue offering the Medical Plan, Dental Plan, Vision Plan and 401(k) Plan in the ordinary course of business.

> ii. *Life, Short-Term Disability, Long-Term Disability Insurance and Employee Assistance Programs*

30. The Debtors offer certain insurance coverage to their Employees. With respect to Employees, the Debtors offer short-term disability, long-term disability, basic term life, optional life and accidental death and dismemberment insurance (collectively, the "Employee Insurance"). The Debtors pay approximately $7,500 in monthly premiums for the Employee Insurance. As of the Petition Date, the Debtors estimate that $22,500 is due for premiums under the Employee Insurance.

31. By this Motion, the Debtors seek authority to continue offering Employee Insurance in the ordinary course of business.

E. **The Workers' Compensation Obligations**

32. The Debtors participate in a workers' compensation insurance policy (the "Workers' Compensation Program") with Federal Insurance Company. The Workers' Compensation Program premiums cost approximately $126,793 per year. As of the Petition Date, the Debtors estimate that premiums under the Worker's Compensation Program are paid currently and there are no monthly amounts due and owing.

33. By this Motion, the Debtors request the authority to continue the Workers' Compensation Program in the ordinary course of business on a postpetition basis.

F. **Employer Taxes and Deductions**

34. The Debtors routinely withhold from Employee paychecks amounts that the Debtors are required to transmit to third parties (the "Employer Taxes and Deductions"). The Employer Taxes and Deductions may include deductions for garnishments and child support and withholdings related to social security, Medicare and Medicaid, federal, state, and local income taxes, and employment insurance. As noted above, the Debtors administer their payroll and the disbursements of payroll funds to Employees through ADP. ADP calculates and makes the necessary disbursements to the relevant taxing or other authorities for the Employer Taxes and Deductions.

35. ADP may hold accrued but not remitted Employer Taxes and Deductions for their Employees (the "Unremitted Employer Taxes and Deductions"). However, the Debtors have submitted all required amounts to ADP. By this Motion, the Debtors seek authority for ADP to remit any Unremitted Employer Taxes on account of prepetition obligations and to continue collecting and disbursing the Employer Taxes and Deductions in the ordinary course of business on a postpetition basis.

**BASIS FOR RELIEF**

36. Bankruptcy Code sections 507(a)(4) and (a)(5) provide that the Debtors' Employees have priority claims for accrued wages, salaries, commissions, vacation, severance, sick leave and contributions to employee benefit plans. 11 U.S.C. §§ 507(a)(4) and (a)(5). Each Employee's aggregate priority claim is limited to $12,850 under the Bankruptcy Code. *Id.* The Debtors believe that the Prepetition Wage Obligations and other benefits earned within one hundred and eighty (180) days of the Petition Date that the Debtors seek to pay are entitled to priority status under Bankruptcy Code sections 507(a)(4) and (a)(5), not to exceed the statutory cap of $12,850 per Employee.

37. Additionally, the Court has the authority under Bankruptcy Code sections 105(a), 1107(a) and 1108, 363(b) and the "necessity of payment" doctrine to grant the relief requested herein. The payments to Employees are vital to the Debtors' ability to transition smoothly into chapter 11 and preserve their going concern value.

38. Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition employee obligations in appropriate circumstances. Pursuant to Bankruptcy Code sections 1107(a) and 1108, a debtor-in-possession is authorized to operate its businesses while maintaining a "fiduciary duty to act in the best interest of the estate as a whole, including their creditors, equity interest holders and other parties in interest." *LaSalle Nat'l Bank v. Perelman,* 82 F.Supp.2d 279, 292 (D. Del. 2000). Implicit in the fiduciary duties of any debtor-in-possession is the obligation to "protect and preserve the estate, including an operating businesses' going-concern value." *In re CoServ, L.L.C.,* 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid

exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* In the instant case, the Debtors are operating as debtors-in-possession consistent with Bankruptcy Code sections 1107(a) and 1108 and payment of the Employee Obligations is necessary to protect and preserve the Debtors' business operations and going concern value. Thus, the Court should authorize the relief requested in this Motion.

39. Additionally, Bankruptcy Code section 363(b)(1) states in pertinent part that: "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." If the debtor's determination to use estate assets represent a reasonable businesses judgment, the bankruptcy court should approve such use. Moreover, this Court has approved the payment of prepetition claims of employees for wages, salaries, expenses, and benefits on the ground that the payment of such claims was necessary to effectuate a successful reorganization or liquidation. *See, e.g., In re Swift Energy Co.,* Case No. 15-12670 (MFW) (Bankr. D. Del. Jan. 5, 2016); *In re Endeavour Operating Corp.,* Case No. 14-12308 (KJC) (Bankr. D. Del. Oct. 15, 2014); *In re Filene's Basement, LLC,* Case No. 11-13511 (KJC) (Bankr. D. Del. Nov. 4, 2011); *In re Indianapolis Downs, LLC,* Case No. 11-11046 (BLS) (Bankr. D. Del. Apr. 8, 2011); *In re American Safety Razor Co. LLC,* Case No. 10-12351 (MFW) (Bankr. D. Del. July 30, 2010). Bankruptcy Code section 105(a) further provides, in pertinent part, that a "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The "necessity of payment" doctrine also authorizes the relief requested in this Motion because the Employees are indispensable to both the Debtors' operations and the successful resolution of these cases.

40. As set forth herein and in the First Day Declaration, the Employees are essential to the restructuring of the Debtors' businesses, and the Employees' morale directly affects their effectiveness and productivity. Consequently, it is critical that the Debtors continue, in the ordinary course, those personnel policies, programs, and procedures that were in effect prior to the Petition Date. If the checks issued and electronic fund transfers requested in payment of any of the compensation or other Employee obligations are dishonored, or if such obligations are not timely paid postpetition, the Employees may suffer extreme personal hardship and may be unable to pay their daily living expenses. A loss of employee morale and goodwill at this critical juncture would undermine the Debtors' stability, and undoubtedly would have an adverse effect on the Debtors, their customers, the value of their assets and businesses, and their ability to achieve their objectives in chapter 11. As noted by the court in *In re Equalnet Communications Corp.,* 258 B.R. 368 (Bankr. S.D. Tex. 2000), "the need to pay pre-petition employee wage claims in an ordinary course of business time frame is simple common sense. Employees are more likely to stay in place and to refrain from actions which could be detrimental to the case and/or the estate if their pay and benefits remain intact and uninterrupted." *Id.* at 370.

41. As part of the foregoing relief, the Debtors also seek authority to pay all Employer Taxes and Deductions. The failure to make such payments may also subject the Debtors and their officers to federal or state liability. *See City of Farrell v. Sharon Steel Corp.,* 41 F.3d 92 (3d Cir. 1994) (state law requiring debtor to withhold city income tax from their employees' wages created trust relationship between debtor and city for payment of withheld taxes); *DuCharmes & Co. v. Michigan (In re DuCharmes & Co.),* 852 F.2d 194 (6th Cir. 1988) (noting the special liabilities for failure to pay trust fund taxes). Moreover, the monies payable

for amounts held in trust like the Employer Taxes and Deductions generally are not property of a debtor's estate. *See Begier v. IRS,* 496 U.S. 53, 59 (1990) (because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate"). The failure to transfer these withheld funds could result in hardship to certain Employees or others. Furthermore, if the Debtors cannot remit these amounts, the Employees may face legal action due to the Debtors' failure to submit these payments.

42. Additionally, payment of Employer Taxes and Deductions that constitute "trust fund" taxes will not prejudice general unsecured creditors of the Debtors' estates as the relevant taxing authorities would hold priority claims under Bankruptcy Code section 507(a)(8) in respect of such obligations. Moreover, the monies payable for trust fund taxes, as well as the other funds that are held in trust for the benefit of third parties, such as withheld funds with respect to the Debtors' 401k plan, are not property of the Debtors' estates.

43. The relief requested in this Motion is necessary to the viability of the Debtors' businesses and maximization of the value of the Debtors' assets. Accordingly, the Debtors submit that the relief sought herein is consistent with Bankruptcy Code sections 105(a), 507(a), and 541.

44. Nothing in this Motion, nor any payments made by the Debtors pursuant to this Motion, shall be deemed an assumption or rejection of any Employee Benefit Plan, employment agreement, other program or contract, or otherwise affect the Debtors' rights under Bankruptcy Code section 365 to assume or reject any executory contract between the Debtors and any Employee, plan administrator or service provider.

## **REQUEST FOR IMMEDIATE RELIEF**

45.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, authorizing the Debtors to satisfy obligations to Employees in the ordinary course of business, as well as granting the other relief requested herein, is integral to the Debtors' ability to transition their operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

46.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### RESERVATION OF RIGHTS

47.     Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any ground; (c) a promise or requirement to pay any claim; (d) an admission that any particular claim is of a type specified or defined hereunder; (e) a request to assume any executory

contract or unexpired lease; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## NOTICE

48. Notice of this Motion shall be given to: (i) the office of the United States Trustee for the District of Delaware; (ii) those creditors holding the 20 largest unsecured claims on a consolidated basis against the Debtors' estates; (iii) Bank of America, N.A.; and (iv) the debtor-in-possession lender (the "DIP Lender"). As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

49. No prior motion for the relief requested herein has been filed in this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and Final Order granting the relief requested herein and such other and further relief to which the Debtors may be justly entitled.

Dated: March 15, 2017  
Wilmington, Delaware

Respectfully submitted,

PEPPER HAMILTON LLP

/s/ David B. Stratton
David B. Stratton (DE No. 960)
Evelyn J. Meltzer (DE No. 4581)
John H. Schanne, II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390

*Proposed Counsel for the Debtors*