**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Bostwick Laboratories, Inc., *et al.*,[1] | Case No. 17-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS
TO HONOR CERTAIN OBLIGATIONS TO CUSTOMERS AND CONTINUE
PREPETITION CUSTOMER PRACTICES IN THE
<u>ORDINARY COURSE OF BUSINESS</u>**

The above-captioned debtors and debtors-in-possession (collectively, the "<u>Debtors</u>") file this *Motion for Entry of an Order Authorizing the Debtors to Honor Certain Obligations to Customers and Continue Prepetition Customer Practices in the Ordinary Course of Business* (the "<u>Motion</u>"). In support hereof, the Debtors respectfully submit the following:

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtors confirm their consent pursuant to Rule 9013-1(f) of the *Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware* (the "<u>Local Rules</u>") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): (i) Bostwick Laboratories, Inc., a Delaware corporation (3169); and (ii) Bostwick Laboratories Holdings, Inc., a Delaware corporation (1042). The mailing address for the Debtors is 100 Charles Lindbergh Blvd., Uniondale, NY 11553.

parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. The statutory bases for the relief requested herein are sections 105(a), 363(b), 363(c), 1107(a) and 1108 of title 11 of the United States Code (11 U.S.C. §§ 101 *et. seq.*, the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4. On March 15, 2017 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases.

5. The Debtors operate an independent, full-service anatomic pathology laboratory and are a specialty provider of diagnostic testing services for urologists and gynecologists in the U.S. The Debtors operate a reference laboratory offering a comprehensive suite of anatomic pathology and molecular testing services to independent physicians nationally.

6. The Debtors continue to operate their business and manage their property as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7. No trustee, examiner, creditors' committee, or other official committee has been appointed in these chapter 11 cases.

8. Additional information regarding the Debtors and these cases, including the Debtors' business, organizational structure, financial condition, and the reasons for and objectives of these cases, is set forth in the *Declaration of Tammy Hunt in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

## THE DEBTORS' CUSTOMER PROGRAMS

9. In the ordinary course of business, the Debtors bill insurance companies of customers that receive services from their clinical laboratory and also individual customers. In certain instances, after a customer pays the Debtors for a service, the customer's insurance company remits payment for the same underlying service to the Debtors. The Debtors are periodically informed by the individual customers of the double payment and a refund request is made by customer for the overpayment/duplicate billing. The Debtors then remit refunds to the individual customers (the "Individual Refunds") in the ordinary course of business. As of the Petition Date, the Debtors estimate that there are approximately $145,000 of Individual Refunds related to prepetition services outstanding.

10. Additionally, a substantial portion of the Debtors' business involves individuals for whom services are paid for through government programs such as Medicare or by other third parties such as insurance companies (collectively, the "Third Party Payors"). In the ordinary course of their business, the Debtors routinely bill the Third Party Payors for services rendered to individuals who are covered by the Third Party Payors' programs. In rendering payment on such bills, the Third Party Payors occasionally reimburse for services that are more appropriately payable by another payor, or for various reasons are paid in error. In the ordinary course of business and pursuant to the applicable programs, the Debtors remit those funds to the Third Party Payors or those overpayments are subsequently withheld from later payments by the Third Party Payors to the Debtors (collectively, the "Third Party Refunds"). Through this process, the Debtors are appropriately compensated for the services performed and the Third Party Payors are refunded overpayments. The Debtors estimate that on average approximately $20,000 of Third Party Refunds are processed each month. The Third Party Refunds can relate to payments made to the Debtors anywhere from approximately two weeks ago to two years ago.

As a result, it is not possible for the Debtors to estimate the amount of Third Party Refunds outstanding as of the Petition Date.

11. In 2016, the Debtors ceased offering three specific tests that were being performed at a testing laboratory that was neither owned nor operated by the Debtors. The Debtors marketed the tests to their customers, who order the tests from the Debtors. These tests (known as "referral tests" or "send out tests") were referred by the Debtors to the testing laboratory, which performed the tests and billed the Debtors. The Debtors in turn billed their customers for the tests. The tests were halted due to the laboratory's inability to obtain the appropriate clinical validation of their results. Because the laboratory was unable to obtain the appropriate validation, all of the tests were voided and the Debtors are therefore unable to provide their customers with a valid test result. The Debtors therefore need to reimburse the amounts paid to them. The Debtors have notified the third party providers who will reprocess the claims in due course. As of the Petition Date, the Debtors estimate that there are approximately $96,000 of Individual Refunds and Third Party Refunds related to this prepetition event that remain outstanding.

12. The Debtors' relationships with their customers and the Third Party Payors are the backbone of their business. The Debtors' ability to honor and perform their obligations with respect to their customers and the Third Party Payors is critical to the goodwill the Debtors have worked hard to establish. Attendant to such goodwill is the Debtors' ability to charge customers and Third Party Payors correctly and issue refunds when appropriate. These practices have allowed the Debtors to develop and sustain a positive reputation in the marketplace for their services. The Debtors' business and, ultimately, the success of the Debtors'

proposed expedited sales process, depends largely on maintaining the loyalty of their customer base and the Third Party Payors.

13. Further, the Debtors' reimbursements from the Third Party Payors must continue to flow seamlessly despite these cases. Even a slight disruption in the flow of these reimbursements would have disastrous effects on the Debtors' operations.

14. Unless the Debtors can take the measures requested by this Motion, the Debtors believe that the bankruptcy filing itself will have a negative impact on the Debtors' businesses. In particular, if customers perceive that the Debtors are unable or unwilling to issue Individual Refunds and permit Third Party Refunds, the Debtors' goodwill and business relationships may erode. To prevent any such occurrence, the Debtors desire to honor and perform their prepetition Individual and Third Party Refund obligations and to continue to issue Refunds and permit Third Party Refunds postpetition in the ordinary course. Such relief is necessary to preserve the Debtors' critical customer relationships and goodwill, thereby maximizing the value of the Debtors' business and assets for the benefit of the estates.

**RELIEF REQUESTED**

15. By this Motion, the Debtors respectfully request the entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing, but not directing, the Debtors, in their business judgment and sole discretion, to honor and perform their prepetition Individual and Third Party Refund obligations and to continue to issue Refunds and permit Third Party Refunds postpetition in the ordinary course.

#43037315 v1

**BASIS FOR RELIEF**

**A.      Continuing the Customer Programs in the Ordinary Course of Business Is Warranted.**

16.      Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under section 363(b), courts in this jurisdiction require only that the debtor "show that a sound business purpose" justifies the proposed use of property. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b) of the Bankruptcy Code). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

17.      Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity." 11 U.S.C. § 105(a).  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re Lehigh &New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to  debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of

the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan). Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this Court may grant the relief requested herein.

18. The foregoing rationale for authorizing payments under Bankruptcy Code section 363(b) and the doctrine of necessity holds particularly true for the relief requested herein under the circumstances of these chapter 11 cases. Honoring the Individual and Third Party Refunds due on account of prepetition overpayments and continuing to permit appropriate Individual and Third Party Refunds in the manner set forth herein is critical to maintaining the Debtors' operations. In the Debtors' business judgment, the uninterrupted ability to issue and honor Individual and Third Party Refunds is essential to maintaining customer satisfaction and the value of the Debtors' business and assets. In the competitive market in which the Debtors operate, even a short delay by the Debtors in honoring the Individual and Third Party Refunds could cause customers to take their business to the Debtors' competitors and cause irreparable harm to the value of their business and assets. Further, an uninterrupted payment stream from the Third Party Payors is critical to the Debtors' operations.

19. The total amount requested to be refunded to customers and Third Party Payors is minimal compared with the losses that the Debtors could suffer if the patronage of their customers or the Third Party Payors erodes at the outset of these cases. In sum, maintenance of the ability to honor and issue Individual and Third Party Refunds is essential to the continuation

of the Debtors' business pending a sale of some or all of the Debtors' business and assets and, ultimately, to the prospects for a successful chapter 11 case.

20. The Debtors submit that substantial benefits will inure to the estates, creditors and other parties-in-interest as a result of the Debtors honoring Individual and Third Party Refunds. Accordingly, entry of an order authorizing the Debtors to honor the Individual and Third Party Refunds is necessary and appropriate to maintain the Debtors' going concern value pending a sale.

## BANKRUPTCY RULE 6003 IS SATISFIED

21. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, the ability to honor and issue Individual and Third Party Refunds is vital to the Debtors' business operations because the Individual and Third Party Refunds are essential to the Debtors' relationship with their customers, the value of their business and assets and, ultimately, to their prospects for a successful chapter 11 case. Failure to satisfy obligations with respect to Individual and Third Party Refunds in the ordinary course of business during the first twenty-one days of these cases could cause customers to take their business to the Debtors' competitors and irreparable harm to the value of the Debtors' business and assets. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

28. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule

6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

22. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any ground; (c) a promise or requirement to pay any claim; (d) an admission that any particular claim is of a type specified or defined hereunder; (e) a request to assume any executory contract or unexpired lease; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## NOTICE

23. Notice of this Motion shall be given to: (i) the office of the United States Trustee for the District of Delaware; (ii) those creditors holding the 20 largest unsecured claims on a consolidated basis against the Debtors' estates; (iii) Bank of America, N.A.; and (iv) the debtor-in-possession lender (the "DIP Lender"). As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

31. No prior request for the relief sought in this Motion has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other and further relief to which the Debtors may be justly entitled.

#43037315 v1

Dated: March 15, 2017　　　　　　　　　　Respectfully submitted,
Wilmington, Delaware

　　　　　　　　　　　　　　　　　　　　　PEPPER HAMILTON LLP


　　　　　　　　　　　　　　　　　　　　　/s/ David B. Stratton
　　　　　　　　　　　　　　　　　　　　　David B. Stratton (DE No. 960)
　　　　　　　　　　　　　　　　　　　　　Evelyn J. Meltzer (DE No. 4581)
　　　　　　　　　　　　　　　　　　　　　John H. Schanne, II (DE No. 5260)
　　　　　　　　　　　　　　　　　　　　　Hercules Plaza, Suite 5100
　　　　　　　　　　　　　　　　　　　　　1313 N. Market Street
　　　　　　　　　　　　　　　　　　　　　P.O. Box 1709
　　　　　　　　　　　　　　　　　　　　　Wilmington, DE  19899-1709
　　　　　　　　　　　　　　　　　　　　　Telephone:  (302) 777-6500
　　　　　　　　　　　　　　　　　　　　　Facsimile:  (302) 421-8390


　　　　　　　　　　　　　　　　　　　　　*Proposed Counsel for the Debtors*