# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Bostwick Laboratories, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-_____ (___)<br><br>(Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING PAYMENT OF PREPETITION CLAIMS OF CERTAIN CRITICAL VENDORS

The above captioned debtors and debtors-in-possession (collectively, the "Debtors") file this *Motion For Entry of Interim and Final Orders Authorizing Payment of Prepetition Claims of Certain Critical Vendors* (the "Motion"). In support hereof, the Debtors respectfully submit the following:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtors confirm their consent pursuant to Rule 9013-1(f) of the *Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware* (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): (i) Bostwick Laboratories, Inc., a Delaware corporation (3169); and (ii) Bostwick Laboratories Holdings, Inc., a Delaware corporation (1042). The mailing address for the Debtors is 100 Charles Lindbergh Blvd., Uniondale, NY 11553.

parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. The bases for the relief requested herein are sections 105(a), 363(b), 1107(a), and 1108 of title 11 of the United States Code (11 U.S.C. §§ 101 *et seq.*, the "Bankruptcy Code").

## BACKGROUND

4. On March 15, 2017 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases.

5. The Debtors operate an independent, full-service anatomic pathology laboratory and are a specialty provider of diagnostic testing services for urologists and gynecologists in the U.S. The Debtors operate a reference laboratory offering a comprehensive suite of anatomic pathology and molecular testing services to independent physicians nationally.

6. The Debtors continue to operate their business and manage their property as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7. No trustee, examiner, creditors' committee, or other official committee has been appointed in these chapter 11 cases.

8. Additional information regarding the Debtors and these cases, including the Debtors' business, organizational structure, financial condition, and the reasons for and objectives of these cases, is set forth in the *Declaration of Tammy Hunt in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

## RELIEF REQUESTED

9.  By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and the "Final Order"), authorizing, but not directing, the Debtors to pay the claims of certain critical vendors (the "Critical Vendor Claims") in an estimated aggregate amount not to exceed $200,000 (the "Estimated Amount").

10. The Debtors rely upon certain vendors, suppliers, and service providers that are critical to their ongoing operations (the "Critical Vendors")[2] in their highly specialized, highly regulated, and highly competitive industry. In determining the Critical Vendors, the Debtors reviewed, among other things, (i) which vendors provide delivery services essential to the transport of samples to and from the Debtors for testing, without which the Debtors could not perform their lab testing services, (ii) which vendors are sole-source or limited-source suppliers or service providers, without which the Debtors could not continue to operate; (ii) which vendors would be prohibitively expensive to replace; and (iii) which vendors are simply at risk of ceasing the provision of truly essential services or supplies. The Debtors then estimated the amount they believe they may be required to pay for prepetition obligations to ensure the continued supply of critical goods and services, the aggregate of which formed the basis for the Estimated Amount.

11. While the Debtors hope to be able to assure a continuing postpetition supply of goods and services, including testing delivery services, by consensual negotiation with the Critical Vendors, they recognize that their fiduciary duties bind them to consider and plan for those Critical Vendors that may refuse to provide future goods or services unless their prepetition

---

[2] To minimize the amount of payments required, the Debtors have not attached a list of such Critical Vendors to this Motion. Identifying the Critical Vendors now would likely cause all such vendors to demand payment in full.

#43077780 v3

claims are paid.  The Critical Vendors are essential to the Debtors' business, and the lack of each of their particular services, even for a short duration, will likely cause harm to the Debtors' valuable business relationships, revenue, and goodwill.  Specifically, any disruption in the ability to receive samples and deliver test results would almost assuredly cause the collapse of the Debtors' entire business operations and would directly affect the continuity of patient care which could result in serious harm to patients including even death.  This harm and disruption would far outweigh the cost of payment of the Critical Vendor Claims.

12. Accordingly, the Debtors submit it is in the best interest of the Debtors, their estates, creditors, and other parties in interest, for the Debtors to have the ability to pay some or all of the Critical Vendor Claims.

## PROPOSED CONDITIONS TO RECEIVING PAYMENT

13. The Debtors propose to pay the Critical Vendor Claim of each Critical Vendor that agrees, to the Debtors' satisfaction, to continue to supply goods or services to the Debtors on terms similar to those in effect prior to the Petition Date, or on such other terms individually agreed to between the Debtors and such Critical Vendor that the Debtors deem acceptable.

14. The Debtors further propose that if a Critical Vendor fails to continue to supply goods and services as foresaid, then the Debtors may, in their discretion, and without further order of the Court, declare that:  (i) the payment of the Critical Vendor's Critical Vendor Claim is a voidable postpetition transfer pursuant to section 549(a) of the Bankruptcy Code that the Debtors may recover from the Critical Vendor in cash or in goods (including by setoff against postpetition obligations); or (ii) the Critical Vendor shall immediately return the Debtors' payment of its Critical Vendor Claim without giving effect to alleged setoff rights, recoupment rights, adjustments, or offsets of any type whatsoever, and the creditor's Critical Vendor Claim

- 4 -

#43077780 v3

shall be reinstated in an amount that will restore the Debtors and the Critical Vendor to their original positions as if the payment of the Critical Vendor Claim had not been made.

15. The Debtors propose to maintain a matrix summarizing (i) the name of each Critical Vendor paid; (ii) the amount paid to each Critical Vendor on account of its Critical Vendor Claim; and (iii) the type of goods or services provided by that Critical Vendor. This matrix will be provided on a confidential basis upon request to office of the United States Trustee (the "U.S. Trustee"), counsel to the debtor-in-possession lender (the "DIP Lender"), and, if applicable, the attorneys retained by the official committee of unsecured creditors appointed in these chapter 11 cases (the "Committee"). For the avoidance of doubt, the Committee's attorneys will be required to keep the matrix confidential and shall not disclose any of the information in the matrix to anyone, including, but not limited to, any member of the Committee, without prior written consent of the Debtors.

**BASIS FOR RELIEF**

16. The Debtors believe that many of their vendors will continue to do business with the Debtors after commencement of these chapter 11 cases because doing so simply makes good business sense. The Debtors, however, anticipate that certain of the Critical Vendors will refuse to continue to provide those essential goods and services absent the relief requested in this Motion. Accordingly, the Debtors request authority, but not direction to pay the Critical Vendor Claims, in the exercise of their business judgment.

**A.** **Payment Of The Critical Vendor Claims Is Authorized Under Section 363 and the Doctrine of Necessity**

17. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts in this

- 5 -

#43077780 v3

jurisdiction require only that the debtor "show that a sound business purpose" justifies the proposed use of property. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring "good business reason" for use of property under section 363(b) of the Bankruptcy Code). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

18.  Numerous courts have found that payment of critical trade vendors is appropriate under Bankruptcy Code section 363. *See In re UAL Corp.*, Case No. 02-48191 (Bankr. N.D. Ill. Dec. 11, 2002) (essential trade motion relying upon Bankruptcy Code section 363 is "completely consistent with the Bankruptcy Code;" payments to critical trade vendors have further support when debtor seeks "the extension of credit under section 364 on different than usual terms, terms that might include the payment of a prepetition obligation"); *Armstrong World Indus., Inc. v. James A. Phillips, Inc.*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (under section 363, court authorized contractor to pay prepetition claims of some suppliers who were potential lien claimants, because payments were necessary for general contractors to release funds owed to debtors, thus benefiting estate).

19.  Section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity." 11 U.S.C. § 105(a). The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy

court can exercise its equitable power to allow payment of prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re Lehigh &New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan). Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this Court may grant the relief requested herein.

20. As stated above, payment of the Critical Vendor Claims is essential to ensuring continuity of patient care. In turn, the maintenance of the Debtors' business during these Chapter 11 Cases is crucial to the Debtors' ability to preserve going concern value for the benefit of all of the Debtors' stakeholders. The Debtors would be unable to perform their laboratory tests or to ship and received lab samples and results if the Critical Vendors stopped providing their goods and services, with the attendant collapse of the Debtors' business operations and potentially serious harm to the patients. Such a result would be disastrous to the Debtors' estates and the creditors thereof. Accordingly, the Debtors submit that payment of the Critical Vendor Claims is necessary and appropriate as requested herein.

**B.** **Payment Of The Critical Vendor Claims Is Authorized Under Sections 1107(a) And 1108 Of The Bankruptcy Code**

21. The Debtors, operating their business as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s]

and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

22. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," and also when the payment was to "sole suppliers of a given product." *Id.* at 498. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

23. Payment of the Critical Vendor Claims meets each element of the *CoServ* court's standard. As described above, the Debtors have narrowly tailored the Critical Vendor Claims to encompass only those suppliers that are the sole source of a particular good or service without which the Debtors' operations would be severely impacted or those suppliers or service providers who are critical because the time and expense that would be involved in transitioning to a new supplier would be prohibitive and would significantly disrupt the Debtors' business. The potential harm and economic disadvantage that would stem from the failure of any of the

Critical Vendors to perform is grossly disproportionate to the amount of any prepetition claim that may be paid. Therefore, the Debtors can best meet their fiduciary duties as debtors in possession under Bankruptcy Code sections 1107(a) and 1108 by payment of the Critical Vendor Claims.

24. This Court has granted similar critical vendor relief in other cases. *See, e.g., In re Energy Future Holdings*, Case No. 14-10979 (CSS) (Bankr. D. Del. May 2, 2014) [Docket No. 309]; *In re Optim Energy, LLC*, Case No. 14-10262 (BLS) (Bankr. D. Del. Feb. 12, 2014) [Docket No. 34]; *In re WP Steel Venture LLC*, Case No. 12-11661 (KJC) (Bankr. D. Del. June 1, 2012) [Docket No. 69]; *In re Trident Microsystems, Inc.*, Case No. 12-10069 (CSS) (Bankr. D. Del. January 5, 2012) [Docket No. 29]; *In re Delta Petroleum Corp.*, Case No. 11-14006 (KJC) (Bankr. D. Del. December 19, 2011) [Docket No. 65]; *In re Solyndra LLC*, Case No. 11-12799 (PJW) (Bankr. D. Del. September 7, 2011) [Docket No. 39]; *In re DSI Holdings, Inc.*, Case No. 11-11941 (KJC) (Bankr. D. Del. June 28, 2011) [Docket No. 51].

## **BANKRUPTCY RULE 6003 IS SATISFIED**

25. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, the ability to pay the Critical Vendor Claims is vital to the Debtors' continued business operations. The inability to satisfy Critical Vendor Claims during the first twenty-one days of these cases could cause the Critical Vendors to cease doing business with the Debtors, which would cause irreparable harm to the value of the Debtors' business and assets. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

#43077780 v3

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H

26. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

27. Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any ground; (c) a promise or requirement to pay any claim; (d) an admission that any particular claim is of a type specified or defined hereunder; (e) a request to assume any executory contract or unexpired lease; or (f) a waiver of the Debtors' rights under the Bankruptcy Code or any other applicable law.

## NOTICE

28. Notice of this Motion shall be given to: (i) the office of the United States Trustee for the District of Delaware; (ii) those creditors holding the 20 largest unsecured claims on a consolidated basis against the Debtors' estates; (iii) Bank of America, N.A.; and (iv) the debtor-in-possession lender (the "DIP Lender"). As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m). The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

29. No prior request for the relief sought in this Motion has been made to this Court or any other court.

#43077780 v3

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and Final Order, granting the relief requested herein and such other and further relief to which the Debtors may be justly entitled.

Dated: March 15, 2017
Wilmington, Delaware

Respectfully submitted,

PEPPER HAMILTON LLP

/s/ David B. Stratton
David B. Stratton (DE No. 960)
Evelyn J. Meltzer (DE No. 4581)
John H. Schanne, II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390

*Proposed Counsel for the Debtors*

#43077780 v3