## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Bostwick Laboratories, Inc., *et al.*,[1] | Case No. 17-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS PURSUANT TO SECTIONS 105, 361, 362, 363(C), 364(C)(1),
364(C)(2), 364(D)(1), 364(E) AND 507 OF THE BANKRUPTCY CODE
(I) AUTHORIZING BOSTWICK LABORATORIES, INC. TO (A) OBTAIN POST-
PETITION SECURED FINANCING FROM POPLAR HEALTHCARE, PLLC; (B)
UTILIZE CASH COLLATERAL; AND (II) SCHEDULING A FINAL HEARING**

The above captioned debtors and debtors-in-possession (collectively, the "Debtors") file this motion (the "Motion")[2] for the entry of an interim order (the "Interim Financing Order"), substantially in the form attached hereto as **Exhibit A**, and a final order (the "Final Financing Order" and, together with the Interim Financing Order, the "Orders") (a) authorizing the Debtors to obtain postpetition financing (the "DIP Facility") and use of cash collateral; (b) granting liens and superpriority claims with respect to such postpetition financing; (c) modifying the automatic stay to the extent necessary to effectuate the terms and conditions of this Interim Financing Order; (d) prescribing the form and manner of notice and setting the time for the final hearing on this Motion (the "Final Hearing"); and (e) granting related relief.

The Debtors have filed this Motion because Bostwick Laboratories, Inc.("BLI" or "Debtor") requires immediate access to liquidity to fund its normal business operations during the chapter 11 cases (the "Case") pending the Section 363 sale of substantially all of its assets

---

[1]     The Debtors are the following entities (last four digits of EIN in parentheses): (i) Bostwick Laboratories, Inc., a Delaware corporation (3169); and (ii) Bostwick Laboratories Holdings, Inc., a Delaware corporation (1042). The mailing address for the Debtors is 100 Charles Lindbergh Blvd., Uniondale, NY 11553.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Interim Financing Order.

#43099572 v4

("the Asset Sale") and the "wind down" of the Business, to fund the administrative costs of the Case, and to satisfy the Capital One Obligations (collectively, the "Post-Petition Funding Obligations"). In further support of this Motion, the Debtors respectfully state as follows:

### JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor confirms its consent pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503, and 507 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1(b) and 4001-2.

### BACKGROUND

4.      On March 15, 2017 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases.

#43099572 v4

5.     The Debtors operate an independent, full-service anatomic pathology laboratory and are a specialty provider of diagnostic testing services for urologists and gynecologists in the United States.  The Debtors operate a reference laboratory offering a comprehensive suite of anatomic pathology and molecular testing services to independent physicians nationally.

6.     The Debtors continue to operate their business and manage their property as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7.     No trustee, examiner, creditors' committee, or other official committee has been appointed in these chapter 11 cases.

8.     Additional information regarding the Debtors and these cases, including the Debtors' business, organizational structure, financial condition, and the reasons for and objectives of these cases, is set forth in the *Declaration of Tammy Hunt in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein by reference.

9.     This Motion seeks approval of the DIP Facility to fund the Post-Petition Funding Obligations.  The DIP Facility is being provided by Poplar Healthcare, PLLC, which is also the stalking horse bidder for the Debtors' assets.  The DIP Facility represents the best source of financing available to the Debtors under the circumstances, and was negotiated extensively and at arm's length with the Post-Petition Lender, resulting in terms that the Debtor submits are reasonable and appropriate to meet the Debtor's financing needs during the Case.

10.    The Debtor has not been able to obtain an alternative financing commitment on terms better than proposed by the Post-Petition Lender.

11.    Specifically the DIP Facility provides:

     a.    multiple draw term loan credit facility in an aggregate maximum principal amount of $5,116,000 (the "Stated Principal Amount"), secured by a first

3

priority lien on any and all pre- and post-petition property of the Debtor whether existing on the Petition Date or thereafter acquired, except certain limited excluded assets; and

b. Credit Advances to be made pursuant to the terms of the budget attached to the Interim Order as Exhibit C (as may be modified from time to time with the consent of the Post-Petition Lender in its sole discretion, but without need for further Court order, the "**Budget**"), but which under no circumstance shall be for an amount in excess of the Stated Principal Amount.

## **TERMS AND CONDITIONS OF THE DIP FACILITY**

12.     The following chart contains a summary of the essential terms of the proposed DIP Facility, together with references to the applicable sections of the relevant source documents, in accordance with Bankruptcy Rule 4001(b)(1)(B) and (c)(1)(B) and Local Rule 4001-2.3[3]

| Rule Citation | Summary of Material Terms |
|---|---|
| **Borrower**<br><br>Bankruptcy Rule 4001(c)(1)(B) | BLI.  *See* Interim Order, preamble; Post-Petition Note (attached as Exhibit A to Interim Financing Order), Preamble. |
| **DIP Lender**<br><br>Bankruptcy Rule | Poplar Healthcare, PLLC. *See* Interim Order at p. 2, clause i: Post-Petition Note, Preamble. |
| **Commitment**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | The DIP Facility shall include Credit Advances made available to the Debtor in the aggregate maximum principal amount of $5,116,000. See Interim Order, ¶G.<br><br>The Debtor, will be authorized to obtain an Initial Credit Advance of up to $3,323,000 on an interim basis. See Interim Financing Order ¶3.[4] |

---

[3]      The summaries contained in this Motion are qualified in their entirety by the provisions of the documents referenced. To the extent anything in this Motion is inconsistent with such documents, the terms of the applicable documents shall control. Capitalized terms used in this summary chart but not otherwise defined shall have the meanings ascribed to them in the Interim Order or the Post-Petition Note as applicable.

[4]      This represents the amounts being advanced to pay Capital One in the approximate amount of $1,823,000 and a $1,500,000 advance to the Debtors to defray operating expenses as provided in the Budget.

#43099572 v4

| Term | Except with respect to the payment of the Carve-Out, the Post-Petition Lender's agreement to provide the Post-Petition Financing in accordance with the Post-Petition Documents and the Debtor's authorization to use Cash Collateral shall immediately and automatically terminate (except as the Post-Petition Lender may otherwise agree in writing in its sole discretion), upon the earliest to occur of any of the following: (i) May 30, 2017; (ii) the date of final indefeasible payment and satisfaction in full in cash of the Post-Petition Obligations; (iii) the entry of an order by the Court granting a motion by the Debtor to obtain additional financing from a party other than Post-Petition Lender under section 364 of the Bankruptcy Code unless the proceeds from such financing are used to immediately repay in cash the Post-Petition Obligations or unless such financing is subordinate to the Post-Petition Obligations and consented to in writing by the Post-Petition Lender; (iv) the dismissal the Chapter 11 Case or the conversion of the Chapter 11 Case into a case under chapter 7 of the Bankruptcy Code; (v) the Interim Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Post-Petition Lender (which consent may be withheld in its sole discretion); (vi) upon ten (10) days written notice of any Event of Default under subparagraphs 8(i)-(xxv) of the Interim Order. See Interim Financing Order, ¶ 8. |
|---|---|
| Bankruptcy Rule 4001(b)(1)(B)(iii), 4001(c)(1)(B)

Local 4001-2(a)(ii) | |
| **Use of Postpetition Facility and Cash Collateral**

Bankruptcy Rule 4001(b)(1)(B)(ii)

Local Rule 4001-2(a)(ii) | Unless otherwise agreed to by the Post-Petition Lender, the Debtor shall use the proceeds of the DIP Facility solely for the Post-Petition Funding Obligations in accordance with and for the purposes provided for in the Budget.  The Debtors may use cash collateral to fund operations and to pay other expenses as provided in the Budget.

None of the Carve-Out, proceeds from the Post-Petition Financing or Cash Collateral may be used to (1) to investigate or challenge in any respect the validity, perfection, priority, extent or enforceability of the DIP Liens, (2) to delay, challenge or impede any rights of the Post-Petition Lender under any of the Post-Petition Documents, or the Interim Order, or (3) to pursue any claims or causes of action of any kind against the Post-Petition Lender.

Subject to the terms of the Interim Financing Order and the Budget, the Debtor shall be permitted to pay compensation and reimbursement of reasonable fees and expenses of the Retained Professionals allowed and payable under sections 328, 330 or 331 of the Bankruptcy Code.

Nothing shall restrict the ability of the Committee, if any, or any other party to investigate or object to a disclosure statement or a plan of reorganization, and the Carve-Out, proceeds from the Post-Petition Financing and Cash Collateral may be used to pay approved fees and |

#43099572 v4

| | |
|---|---|
| | expenses of Estate Professionals employed by the Committee, if any, in connection therewith.<br><br>*See* Interim Financing Order, ¶ 13-15. |
| **Entities with Interests in Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(i) | The holders of the Second Lien Notes have a security interest in the Debtors' assets including cash collateral.  The holders of the Second Lien Notes are consenting to the entry of the Interim Financing Order and the financing described in this Motion, including the priming of their liens. |
| **Fees**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | None. |
| **Interest Rates**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | 8% per annum, plus an additional 2% upon default. *See* Interim Financing Order, ¶ 7. |
| **Conditions of Borrowing**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | The obligation of the Post-Petition Lender to make advances is subject to customary borrowing conditions and as set forth in the "Authorizations" section of the Interim Financing Order. *See* Interim Financing Order, ¶ 2-6. |
| **Budget**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | A budget mutually agreed upon by the Debtor and Post-Petition Lender, in an amount not more than $5,116,000, as may be modified from time to time with the consent of the Post-Petition Lender in its sole discretion, but without need for further Court order.  *See* Budget attached as Exhibit C to the Interim Financing Order. |
| **Reporting Information**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | Standard or ordinary reporting requirements including without limitation, Budget related information; providing copies of, or access to, Debtor's books and records and other information, and discussing with the Post-Petition Lender the business and other matters relating to the Debtor; and providing notice of certain litigation and other proceedings. See  Article VIII of the DIP Credit Agreement attached as Exhibit A to the Interim Financing Order. |

#43099572 v4

| | |
|---|---|
| **Variance Covenant**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | Notwithstanding the then applicable Budget, the Debtor may exceed the budgeted amount for any line item (other than professional fees) during any period on a cumulative basis by 10%. *See* DIP Credit Agreement, § 7.11. |
| **Chapter 11 Milestones**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | The Debtor shall obtain orders from the Bankruptcy Court (a) approving the Bid Procedures on or before April 5, 2017 and (b) the Sale Order shall be entered not later than May 30, 2017. *See* DIP Credit Agreement Section 9.01. |
| **Liens and Priorities**<br><br>Bankruptcy Rule 4001(c)(1)(B)(i)<br><br>Local Rule 4001-2(a)(i)(D) and (G), 4001-2(a)(ii) | Subject and subordinate to the Carve-Out in all respects, all of the Post-Petition Obligations shall be (i) pursuant to section 364(c)(1) of the Bankruptcy Code, afforded superpriority allowed administrative expense claim status in the Chapter 11 Case; (ii) secured, pursuant to section 364(c)(2) and (d)(1) of the Bankruptcy Code, by a first priority lien on all of the pre- and post-petition property of the Debtor or the Estate, whether existing on the Petition Date or thereafter acquired (except for the proceeds of the Debtor's claims and causes of action under sections 502(d), 544, 547, 548, 549, 550 and 553 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code, and other Debtor causes of actions).<br><br>The Post-Petition Liens shall not be subject or subordinate to (1) any lien that is avoided and preserved for the benefit of the Estate under section 551, (2) any liens arising after the Petition Date including any liens granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor to the extent permitted by applicable non-bankruptcy law, or (3) any intercompany or affiliate liens of the Debtor.<br><br>*See* Interim Financing Order, ¶12. |
| **Carve Out**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(f) | All liens and claims of or granted to the Post-Petition Lender shall be subject and subordinate to the payment, without duplication, of the following fees and claims (the amounts set forth below, together with the limitations set forth therein, collectively, the "Carve-Out"): (a) all allowed fees and expenses of attorneys, investment bankers and financial advisors (collectively, the "Estate Professionals") employed by the Debtor or the Committee (as applicable) pursuant to sections 327, 328, 363, 1102 and 1103 of the Bankruptcy Code which are accrued prior to the Termination Date to the extent set forth in (and limited by) the Budget, in each case and which are accrued after the Termination Date as set forth in the Budget in the amount of |

#43099572 v4

|  | $100,000 to be shared by each of the Estate Professionals (i) to the extent set forth in (and limited by) the Budget (the "<u>Termination Carve-Out Amount</u>"); and (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court or to the Debtor's appointed claims agent. After the Termination Date, the Post-Petition Lender will fund the Termination Carve-Out Amount to the Debtor.<br><br>Notwithstanding the foregoing, none of the Carve-Out proceeds from the Post-Petition Financing or Cash Collateral may be used (1) to investigate or challenge in any respect the validity, perfection, priority, extent or enforceability of the Post-Petition Liens, (2) to delay, challenge or impede any rights of the Post-Petition Lender under any of the Post-Petition Documents, or the Interim Financing Order, or (3) to pursue any claims or causes of action of any kind against the Post-Petition Lender, the Post-Petition Financing Order or the Post-Petition Note. *See* Interim Financing Order ¶¶ 13 and 14. |
|---|---|
| **Events of Default**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | <u>Events of Default</u>. Usual and customary for financings of this type, set forth in Section 9.01 of the DIP Credit Agreement.<br><br>　1.　　<u>Remedies</u>. Upon the occurrence of an Event of Default under subparagraphs 8(i)- (xxv) above and after ten (10) days' written notice by the Post-Petition Lender to the Notice Parties (the "<u>Default Notice Period</u>"), the automatic stay shall terminate, and the Post-Petition Lender shall be permitted to exercise any remedies permitted by law, including any of the following actions, unless the Court determines during the Default Notice Period that an Event of Default has not occurred:<br><br>　　(i)　　declare all or any portion of the outstanding Post-Petition Obligations due and payable, whereupon the same shall become, forthwith due and payable without presentment, demand, protest or notice of any kind, all of which are hereby waived by the Debtor;<br><br>　　(ii)　　enforce all liens and security interests in the Post-Petition Collateral; |

#43099572 v4

|  | (iii) | institute proceedings to enforce payment of such Post-Petition Obligations; |
|  | (iv) | terminate the obligation of the Post-Petition Lender to make an additional Credit Advance; and |
|  | (v) | exercise any other remedies and take any other actions available to it at law, in equity, under the Post-Petition Note, the Bankruptcy Code, other applicable law or pursuant to this Financing Order. |

|  |  |  |
|---|---|---|
|  |  | *provided however* that the Post-Petition Lender shall continue to fund the Debtor's operations, pursuant to the Budget, through the Default Notice Period. *See* Interim Financing Order ¶ 9. |
| **Waiver / Modification of the Automatic Stay**<br><br>Bankruptcy Rule 4001(c)(1)(B)(iv) |  | The automatic stay shall be modified to the extent necessary to permit the Post-Petition Lender to exercise its remedies, as applicable, in accordance with the terms of the Interim Financing Order and Post-Petition Documents, including subject to any notice requirements set forth therein. *See* Interim Financing Order ¶ 9. |
| **Waiver / Modification of Applicability of Non-bankruptcy Law Relating to Perfection or Enforceability of Liens**<br><br>Bankruptcy Rule 4001(c)(1)(B)(vii) |  | The Post-Petition Lender and the holders of the Second Lien Notes are authorized, but not required, to file or record financing statements, intellectual property filings, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the DIP Liens and the Adequate Protection Liens granted to it hereunder. Regardless of whether the Post-Petition Lender or the holders of the Second Lien Notes shall in their respective sole discretion choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens or Adequate Protection Liens, such DIP Liens and Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order *See* Interim Financing Order, ¶ 17; Post-Petition Note, § 5(d). |
| **Releases**<br><br>Bankruptcy Rule 4001(c)(1)(B)(viii) |  | Release by Debtors in favor of Post-Petition Lender as described in Section 10.13 of the DIP Credit Agreement. |

#43099572 v4

| | |
|---|---|
| **Liens on Avoidance Actions**<br><br>Bankruptcy Rule 4001(c)(1)(B)(xi)<br><br>Local Rule 4001-2(a)(i)(D) | None. *See* Interim Financing Order, ¶ 12(d). |
| **Credit Bid Rights**<br><br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(ii) | Subject to section 363(k) of the Bankruptcy Code and entry of this Interim Financing Order, the Post-Petition Lender shall have the right to "credit bid" the full amount of the <u>Post-Petition Obligations</u> then outstanding in connection with the Asset Sale or any sale of all or any portion of the Debtor's assets, including, without limitation, a sale transaction under section 363 of the Bankruptcy. *See* Interim Financing Order ¶ 31. |
| **No Priming or Pari Passu Liens**<br><br>Bankruptcy Rule 4001(c)(1)(b)<br><br>Local Rule 4001-2(a)(ii) | No claim or lien having a priority superior to or *pari passu* with those granted by the Interim Financing Order to the Post-Petition Lender shall be granted or allowed, except as to Permitted Liens, the Carve Out or as provided under applicable non-bankruptcy law, until the occurrence of (i) the payment in full in cash or immediately available funds of all of the Post-Petition Obligations, or (ii) the termination or expiration of all commitments to extend credit to the Debtor under the Post-Petition Documents.<br><br>*See* Interim Financing Order ¶ 20. |

## **RELIEF REQUESTED**

13.     The Debtor seeks entry of the Interim Financing Order and, where applicable, the

Final Financing Order:

   a.     authorizing the Debtor to enter into the secured DIP Facility which shall include Credit Advances to be made available to the Debtor, up to a maximum of $5,116,000 (subject to the terms of the Postpetition Documents), with up to $3,323,000 to be available upon entry of the Interim Financing Order and satisfaction of other conditions to borrowing;

   b.     ordering that, subject to the Carve-Out, in all respects, all obligations of the Debtor under the Postpetition Documents shall be:

      i.     entitled to super priority claim status under section 364(c)(1) of the Bankruptcy Code, with priority over all administrative expense

claims and unsecured claims now existing or hereafter arising under the Bankruptcy Code; and

ii.    secured pursuant to section 364(c)(2) of the Bankruptcy Code, by valid, binding, continuing, enforceable, fully-perfected senior lien on, and security interest in, (i) all cash or cash proceeds; and (ii) all tangible and intangible prepetition and postpetition property of the Debtor, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to a valid, perfected, non-avoidable and enforceable lien in existence on or as of the Petition Date (collectively, the "Unencumbered Property"), including without limitation, any and all unencumbered cash, inventory, equipment, general intangibles, intercompany notes, insurance policies, contracts, securities, chattel paper, real property leaseholds, fixtures, machinery, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property and the proceeds of all of the foregoing (excluding avoidance and other causes of actions);

iii.    secured pursuant to section 364(d)(1) of the Bankruptcy Code, with a valid, binding, continuing, enforceable, fully-perfected, senior priming lien on, and security interest in, all collateral of the holders of the Second Lien Notes (the "Second Lien Note Collateral"). The DIP Liens on the Second Lien Note Collateral shall be senior in all respects to the security interests in, and liens on, the Second Lien Note Collateral. and

c.    modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Financing Order or the Final Financing Order, as applicable;

d.    scheduling the Final Hearing to consider entry of the Final Financing Order, and approving the form of notice with respect to the Final Hearing; and

e.    granting related relief.

## THE DEBTOR HAS AN IMMEDIATE NEED FOR CASH

14.    The Debtor has an immediate need to obtain the Post-Petition Financing in order to, among other things, fund the Post-Petition Funding Obligations including Debtor's normal business operations during the Case pending the Section 363 sale of substantially all of its assets ("the Asset Sale") and the "wind down" of the Business, to fund the administrative costs of the

Case, and to satisfy the Capital One Obligations. The Debtor's incurrence of the Post-Petition

Financing is, therefore, necessary to ensure that the Debtor has sufficient working capital and

liquidity to preserve and maintain the going concern value of the Debtor's estate and to avoid

irreparable harm to the Debtor's estate and creditors.

<u>**ALTERNATIVE SOURCES OF FINANCING ARE NOT READILY AVAILABLE**</u>

15.    The Debtor is unable to obtain financing from sources other than the Post-Petition

Lender pursuant to, and for the purposes set forth in, the Post-Petition Documents and is unable

to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as

an administrative expense. The Debtor is also unable to obtain secured credit allowable under

sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code without granting

the DIP Liens, the DIP Superpriority Claims, the 507(b) Claims (each as defined in the Interim

Financing Order), and the other adequate protection proposed to be granted herein, in each case

on the terms and conditions set forth in the Interim Financing Order and the Post-Petition

Documents.

16.    In sum, the Debtor believes that, given the realities of the current circumstances,

the proposed DIP Facility represents the best (and likely only) option available to address the

Debtor's immediate liquidity needs. It is the product of extensive arm's length negotiations with

the Post-Petition Lender conducted in good faith and at arm's length.

<u>**BASIS FOR RELIEF**</u>

**A.**    <u>**The Debtor Should Be Authorized to Obtain Postpetition Financing Through**</u>
<u>**the DIP Facility**</u>

**iv.    Entering Into the DIP Facility Is an Exercise of the Debtor's**
**Sound Business Judgment**

17.    The Court should authorize the Debtor, as an exercise of its sound business

judgment, to enter into the Postpetition Documents, obtain access to the DIP Facility, and use

Cash Collateral. Section 364 of the Bankruptcy Code authorizes a Debtor to obtain secured or superpriority financing under certain circumstances discussed in detail below. Courts grant a Debtor considerable deference in acting in accordance with its business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code. *See, e.g., In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr D. Del. 2011) ("[C]ourts will almost always defer to the business judgment of a [trustee] in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr S.D.N.Y. 1990) ("Cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest.").

18.    Specifically, to determine whether the business judgment standard is met, a court need only "examine whether a reasonable business person would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of the trustee's authority under the [Bankruptcy] Code").

19.    Furthermore, in considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the estate

13

and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.)*, 65 B.R. 358, 365 (W.D. Mich. 1986) (recognizing a trustee may have to enter into "hard bargains" to acquire funds for a reorganization of the estate). The Court may also appropriately take into consideration non-economic benefits to an estate offered by a proposed postpetition facility. For example, in *In re ION Media Networks. Inc.*, the bankruptcy court for the Southern District of New York held that:

> Although all parties, including the Debtor and the Committee, are naturally motivated to obtain financing on the best possible terms, a business decision to obtain credit from a particular lender is almost never based purely on economic terms. *Relevant features of the financing must be evaluated, including non economic elements such as the timing and certainty of closing, the impact on creditor constituencies and the likelihood of a successful reorganization.* This is particularly true in a bankruptcy setting where cooperation and establishing alliances with creditor groups can be a vital part of building support for a restructuring that ultimately may lead to a confirmable reorganization plan. That which helps foster consensus may be preferable to a notionally better transaction that carries the risk of promoting unwanted conflict.

No. 09-13125, 2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009) (emphasis added).

20.     The Debtor's determination to move forward with the DIP Facility is an exercise of the Debtor's sound business judgment following an arm's length process and careful evaluation of alternatives. Specifically, the Debtor requires postpetition financing to fund the Post-Petition Funding Obligations. Accordingly, the Debtor negotiated the Postpetition Documents with the Post-Petition Lender in good faith, at arm's length, and with the assistance of its advisors, and the Debtor believes that he has obtained the best financing available under the circumstances.

v.      **The Debtor Should Be Authorized to Obtain Postpetition Financing on a Secured and Superpriority Basis**

21.     The Debtor proposes to obtain financing under the DIP Facility by providing security interests and liens as set forth above pursuant to section 364(c) and (d)(1) of the Bankruptcy Code. The statutory requirement for obtaining postpetition credit under section 364(c) is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit allowable under Section 503(b)(1) of the [the Bankruptcy Code]." 11 U.S.C. § 364(c). *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).

22.     Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code.  Specifically, courts look to whether:

    a.      the debtor is unable to obtain unsecured credit under section 364(b) of the Bankruptcy Code, *i.e.*, by allowing a lender only an administrative claim;

    b.      the credit transaction is necessary to preserve the assets of the estate; and

    c.      the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lenders.

*In re Ames Dep't Stores*, 115 B.R. 34, 37-39 (Banta- S D N.Y. 1990); *see also In re St. Mary Hosp.*, 86 B.R. 393, 401-02 (Bankr. E.D. Pa. 1988); *Crouse Grp.*, 71 B.R. at 549.

23.     Under section 364(d)(1), the Debtor must show that the debtor is unable to obtain such credit otherwise and that the holder of the lien which is being primed is provided adequate protection.  The holders of the Second Lien Notes have consented to the extension of credit under section 364(d)(1) based upon the adequate protection provisions of the Interim Financing Order.

#43099572 v4

24.     Based on current capital market conditions, after consultation with its advisors, the Debtor determined that postpetition financing on an unsecured basis would be unobtainable. Without postpetition financing, the Debtor will not be able to continue to operate or to preserve and maximize the value of the estate. Absent sufficient financing to operate the business during the chapter 11 case and Asset Sale, the value of the Debtor's Estate would be substantially impaired to the detriment of all stakeholders. Given the Debtor's circumstances, the Debtor believes that the terms of the DIP Facility, are fair, reasonable, and adequate, all as more fully set forth below.

25.     In the event that a trustee is unable to obtain unsecured credit, section 364(c)(1) of the Bankruptcy Code provides that the debtor may obtain credit that is secured by an administrative expense claim having priority "over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of [the Bankruptcy Code]." As described above, the Debtor is unable to obtain unsecured credit. Therefore, approving the Superpriority Claim in favor of the Post-Petition Lender is reasonable and appropriate. Further, section 364(c)(2) of the Bankruptcy Code provides that a trustee may obtain credit that is secured by a lien on property of the estate that is not otherwise subject to a lien.  As stated, the "priming lien" to be provided under section 364(d)(1) is on a consensual basis . As the Debtor is unable to obtain the critical financing he needs to administer the chapter 11 case from any other source, the Debtor respectfully represents that granting the DIP Liens to the Post-Petition Lender is warranted under the circumstances.

### vi.     No Comparable Alternative to the DIP Facility Is Reasonably Available

26.     In satisfying the standards of section 364(c) and (d) of the Bankruptcy Code, a trustee need not seek credit from every available source, but needs only to demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential

lenders by sections 364(c) of the Bankruptcy Code. *See In re Snowshoe Co.*, 789 F.2d 1085, 1088 (4th Cir. 1986) ("the statute imposes no duty to seek credit from every possible lender before concluding that such credit is available"); *see also In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992). Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor's estate, "it would be unrealistic and unnecessary to require the trustee to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Banta. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989). Generally, a trustee's efforts are to be considered on a case by case basis, particularly "[Oven the 'time of the essence' nature of this type of financing." *In Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr E D Pa. 1987). *See also In re Sky Valley, Inc.*, 100 B.R. at 112-13 (exhaustive search not required where the business suffered from financial stress, had little or no unencumbered property, and primary property was subject to numerous liens, and thus debtors' approach of only four lenders was sufficient under such circumstances).

27.     The Debtor does not believe that alternative sources of financing are reasonably available. Thus, the Debtor has determined that the DIP Facility provides the best option forward under the circumstances to fund the chapter 11 case and the Post-Petition Funding Obligations. Therefore, the Debtor submits that the requirements of sections 364 of the Bankruptcy Code that alternative credit on more favorable terms was unavailable to the Debtor is satisfied.

### B.      The Post-Petition Lender Should Be Deemed a Good-Faith Lender under Section 364(e)

28.     Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor's estate, and its right in any lien securing those loans, even

#43099572 v4

if the authority of the trustee to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

29.     As explained herein, the DIP Facility is the result of the Debtor's reasonable and informed determination that the Post-Petition Lender offered the most favorable terms on which to obtain needed postpetition financing, and of arm's length, good- faith negotiations between the Debtor and the Post-Petition Lender. The terms and conditions of the DIP Facility are reasonable and appropriate under the circumstances, and the proceeds of the DIP Facility will be used only for purposes that are permissible under the Bankruptcy Code. Further, no consideration is being provided to any party to the DIP Facility other than as described herein. Accordingly, the Court should find that the Post-Petition Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code and are entitled to all of the protections afforded by that section.

### C.     The Automatic Stay Should Be Modified on a Limited Basis

30.     The Debtor requests that automatic stay imposed by section 362 be modified to the extent necessary to implement and effectuate the terms and provisions of the Interim Financing Order or the Final Financing Order, as applicable. Among other things, the proposed Interim Financing Order provides that the automatic stay provisions of section 362 of the Bankruptcy Code will be modified, to the extent necessary, to permit the Post-Petition Lender to exercise certain remedies if any of three specific Events of Default occurs and is called by the Post-Petition Lender.

#43099572 v4

31.     Similar stay modifications are commonplace and standard features of postpetition financing arrangements, and, in the Debtor's business judgment, are reasonable and fair under the circumstances of this chapter 11 case. *See, e.g., In re Peak Broad., LLC*, No. 12-10183 (PJW) (Bankr D. Del. Feb. 2, 2012) (terminating automatic stay after occurrence of termination event); *In re TMP Directional Mktg., TLC*, No. 11-13835 (MFW) (Bankr. D. Del. Jan. 17, 2012) (modifying automatic stay as necessary to effectuate the terms of the order); *In re Broadway 401 LLC*, No. 10-10070 (KJC) (Bankr. D. Del. Feb. 16, 2010) (same); *In re Haights Cross Commc'ns, Inc*., No. 10-10062 (BLS) (Bankr. D. Del. Feb. 8, 2010) (same).

### D.     Failure to Obtain the Immediate Interim Access to the DIP Facility and Cash Collateral Would Cause Immediate and Irreparable Harm

32.     Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code or to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit and use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

33.     The Debtor requests that the Court hold and conduct a hearing to consider entry of the Interim Financing Order authorizing the Debtor from and after entry of the Interim Financing Order until the Final Hearing to receive advances contemplated by the DIP Facility. The Debtor requires these advances prior to the Final Hearing and entry of the Final Financing Order to be able to operate the Debtor's business and pay administrative expenses. This relief will enable the Debtor to preserve and maximize value and, therefore, avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest, pending the Final Hearing.

#43099572 v4

## REQUEST FOR FINAL HEARING

34.    Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor requests that the Court set a date for the Final Hearing that is as soon as practicable and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

35.    To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

36.    The Debtor will provide notice of this Motion to the following parties, or their counsel, if known: (a) the holders of the Second Lien Notes; (b) all known holders of liens on the Debtor's assets; (c) the United States Attorney for the District of Delaware; (d) the Internal Revenue Service; (e) the United States Trustee for the District of Delaware; (f) all parties who have timely filed requests for notice under Rule 2002 of the Federal Rules of Bankruptcy Procedure; and (g) the Debtors' list of top 20 creditors filed pursuant to Bankruptcy Rule 1007(d).

37.    Pursuant to Bankruptcy Rule 4001, the Debtor respectfully requests that it be authorized to provide notice of the Final Hearing by serving a copy of this Motion, together with the Interim Financing Order, and notice of the Final Hearing, by first class mail upon the parties referenced in the foregoing section above. The Debtor respectfully submits that such notice is sufficient and requests that this Court find that no further notice of the Final Hearing and Final Financing Order is required.

#43099572 v4

**WHEREFORE**, the Debtor respectfully requests entry of the Interim Financing Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein, and granting such other relief as is just and proper.

Dated:  March 15, 2017
Wilmington, Delaware

Respectfully submitted,

PEPPER HAMILTON LLP

/s/ David B. Stratton
David B. Stratton (DE No. 960)
Evelyn J. Meltzer (DE No. 4581)
John H. Schanne, II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-1709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390

*Proposed Counsel for the Debtors*

#43099572 v4