**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Bostwick Laboratories, Inc., *et al.*,[1]<br><br>                Debtors. | Chapter 11<br><br>Case No. 17-10570 (BLS)<br><br>(Joint Administration Requested) |

## DECLARATION OF TAMMY HUNT IN SUPPORT
## OF INTERIM DIP FINANCING AND USE OF CASH COLLATERAL

      Pursuant to 28 U.S.C. § 1764, Tammy Hunt declares as follows under penalty of perjury:

      1.      I am the Chief Financial Officer of Bostwick Laboratories, Inc., a Delaware corporation ("BLI") and Bostwick Laboratories Holdings, Inc., a Delaware corporation ("BLHI"), the above-referenced debtors and debtors-in-possession (collectively, the "Debtors") in these proceedings. I am familiar with the Debtors' day-to-day operations, business, financial affairs and books and records.

      2.      Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, upon information supplied to me by others at the Debtors, upon my review of relevant documents, or upon my opinion based upon my experience, knowledge, and information concerning the Debtors' operations and financial affairs. If I were called upon to testify, I could and would testify competently to the facts set forth in this declaration and my declaration submitted in connection with the first day pleadings and hearing (the "First Day Declaration"), which is incorporated herein by reference. I am authorized to submit this declaration on behalf of the Debtors.

---

[1]     The Debtors are the following entities (last four digits of EIN in parentheses): (i) Bostwick Laboratories, Inc., a Delaware corporation (3169); and (ii) Bostwick Laboratories Holdings, Inc., a Delaware corporation (1042). The mailing address for the Debtors is 100 Charles Lindbergh Blvd., Uniondale, NY 11553.

#43191157 v1

A.   **General Background**

3.   On March 15, 2017 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (11 U.S.C. §§ 101, *et seq.*, the "Bankruptcy Code"). The Debtors are continuing to operate their business and manage their property as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

4.   BLI is an independent, full-service anatomic pathology laboratory and specialty provider of diagnostic testing services for urologists and gynecologists in the United States of America (the "United States"). BLI is also a reference laboratory offering a suite of anatomic pathology and molecular testing services to independent physicians nationally.

5.   Each day BLI receives approximately 550 tissue samples for processing at its laboratory in Uniondale, New York. When a sample is received, it is coated with paraffin wax (the "Blocks") and then cut into very thin slices. The thin slices of specimen are placed on glass slides (the "Slides") and reviewed by a pathologist under a microscope. The pathologist then issues a report to the customer regarding his or her findings concerning the patient. On average, it takes BLI three business days to complete this process. BLI has approximately 3,000 customers that send it tissue samples.

6.   BLI is required to maintain the Blocks and Slides for ten (10) years under federal law and up to twenty (20) years under New York state law.

B.   **Medicare Revenue**

7.   A substantial portion of the BLI's business involves the testing of samples for individual patients for whom services are paid for through government programs or by other third parties such as insurance companies (collectively, the "Third Party Payors"). BLI routinely – in the ordinary course of business – bills the Third Party Payors for services rendered to

-2-

individuals who are covered by the Third Party Payors' programs. The Centers for Medicare and Medicaid Services ("CMS") is one such Third Party Payor.

8. When BLI provides services to patients who are eligible for Medicare coverage, BLI submits a request for reimbursement for such services to CMS for review and payment. Upon approval, or after any necessary appeals, a receivable from CMS to BLI becomes due and owing (each a "Medicare Reimbursement Payment" and, collectively, "Medicare Reimbursement Payments").

9. CMS remits payment of Medicare Reimbursement Payments to BLI in the ordinary course. On average, BLI receives approximately $250,000 per week in Medicare Reimbursement Payments from CMS. Medicare Reimbursement Payments represent approximately 40% of BLI's revenue.

**C. DOJ Settlement**

10. In August 2014, BLI entered into a settlement agreement (the "Settlement Agreement") with the Department of Justice (the "DOJ"), under which BLI agreed to pay the DOJ $7,000,000. The agreement resulted in a $3,200,000 unsecured installment note, payable in seventeen quarterly installments, beginning June 2016 with interest at 2.25%. The note matures in June 2020. BLI is current on all amounts owed to the DOJ under the Settlement Agreement. As of the Petition Date, the remaining amount owed to the DOJ is $2,702,020.80.

**D. CMS Fails to Remit Ordinary Course Payments**

11. As of March 17, 2017, BLI was entitled to receive approximately $150,000 in Medicare Reimbursement Payments that were due and owing (the "March 17th Payment"). CMS has failed to remit the March 17th Payment and is continuing to withhold payment of all payables owed by CMS to BLI.

### E. Irreparable Harm

12. BLI will suffer immediate and irreparable harm if CMS does not resume payment of amounts owed to BLI in the ordinary course of business including immediate issuance of the March 17th Payment. Without this critical source of revenue, BLI will likely be forced to cease business operations, leaving 1,500 patients without sample results. Moreover, if BLI is forced to cease operations, it will no longer be able to comply with its obligations to store the Samples and Blocks. The individuals whose tissue samples BLI is responsible for analyzing will suffer significant and possibly life threatening consequences if BLI ceases business operations.

13. Additionally, BLI's customers (hospitals, cancer centers, other health facilities, doctors' offices, etc.) will be left without a source to test samples that would otherwise be tested by BLI. While BLI's customers will ultimately find new providers, transitioning this process will take time. The corresponding delay would clearly effect the continuity of patient care resulting in potential harm to their patients.

### F. Adequate Protection

14. It is my understanding that CMS is concerned about being adequately protected on payments under the DOJ settlement. To relieve CMS's concern, it has been offered an adequate protection package by the Debtors that includes, *inter alia*, (i) recoupment rights with respect to post-petition payments made in the normal course of business without regard to whether the debts/payments are pre-petition or post-petition; (ii) as adequate protection for any diminution in value of the pre-petition payables owed to BLI by CMS (the "Pre-Petition CMS Payables"), a right of setoff with regard to payments made by BLI arising post-petition (the "Post-Petition CMS Payables") to the extent of such diminution in the value of the Pre-Petition CMS Payables and (iii) payment by Poplar Healthcare PLLC (the "Stalking Horse") of the

claim of CMS in the amount of the Pre-Petition CMS Payables (the "CMS Claim Amount") at the closing of the sale.

15. I believe that if BLI is able to continue to operate in the ordinary course, the Post-Petition CMS Payables will remain at the same level at the as Pre-Petition CMS Payables.

16. Based on historic business practices, I estimate the Pre-Petition CMS Payables owed to BLI at approximately $1,100,000. Based on historic business practices and my understanding that BLI will continue to operate in the ordinary course through the closing of a sale, I estimate the Post-Petition CMS Payables total approximately $1,100,000.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief

Executed On: March 20, 2017

Name: Tammy Hunt
Title: Chief Financial Officer

-6-

#43191157 v1