# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Bostwick Laboratories, Inc., *et al.*,[1] | Case No. 17-10570 (BLS) |
| Debtors. | (Jointly Administered) **Related Docket No. 14** |

## INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 362, 363(C), 364(C)(1), 364(C)(2), 364(D)(1), 364(E) AND 507 OF THE BANKRUPTCY CODE (I) AUTHORIZING BOSTWICK LABORATORIES, INC. TO (A) OBTAIN POST-PETITION SECURED FINANCING FROM POPLAR HEALTHCARE, PLLC; (B) UTILIZE CASH COLLATERAL; (C) PROVIDE FOR ADEQUATE PROTECTION AND (II) SCHEDULING A FINAL HEARING

Upon the motion (the "Motion")[2] of the above captioned debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases (the "Cases") commenced on March 15, 2017 (the "Petition Date") under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for entry of an interim financing order (the "Interim Financing Order") and final financing order (the "Final Financing Order"), seeking among other things:

    i.      authorizing Bostwick Laboratories, Inc. ("BLI" or "Debtor" or "Borrower"), as borrower, to enter into a first priority senior secured multiple draw term loan credit facility (the "DIP Facility") with Poplar Healthcare, PLLC, a Tennessee

---

[1]     The Debtors are the following entities (last four digits of EIN in parentheses): (i) Bostwick Laboratories, Inc., a Delaware corporation (3169); and (ii) Bostwick Laboratories Holdings, Inc., a Delaware corporation (1042). The mailing address for the Debtors is 100 Charles Lindbergh Blvd., Uniondale, NY 11553.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in that certain Debtor-in-Possession Credit Agreement (the "DIP Credit Agreement") and the Motion. The DIP Credit Agreement is attached hereto as Exhibit A to this Order.

Professional Limited Liability Company (the "<u>Post-Petition Lender</u>") in an aggregate maximum principal amount of $5,116,000 (the "<u>Post-Petition Financing</u>" and each individual advance thereunder, a "<u>Credit Advance</u>" and, collectively, the "<u>Credit Advances</u>"), pursuant to the terms and conditions of the DIP Credit Agreement, that certain post-petition promissory note in substantially the form attached hereto as <u>Exhibit B</u> (the "<u>Post-Petition Note</u>" together with any additional agreements, documents, instruments and certificates executed therewith, or otherwise delivered in connection therewith by the Debtor, collectively, the "<u>Post-Petition Documents</u>");

ii.     authorizing BLI to execute and deliver the Post-Petition Note and other Post-Petition Documents and to perform such other and further acts as may be necessary or desirable in connection with the Post-Petition Documents;

iii.    authorizing BLI's use of cash collateral, as defined in section 363(a) of the Bankruptcy Code (collectively, "<u>Cash Collateral</u>"), pursuant to the terms and conditions set forth in the Interim Financing Order and the Final Financing Order;

iv.     granting, subject to the Carve Out and the terms of this Interim Financing Order, (a) to the Post-Petition Lender on account of the Post-Petition Financing (i) postpetition first priority liens on unencumbered assets of the Debtor, (ii) consensual priming liens on collateral securing the prepetition Second Lien Notes[3]; and (iii) superpriority administrative expense claims (collectively, the "<u>DIP Liens</u>"); and (b) to the holders of the Second Lien Notes, as adequate protection to the extent of diminution in value of the collateral securing the Second Lien Notes, (i) replacement liens on collateral securing the Post-Petition Financing, subordinate to the DIP Liens, (ii) superiority administrative expenses claims, subordinate to the DIP superpriority administrative expense claims.

v.      authorizing the Post-Petition Lender to exercise remedies upon the occurrence and continuance of an Event of Default after written notice, including without limitation, upon the entry of an order or orders granting the Post-Petition Lender relief from the automatic stay applicable under section 362 of the Bankruptcy Code in respect of the Debtor's assets;

vi.     Scheduling, pursuant to Bankruptcy Rule 4001, an interim hearing (the "<u>Interim Hearing</u>") on the Motion to be held before this Court to consider entry of this order authorizing the Borrower, on an interim basis, to obtain an initial Credit Advance (the "<u>Initial Credit Advance</u>") under the DIP Credit Agreement of $3,323,000.00 to be used satisfy the Capital One Obligations and to fund the Debtor's normal business operations in accordance with Debtor's budget attached hereto as <u>Exhibit C</u> (as such budget may be supplemented or modified in

---

[3]     "Second Lien Notes" means the second lien secured notes issued by the Seller pursuant to that certain Note Purchase Agreement, dated February 21, 2017, between Bostwick Laboratories Group Holdings, L.P., Seller, certain "Purchasers" identified therein, and Bostwick Laboratories Group Holdings GP, LLC.

-2-

accordance with the terms hereof and the Post-Petition Documents, the "Budget") pending entry of the Final Financing Order; and

vii.     scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") to be held on or before April 15, 2013, for this Court to consider entry of the Final Financing Order authorizing the Post-Petition Financing, authorizing the Borrower, on a final basis, to obtain under the DIP Credit Agreement the balance of the Credit Advances, and authorizing and approving, on a final basis, the relief requested in the Motion.

Due and appropriate notice of the Motion under the circumstances and the relief requested therein having been given and an Interim Hearing on the Motion having been held before this Court on March 16, 2017; and upon the entire record made at the Interim Hearing; and this Court having found good and sufficient cause appearing therefor;

IT IS HEREBY FOUND:

A.     Except as otherwise provided herein, this Court has jurisdiction over the Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtor on its twenty largest unsecured creditors, Poplar Healthcare, PLLC, the Post-Petition Lender, the holders of the Second Lien Notes, Capitol One, Centers for Medicare & Medicaid Services ("CMS"), the United States Attorney for the District of Delaware, and the United States Trustee for the District of Delaware (the "U.S. Trustee").     Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein, and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

C.     BLI has an immediate need to obtain the Post-Petition Financing in order to, among other things, fund the Debtor's normal business operations during the Case pending the

-3-

Section 363 sale of substantially all of its assets ("the Asset Sale") and the "wind down" of the Business, to fund the administrative costs of the Case, and to satisfy the Capital One Obligations (collectively, the "Post-Petition Funding Obligations"). The Debtor's incurrence of the Post-Petition Financing is, therefore, necessary to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtor's estate and to avoid irreparable harm to the Debtor's estate and creditors.

D.      BLI is unable to obtain financing from sources other than the Post-Petition Lender pursuant to, and for the purposes set forth in, the Post-Petition Documents and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d)(1) of the Bankruptcy Code without granting the DIP Liens, the DIP Superpriority Claims, the 507(b) Claims (each as defined below), and the other adequate protection granted herein, in each case on the terms and conditions set forth in this Order and the Post-Petition Documents.

E.      The terms of the Post-Petition Financing pursuant to this Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

F.      The Post-Petition Documents have been the subject of extensive negotiations conducted in good faith and at arm's length among the Borrower and the Post-Petition Lender, and all of the Debtor's obligations and indebtedness arising under or in connection with the Post-Petition Financing, including without limitation, (i) all Credit Advances made to the Borrower as contemplated and authorized by this Order and (ii) all other obligations of the Debtor under the Post-Petition Documents and this Order shall be deemed to have been extended by the Post-

Petition Lender in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

G.     The Post-Petition Lender will commit to providing Post-Petition Financing in an amount necessary to fund the Post-Petition Funding Obligations as set forth in the Budget, in the amount of $5,116,000 (the "Stated Principal Amount"), upon the terms and conditions set forth herein.

H.     The Debtors, as borrowers, are indebted to Healthcare Financial Solutions, LLC, a Delaware limited liability company, as successor to General Electric Capital Corporation, as agent and a lender (collectively, "HFS"), pursuant to that certain Credit Agreement, dated as of September 17, 2012, (as amended, the "HFS Credit Agreement"). Under the HFS Credit Agreement, HFS agreed, subject to the terms and conditions set forth in the HFS Credit Agreement, to make certain loans and other financial accommodations to Debtors.

I.     With respect to the HFS Credit Agreement and all related loan and security documents (collectively, the "HFS Loan Documents"), the Debtors acknowledge, confirm, and agree:

> i.     As of the Petition Date, the Debtors are indebted to HFS under the HFS Loan Documents for an outstanding loan (the "HFS Loan") in the aggregate principal amount of at least $1,605,133.38, plus accrued and accruing interest, fees, expenses, attorneys' fees and costs, and other amounts owing under the terms of the HFS Loan Documents. Collectively, all of the Debtors' obligations under the HFS Loan Documents are referred to as the "HFS Obligations". The amount of the HFS Obligations as of March 21, 2017 total $1,824,276.63 as stated in the Payoff Letter (as defined below). After the payment to HFS of the HFS Obligations, the Debtors will retain the right to review back-up for the attorneys' fees included in the Payoff Letter; if the Debtors dispute the amount of such

fees and the dispute is not resolved consensually, the dispute will be determined by the Court.

ii.   As security for timely payment and performance of the HFS Obligations, HFS was granted and has valid and perfected first priority liens on and security interests in, among other things, substantially all of the Debtors' assets as provided in the HFS Loan Documents (collectively, the "HFS Collateral"). The HFS Collateral includes, without limitation, all of the Debtors' accounts, accounts receivable, health-care-insurance receivables, cash, general intangibles, deposit accounts, inventory, equipment, investment property, and all proceeds therefrom.

iii.  Pursuant to the HFS Loan Documents: (i) the HFS Obligations are due and owing, are legal, binding, and enforceable joint and several obligations of the Debtors, and are not subject to any offset, defense, claim, counterclaim, setoff, recoupment, or any other diminution of any type, kind, or nature whatsoever; (ii) the HFS Loan Documents are legal, valid, binding and enforceable against the Debtors in accordance with their respective terms; and (iii) the liens and security interests granted to HFS, in, to, and against all of the HFS Collateral are valid, continuing, first priority liens enforceable, and properly perfected, and are not subject to avoidance under applicable state or federal law.

This paragraph I shall not affect the rights of parties other than the Debtors to pursue a challenge within the Lookback Period as provided in paragraph 24 below of this Order.

J.    HFS has provided the Debtors and the Post-Petition Lender with a payoff letter agreement dated as of March 16, 2017 (the "Payoff Letter") that identifies the amount of the HFS Obligations owing as of March 17, 2017, which includes, without limitation, all principal, interest, and other recoverable charges, costs and fees (including attorneys' fees), together with a reserve of no more than $25,000 (the "Reserve") to address other recoverable charges, costs, and fees, including, without limitation, attorneys' fees, that are recoverable under the HFS Loan Documents.

K.    At the hearing to consider the Motion, attorneys for CMS raised an issue as to the adequate protection of the pre-petition setoff rights of CMS in Medicare payables for services provided prior to the Petition Date owed to the Debtor (the "Pre-Petition CMS Payables") and

notified the Court that an administrative freeze had been placed upon the Pre-Petition CMS Payables.

L.     In response to the request of CMS for adequate protection for payment to the Debtor of the Pre-Petition CMS Payables, the Debtor and the Post-Petition Lender have offered the form of adequate protection as provided in this Interim Financing Order.

M.     Based on the record before this Court, it appears that the terms of this Interim Financing Order, including, without limitation, the terms of the Post-Petition Financing are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

N.     BLI has requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).   Absent granting the interim relief set forth in this Order, the Debtor's estate will be immediately and irreparably harmed.  Consummation of the Post-Petition Financing in accordance with this Order and the Post-Petition Documents is, therefore, in the best interest of the Debtor's estate.  Good cause has been shown for the entry of this Order.

Based upon the foregoing findings and conclusions, and upon the record made before this Court at the Hearing, and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED, DETERMINED AND DECREED** that:

**Motion Granted**

1.     The Motion is granted on the terms and conditions set forth in this Interim Financing Order, with the foregoing findings incorporated herein by reference. Any objections to the Motion that have not previously been withdrawn or resolved are hereby overruled. This Interim Financing Order shall be valid and binding on all parties-in-interest and fully effective immediately upon entry.

**Authorizations**

2.　The Debtor is hereby authorized to execute and enter into the Post-Petition Documents. The Post-Petition Note, the other Post-Petition Documents and this Interim Financing Order shall govern the financial and credit accommodations to be provided to the Debtor by the Post-Petition Lender as described herein; *provided* that in the event of a conflict between the Post-Petition Documents and the Interim Financing Order, the Interim Financing Order shall control.

3.　The Debtor is hereby authorized to obtain the Initial Credit Advance, on an interim basis, under the DIP Credit Agreement of up to an aggregate principal amount of $3,323,000.00 to be used satisfy the Capital One Obligations and to fund the Debtor's normal business operations in accordance with the Budget and the permitted variances set forth herein and the Post-Petition Documents. From the Initial Credit Advance under the DIP Credit Agreement as authorized by this Order, the full amount of the HFS Obligations as stated in the Payoff Letter shall be paid to HFS via wire transfer in accordance with the wire instructions stated in the Payoff Letter. The Debtors are hereby authorized to execute the Payoff Letter and deliver the fully executed Payoff Letter to HFS.

4.　In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents that the Post-Petition Lender determines to be required or necessary for the Debtor's performance of their obligations under the Post-Petition Documents, including without limitation:

　　i.　the execution, delivery and performance of the Post-Petition Documents, including, without limitation, the Post-Petition Note;

　　ii.　the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under

the Post-Petition Documents, in each case in such form as the Debtor and the Post-Petition Lender may agree; *provided, that*, written notice of any material modification or amendment to the Post-Petition Documents shall be filed on the docket of the Chapter 11 Case and shall be served upon (i) counsel to any official committee appointed in the Chapter 11 Case (the "Committee"), (ii) the U.S. Trustee, (iii) counsel to the holders of the Second Lien Notes, (iv) counsel to the Debtors, and (vi) all parties requesting service and appearing on the Bankruptcy Rule 2002 service list (collectively, the "Notice Parties") each of whom shall have ten (10) days from the date of service of such notice within which to object in writing to such modification or amendment. If any Notice Party (or any other party in interest with requisite standing) timely objects to any such material modification or amendment to the Post-Petition Documents, such modification or amendment shall only be effective pursuant to an order of this Court; and

iii.    the performance of all other acts required under or in connection with the Post-Petition Documents.

5.    Upon execution and delivery of the Post-Petition Note and the other Post-Petition Documents, such Post-Petition Documents shall constitute valid, binding and non-avoidable obligations of the Debtor enforceable against the Debtor in accordance with their respective terms and the terms of the Interim Financing Order to the fullest extent permitted under sections 364(e) of the Bankruptcy Code and Bankruptcy Rule 4001.

**Borrowing; Use of Cash Collateral**

6.    Subject to the Budget attached as Exhibit C as modified from time to time with the consent of the Post-Petition Lender in its sole discretion, but without need for further Court order and solely in compliance therewith and subject further to the terms and conditions of this Interim Financing Order and the Post-Petition Documents, (a) the Post-Petition Lender will provide the Post-Petition Financing in accordance with the terms of the Post-Petition Documents, and (b) the Debtor, on behalf of the Estate, is authorized to use Cash Collateral in accordance with the terms of the Interim Financing Order.

#42987529 v7

**Interest, Fees, Costs and Expenses**

7.      The Post-Petition Obligations shall bear interest at eight percent (8%) per annum payable as provided in the Post-Petition Note. After an Event of Default (as described below), the interest shall accrue at the interest rate set forth in the preceding sentence plus two percent (2%) per annum, along with costs and expenses as provided in the Post-Petition Note.

**Event of Default**

8.      Unless waived by the Post-Petition Lender in writing, the occurrence of any one or more of the events as set forth in the Section 9.01(a)-(t) of the DIP Credit Agreement, shall constitute an "Event of Default" under this Order.

9.      Upon the occurrence of an Event of Default and after ten (10) days' written notice by the Post-Petition Lender to the Notice Parties (the "Default Notice Period"), unless the Court rules otherwise, the automatic stay shall terminate, and the Post-Petition Lender shall be permitted to exercise any remedies permitted by law, including any of the following actions:

> i.      declare all or any portion of the outstanding Post-Petition Obligations due and payable, whereupon the same shall become, forthwith due and payable without presentment, demand, protest or notice of any kind, all of which are hereby waived by the Debtor;
>
> ii.     enforce all liens and security interests in the Post-Petition Collateral;
>
> iii.    institute proceedings to enforce payment of such Post-Petition Obligations;
>
> iv.     terminate the obligation of the Post-Petition Lender to make an additional Credit Advance; and
>
> v.      exercise any other remedies and take any other actions available to it at law, in equity, under the Post-Petition Note, the Bankruptcy Code, other applicable law or pursuant to this Financing Order.

#42987529 v7

*provided however* that the Post-Petition Lender shall continue to fund the Debtor's operations, pursuant to the Budget, through the Default Notice Period.

10. <u>Termination of the Post-Petition Financing and Use of Cash Collateral</u>. Except with respect to the payment of the Carve Out (as defined herein), the Post-Petition Lender's agreement to provide the Post-Petition Financing in accordance with the Post-Petition Documents and the Debtor's authorization to use Cash Collateral shall immediately and automatically terminate (except as the Post-Petition Lender may otherwise agree in writing in its sole discretion), upon the earliest to occur of any of the following (each, a "<u>Termination Date</u>"):

    i.    May 30, 2017;

    ii.    the date of final indefeasible payment and satisfaction in full in cash of the Post-Petition Obligations;

    iii.    the entry of an order by the Court granting a motion by the Debtor to obtain additional financing from a party other than Post-Petition Lender under section 364 of the Bankruptcy Code unless the proceeds from such financing are used to immediately repay in cash the Post-Petition Obligations or unless such financing is subordinate to the Post-Petition Obligations and consented to in writing by the Post-Petition Lender;

    iv.    the dismissal of the Chapter 11 Case or the conversion of the Chapter 11 Case into a case under chapter 7 of the Bankruptcy Code;

    v.    the Interim Financing Order is stayed, reversed, vacated, amended or otherwise modified in any respect without the prior written consent of the Post-Petition Lender (which consent may be withheld in its sole discretion); or

    vi.    upon ten (10) days written notice of any Event of Default as defined in paragraph 8 above.

**<u>Liens and Administrative Status to Secure the Post-Petition Obligations</u>**

11. <u>Superpriority Claims</u>. Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the Post-Petition Obligations shall constitute allowed senior administrative expense

claims against the Debtor (the "DIP Superpriority Claims") with priority over any and all administrative expenses, adequate protection claims, diminution claims and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, excluding, however, the proceeds of all Avoidance Actions and Estate Actions (as defined below) and subject at all times to the Carve Out to the extent specifically provided for herein.

12. DIP Liens. As security for the Post-Petition Funding Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the Post-Petition Lender of any property, the following security interests and liens are hereby granted to the DIP Lender (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"), in each case subject only to the Carve Out (all such liens and security interests granted to the DIP Lender on account of the DIP Obligations pursuant to this Order, the "DIP Liens") to provide Post-Petition Lender with a valid first and prior lien on all of Debtor's assets:

#42987529 v7

i.     <u>Senior Liens On Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected senior lien on, and security interest in, (i) all cash or cash proceeds; and (ii) all tangible and intangible prepetition and postpetition property of the Debtor, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to a valid, perfected, non-avoidable and enforceable lien in existence on or as of the Petition Date (collectively, the "<u>Unencumbered Property</u>"), including without limitation, any and all unencumbered cash, inventory, equipment, general intangibles, intercompany notes, insurance policies, contracts, securities, chattel paper, real property leaseholds, fixtures, machinery, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property and the proceeds of all of the foregoing.

ii.     <u>Priming Liens On Collateral Securing Second Lien Notes</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, senior priming lien on, and security interest in, all collateral of the holders of the Second Lien Notes (the "Second Lien Note Collateral"). The DIP Liens on the Second Lien Note Collateral shall be senior in all respects to the security interests in, and liens on, the Second Lien Note Collateral.

iii.     <u>Liens Senior To Certain Other Liens</u>. Except as provided herein, the DIP Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

iv.     <u>Avoidance Actions</u>. For purposes of the Interim Financing Order, the DIP Collateral shall expressly exclude the claims and the proceeds of any of the Estate's claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550, and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code (collectively, "<u>Avoidance Actions</u>") and other Estate causes of actions (the "<u>Estate Actions</u>"), which Avoidance Actions and Estate Actions shall not be subject to the Post-Petition Liens, Superpriority Claims or any other liens or superpriority claims.

#42987529 v7

**Carve Out**

13.     All liens and claims of or granted to the Post-Petition Lender and the liens and claims of the holders of the Second Lien Notes shall be and are subject and subordinate to the payment, without duplication, of the following fees and claims (in the amounts set forth below, together with the limitations set forth therein, collectively, the "Carve Out"): (a) all allowed fees and expenses of attorneys, investment bankers and financial advisors (collectively, the "Estate Professionals") employed by the Debtor or the Committee (as applicable) pursuant to sections 327, 328, 363, 1102 and 1103 of the Bankruptcy Code which are (i) accrued prior to the Termination Date to the extent set forth in (and limited by) the Budget and (ii) following the Termination Date up to $100,000 (the "Termination Carve-Out Amount"); and (b) quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the Clerk of the Bankruptcy Court or to the Debtor's appointed claims agent. After the Termination Date, the Post-Petition Lender will fund the Termination Carve-Out Amount and forward to counsel for the Debtor which shall hold such amount to pay fees and expenses as may be approved by order of this Court. Notwithstanding any other provision of this Interim Financing Order (including the paragraph above), and except as specifically provided in any order authorizing the retention of any Estate Professional, the Court retains and shall have all authority to consider and approve all applications for fees and expenses by any Estate Professionals, including for reasonableness thereof, or on any other basis under the Bankruptcy Code or Bankruptcy Rules, or otherwise under applicable law, and all funds that may be set aside for or applied to any such amounts or obligations shall remain fully subject to disgorgement or reallocation, based on the Court's orders exercising such reserved rights as described previously in this sentence, and all professionals described above in this sentence shall be and remain subject to the jurisdiction of this Court for the purposes described in this sentence.

-14-

14.     Notwithstanding the foregoing, none of the Carve Out proceeds from the Post-Petition Financing or Cash Collateral may be used (1) to investigate or challenge in any respect the validity, perfection, priority, extent or enforceability of the Post-Petition Liens, (2) to delay, challenge or impede any rights of the Post-Petition Lender under any of the Post-Petition Documents, or the Interim Financing Order, or (3) to pursue any claims or causes of action of any kind against the Post-Petition Lender, related to the Interim or Final Financing Order or the Post-Petition Note.

15.     Notwithstanding any other provision of this Interim Financing Order and except as provided for in any order approving the retention of an Estate Professional, under no circumstances shall any fees or expenses be paid to any Estate Professional absent order of the Court approving the same, upon application or motion on notice. Subject to the terms of the Interim Financing Order, the Debtor shall be permitted to pay compensation and reimbursement of any Court-approved reasonable fees and expenses of the Estate Professionals allowed and payable under sections 328, 330 or 331 of the Bankruptcy Code, as the same may be due and payable, that constitute pre-Termination Date expenses and such payments shall not reduce or be deemed to reduce the post-Termination Date fees and expenses. For the avoidance of doubt, and as provided for in the Post-Petition Note, the final Credit Advance Notice (the "Final Borrowing Notice") shall include the amount of accrued fees estimated to be due and owing to the Estate Professionals, pursuant to further order from the Court, including such Court-approved fees to be paid after the consummation of the Asset Sale. Such accrued amounts may not exceed the aggregate amounts budgeted under the Budget for each respective Estate Professional. The Post-Petition Lender will fund the Final Borrowing Notice from the Post-Petition Loans to be held by

#42987529 v7

counsel for the Debtor, or subsequently, a distribution agent, in a segregated account, payable only upon further fee order from the Court.

## Adequate Protection to Holders of the Second Lien Notes

16.     The holders of the Second Lien Notes are entitled pursuant to sections 361, 363(c)(2), and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Second Lien Note Collateral, including Cash Collateral, in an amount equal to the diminution in value of the Second Lien Note Collateral, including any such diminution resulting from the sale, lease, or use by the Debtor (or other decline in value) of the Second Lien Note Collateral and Cash Collateral, the priming by the DIP Liens of the Second Lien Note Collateral, as well as the imposition of the automatic stay (such diminution, the "Adequate Protection Obligations"). As adequate protection, the holders of the Second Lien Notes are hereby granted the following:

     i.     Adequate Protection Liens.  As security for the payment of the Adequate Protection Obligations, the holders of the Second Lien Notes are hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtor of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral (the "Adequate Protection Liens"), subject and subordinate only to (i) the DIP Liens, and (ii) the Carve Out.

     ii.     Section 507(b) Claim.  The Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the "507(b) Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331 and 726 of the Bankruptcy Code, subject and subordinate only to (i) the Carve Out and (ii) the DIP Superpriority Claims.

## Automatic Perfection of DIP Liens and Adequate Protection Liens

17.    The Post-Petition Lender and the holders of the Second Lien Notes are authorized, but not required, to file or record financing statements, intellectual property filings, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the DIP Liens and the Adequate Protection Liens granted to it hereunder.  Regardless of whether the Post-Petition Lender or the holders of the Second Lien Notes shall in their respective sole discretion choose to file such financing statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the DIP Liens or Adequate Protection Liens, such DIP Liens and Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.

18.    A certified copy of this Order may, in the discretion of the Post-Petition Lender or the holders of the Second Lien Notes, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

19.    Debtors are authorized to execute and deliver to the Post-Petition Lender and the holders of the Second Lien Notes all such agreements, financing statements, instruments, and other documents as the Post-Petition Lender and the holders of the Second Lien Notes may request to evidence, confirm, validate or perfect the DIP Liens or the Adequate Protection Liens.

## Preservation of Rights Granted Under this Interim Financing Order

20.    No claim or lien having a priority superior to or *pari passu* with those granted by the Interim Financing Order to the Post-Petition Lender shall be granted or allowed,

-17-

except as to Permitted Liens[4] and as provided under applicable non-bankruptcy law, until the occurrence of (i) the payment in full in cash or immediately available funds of all of the Post-Petition Obligations.

21.     If an order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is entered at any time prior to the Post-Petition Obligations being Paid in Full, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, Post-Petition Liens granted to the Post-Petition Lender, the Adequate Protection Obligations granted to the holders of the Second Lien Notes and the Carve Out shall continue in full force and effect and shall maintain their priorities as provided in the Interim Financing Order until all Post-Petition Obligations shall have been indefeasibly paid in cash in full (and that such Superpriority Claims and Post-Petition Liens and Adequate Protection Obligations, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) to the extent permitted by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

22.     If any or all of the provisions of the Interim Financing Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority or enforceability of any Post-Petition Obligations incurred prior to the actual receipt of written notice by the Post-Petition Lender of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of the Superpriority Claims and Post-Petition Liens granted hereby with respect to any Post-Petition Obligations. To the extent permitted by applicable law, notwithstanding any such reversal, stay, modification or

---

[4]     As defined in the DIP Credit Agreement.

vacation, any use of Cash Collateral or Post-Petition Obligations incurred by the Debtor prior to the actual receipt of written notice by the Post-Petition Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of the Interim Financing Order, and the Post-Petition Lender shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, the Interim Financing Order and pursuant to the Post-Petition Documents with respect to all uses of Cash Collateral and the Post-Petition Obligations.

23. Except as expressly provided in the Interim Financing Order or in the Post-Petition Documents, or until the Post-Petition Obligations are Paid in Full, the Post-Petition Liens, the Superpriority Claims, and all other rights and remedies of the Post-Petition Lender granted by the provisions of the Interim Financing Order and the Post-Petition Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7, or dismissing the Chapter 11 Case or (ii) the entry of an order confirming a plan of reorganization in the Chapter 11 Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining Post-Petition Obligations. The terms and provisions of the Interim Financing Order and the Post-Petition Documents shall continue in the Chapter 11 Case, or in any superseding chapter 7 case under the Bankruptcy Code, and the Post-Petition Liens, and the Superpriority Claims and all other rights and remedies of the Post-Petition Lender granted by the provisions of the Interim Financing Order and the Post-Petition Documents shall continue in full force and effect until the Post-Petition Obligations are Paid in Full.

**HFS Provisions**

24. On or before the date that is seventy five (75) days from the Petition Date (the "Lookback Period"), the official committee of unsecured creditors, as and when appointed

(the "Committee") or any other party with standing to make any such Challenge (defined below) may object to, challenge, or seek to avoid the amount, validity, or enforceability of the HFS Obligations (or any portion thereof) or any of HFS' liens and security interests in the HFS Collateral securing the HFS Obligations (separately and collectively, a "Challenge"). If no such action, objection or other Challenge is commenced by a Committee (or any other party with standing) within the Lookback Period, the HFS Obligations will be deemed and adjudicated finally and indefeasibly as valid and enforceable, HFS' liens and security interests in the HFS Collateral securing the HFS Obligations will be deemed and adjudicated finally and indefeasibly as valid, enforceable and perfected liens and security interests in that collateral, and any affirmative claim(s) or cause(s) of action of any kind against HFS with respect to the HFS Loan Documents, the HFS Obligations, the liens and security interests securing the HFS Obligations, or any payment received by HFS (including, without limitation, the payoff payment to HFS made from the Initial Credit Advance) will be forever barred. As provided in this Interim Order, the Debtors have waived and released, and shall be forever barred from asserting, any right to object to, challenge or seek to avoid, the amount, validity, or enforceability of the HFS Obligations or HFS' liens and security interests in the HFS Collateral securing the HFS Obligations. Subject to entry of the Final Financing Order, HFS will retain standing in the Cases until the expiration of the Lookback Period with no Challenge being asserted.

25.     Subject to further Order of the Court and notwithstanding any other provision of this Order, in the event any payment made to, or other amount or value received by HFS from or for the account of any of the Debtors is avoided, rescinded, set aside or must otherwise be returned or repaid by HFS, whether in the Bankruptcy Cases or any other proceedings, the indebtedness intended to be repaid thereby shall be reinstated (without any

further action by any party or the Court) and shall be enforceable against the Debtors, the Debtors' estates in the Bankruptcy Cases, and the Debtors' successors or assigns. In such event, the Debtors shall be and remain liable to HFS for the amount so repaid or recovered to the same extent as if such amount had never originally been received by HFS, with interest accruing thereon from and after the date such amount is so repaid or recovered, and any of HFS' claims, liens, rights, and remedies under the HFS Loan Documents which survive such action shall be reinstated and fully preserved, including, to the extent necessary to protect HFS's interest, a lien on the DIP Collateral junior only to the DIP Liens granted to the Post-Petition Lender.

26.     Nothing in this Order shall affect the rights of HFS or any other party under that certain Amended and Restated Subordination Agreement entered into as of February 21, 2017,  by and among the Subordinated Creditors (as defined therein) and Healthcare Financial Solutions, LLC, in its capacity as agent for the lenders under the Senior Loan Agreement (as defined therein), and consented to and acknowledged by Bostwick Laboratories, Inc. and Bostwick Laboratories Holdings, Inc. (the "Subordination Agreement"). Without limiting the foregoing, all claims, liens, and other rights or protections granted to the holders of the Second Lien Notes under this Order shall be subject in all respects to the Subordination Agreement.

27.     The Payoff Letter includes a reserve $25,000 Reserve for amounts that may be incurred by HFS or otherwise be recoverable by HFS during the Lookback Period or in connection with any Challenge ("Additional HFS Obligations"). HFS is authorized to apply the Reserve to satisfy Additional HFS Obligations, as and when they become due. HFS shall remit to the Post-Petition Lender any remaining Reserve after satisfaction of all Additional HFS Obligations upon the first to occur of: (i) the expiration of the Lookback Period with no timely

#42987529 v7

Challenge having been commenced; or (ii) in the event a Challenge is timely commenced by the Committee (or other party with standing) within the Lookback Period, when such Challenge is resolved pursuant to a final non-appealable order ("Reserve Release Date"). In the event the Reserve is not sufficient to pay in full any Additional HFS Obligations, HFS shall have a super-priority administrative expense claim under Bankruptcy Code Section 507(b) to the full extent necessary to pay in full all Additional HFS Obligations, which claim shall be junior only to the DIP Super-Priority Claims.

### Release of Administrative Freeze on the Pre-Petition CMS Payables and Adequate Protection to CMS

28.     <u>Release of Administrative Freeze on the Pre-Petition CMS Payables</u>. Upon entry of this Interim Financing Order CMS shall release the administrative freeze placed on the Pre-Petition CMS Payables after the filing of this Case, and, as promptly as possible, make payment to the Debtor of the amounts made subject the administrative freeze and thereafter make payments to the Debtor in the normal course of business in accordance with the Medicare statute and regulations under the Social Security Act, 42 U.S.C. § 1395-1395lll and 42 C.F.R. Chapter IV (collectively, the "Medicare Program"), subject to the events of default set forth below (the "CMS Events of Default").

29.     <u>Recoupment</u>.  CMS may recoup from Medicare payments made post-petition in the normal course of business without regard as to whether the debts/payments are for Medicare services provided by BLI pre-petition or post-petition.

30.     <u>Right of Setoff in Post-Petition CMS Payables</u>.  Notwithstanding anything else in this Order, as adequate protection for any diminution in the value of the Pre-Petition CMS Payables, CMS is granted a right of setoff in Medicare payables owed for services provided post-

#42987529 v7

petition by the Debtor (the "Post-Petition CMS Payables") to the extent of such diminution in the value of the Pre-Petition CMS Payables.

31. CMS and BLI shall retain all of their procedural rights in regard to the Pre-Petition CMS Payables and the Post-Petition CMS Payables.[5]

32. The right of setoff in the Post-Petition CMS Payables provided in paragraph 30 is subject to the requirement of (i) the occurrence of an CMS Event of Default, (ii) the imposition of an administrative freeze on the Post-Petition CMS Payables, (iii) the filing of a motion for modification of the automatic stay imposed pursuant to Section 362 of the Bankruptcy Code and (iv) the entry of an order of this Court authorizing such modification of the stay.

33. CMS Events of Default. Upon the occurrence of any of the CMS Events of Default as defined below, CMS may impose an administrative freeze on the Post-Petition CMS Payables and proceed promptly with the filing of a motion for modification of the automatic stay imposed pursuant to Section 362 of the Bankruptcy Code to allow it to effectuate its setoff rights:

    i. a motion is filed by the Debtor to convert this case to a case under chapter 7 of the Bankruptcy Code;

    ii. except in connection with the sale of its Assets, the Debtor closes or ceases operating/billing Medicare, or its participation in the Medicare program terminates;

    iii. the Post-Petition Lender asserts an Event of Default under the DIP Credit Facility and as provided in this Interim Financing Order, unless the Court rules that no such default has occurred;

    iv. the Sale does not close by June 30, 2017;

---

[5] Post-Petition CMS Payables, Pre-Petition CMS Payables and any overpayments arising therefrom must be decided exclusively under the Medicare Program, including, but not limited to, the jurisdictionally required exhaustion of administrative remedies.

v.      the entry of an order dismissing the Cases;

vi.      a plan of liquidation or a plan which contemplates liquidation of substantially all the Debtors' assets is filed and does not provide for assumption of the United States' claim in the amount of the Pre-Petition CMS Payables (the "Government Claim Amount"); or

vii.      authority to use cash collateral under the Interim Financing Order or the Final Financing Order terminates and the Debtor does not have authority to use cash collateral under a subsequent cash collateral order.

34.      <u>Payment of the Government Claim Amount</u>. BLI and Poplar Healthcare, PLLC will enter into an amended Asset Purchase Agreement (the "Amended APA"). The Amended APA shall provide that the Purchase Price shall be increased by the amount necessary to pay the Government Claim Amount in full in cash from the proceeds of the sale to be paid upon the closing of the sale in accordance with the Sale Order. The Debtor and CMS will work together to liquidate the Government Claim Amount by the Final DIP Hearing.

35.      The proposed bid procedures shall be modified so that any conforming bid must provide that in the event Poplar Healthcare, PLLC is not the successful purchaser of the assets as the result of an overbid, the successful bidder shall pay the United States the Government Claim Amount in full in cash from the proceeds of the sale upon the closing of the sale in accordance with the Sale Order.

36.      Any pre-petition claims of the Department of Justice ("DOJ") related to its settlement agreement dated August 27, 2014 with BLI or any pre-petition claims of CMS above the Government Claim Amount shall be treated as pre-petition unsecured claims in the Cases along with other creditors of the Debtors. For the avoidance of doubt, CMS retains any administrative expense claims arising from Post-Petition CMS Payables to Debtors.

37.      <u>Release</u>. With the exception of its rights in regard to the Pre-Petition CMS Payables and the Post-Petition CMS Payables, BLI acknowledges and agrees that, as of the date

-24-

hereof it has no claim or cause of action against CMS or DOJ and to the extent such claim or cause of action exists, known or unknown, BLI hereby waives, releases and discharges CMS and the DOJ, from any and all claims, demands, avoidance actions or other causes of action, including but not limited to actions arising under section 547 of the Bankruptcy Code, on or before the date hereof other than its rights afforded in regard to the Pre-Petition CMS Payables and the Post-Petition CMS Payables.

**Effect of Stipulations on Third Parties**

38.     Each stipulation, admission and agreement contained in the Interim Financing Order, shall be binding upon the Debtor, and any successor thereto (including, without limitation, any chapter 7 trustee or any chapter 11 trustee appointed or elected for the Debtor) under all circumstances and for all purposes existing as of the date hereof.

39.     Subject to entry of the Final Financing Order, notwithstanding anything to the contrary herein, upon written notice to the landlord of any of Debtor's leased premises that an Event of Default has occurred and is continuing, to the extent allowed by applicable non-bankruptcy law, the Post-Petition Lender shall be entitled to the Debtor's rights and privileges under such lease(s) without interference from such landlord, including, if applicable, the right to enter upon such leased premises for the purpose of exercising any right or remedy with respect to the collateral located thereon; *provided* that such Post-Petition Lender shall pay to such landlord rent first accruing after the above referenced written notice and during the period of occupancy by such Post-Petition Lender, calculated on a per diem basis and any such amount paid shall be deemed to be Post-Petition Obligations, as applicable.

**Binding Effect on Successors and Assigns**

40.     The Post-Petition Documents and the provisions of the Interim Financing Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11

Case, including, without limitation, the Committee, if any, the Debtor, the Post-Petition Lender and each of their respective successors and assigns (including any chapter 7 or any chapter 11 trustee hereafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the Post-Petition Lender, the Debtor, and each of their respective successors and assigns, *provided, however*, that the Post-Petition Lender shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtor. In determining to make any Credit Advance (whether under the Post-Petition Note or otherwise) or permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to the Interim Financing Order or the Post-Petition Documents, the Post-Petition Lender shall not (i) be deemed to be in control of the operations of the Debtor, or (ii) (subject to entry of a final order) be deemed to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, *et seq.*, as amended, or any similar federal or state statute).

**Limitation on Use of Post-Petition Financing and DIP Collateral**

41.     The Debtor shall use the Post-Petition Financing solely as provided in this Order and the Budget. Notwithstanding anything herein or in any other order of this Court to the contrary, no Credit Advances under the Post-Petition Financing, no DIP Liens, no DIP Collateral, no Adequate Protection Obligations, no 507(b) Claims, no Adequate Protection Liens, or the Carve Out may be used to (a) object, prosecute, contest, or raise any defense to the

-26-

validity, perfection, priority, extent, or enforceability of any amount due under the Post-Petition Documents, the Post-Petition Funding Obligations, the Adequate Protection Obligations, the Second Lien Notes, the DIP Liens, the Adequate Protection Obligations, or the liens or claims granted under this Order or the DIP Documents, (b) assert any Claims and Defenses, Avoidance Actions, or any other causes of action against the Post-Petition Lender or its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors, (c) prevent, hinder, or otherwise delay the Post-Petition Lender's assertion, enforcement, or realization on the DIP Collateral in accordance with the Post-Petition Documents or this Order, (d) seek to modify any of the rights granted to the Post-Petition Lender hereunder or under the Post-Petition Documents (including the adequate protection granted herein), in the case of each of the foregoing clauses (a) through (d), without the Post-Petition Lender's prior written consent, or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) permitted under the Post-Petition Documents

**Credit Bid**

42.     Subject to section 363(k) of the Bankruptcy Code and entry of this Interim Financing Order, the Post-Petition Lender shall have the right to "credit bid" the full amount of the Post-Petition Obligations then outstanding in connection with the Asset Sale or any sale of all or any portion of the Debtor's assets, including, without limitation, a sale transaction under section 363 of the Bankruptcy Code.

**Effectiveness**

43.     This Interim Financing Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024, any other Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, the Interim Financing

#42987529 v7

Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of the Interim Financing Order.

## Controlling Effect of Interim Financing Order

44.    To the extent any provisions in this Interim Financing Order conflict with any provisions of the Motion, or any Post-Petition Document, the provisions of this Interim Financing Order shall control.

## Final Hearing

45.    The Final Hearing to consider to consider entry of a Final Financing Order authorizing the Post-Petition Financing on a final basis shall be held, if necessary, on April 13, 2017 at 9:00 a.m. (ET) before this Court.

## Final Hearing Notice

46.    The Debtor shall promptly mail copies of this Interim Financing Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to the Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon (i) counsel to the Debtor, Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899, Attn: David B. Stratton, Esq.(ii) counsel to the Post-Petition Lender, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 18th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Attn:   Derek Abbot, Esq., and Baker Donelson Bearman Caldwell & Berkowitz, PC, 165 Madison Avenue, Suite 2000, Memphis, Tennessee 38103, Attn:  E. Franklin Childress, Jr, (iii) counsel to any committee of unsecured creditors appointed in the Chapter 11 Case, (iv) the Office of the U.S. Trustee for the District of Delaware,

-28-

844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 and (v) parties required by Bankruptcy Rule 2002(a) and shall be filed with the Clerk of the United States Bankruptcy Court, District of Delaware, in each case to allow actual receipt by the foregoing no later than April 6, 2017 at 4:00 p.m., prevailing Eastern time.

Dated: March 20, 2017
Wilmington, Delaware

HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE

#42987529 v7