IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Bostwick Laboratories, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-10570 (BLS)<br><br>(Jointly Administered)<br><br>Objection Deadline: April 6, 2017 at 4:00 p.m. (ET)<br>Hearing Date: April 13, 2017 at 9:00 a.m. (ET) |

**APPLICATION OF DEBTORS (I) TO RETAIN CARROLL SERVICES, LLC AND (II) DESIGNATE JAMES PATRICK CARROLL AS INDEPENDENT DIRECTOR AND CHIEF RESTRUCTURING OFFICER TO THE DEBTORS,
*NUNC PRO TUNC* TO THE PETITION DATE**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby move, pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), for entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the engagement and retention of Carroll Services LLC ("Carroll Services") and (ii) designating James Patrick Carroll ("Mr. Carroll") to serve as Independent Director and Chief Restructuring Officer (the "CRO") *nunc pro tunc* to March 15, 2017, pursuant to the terms set forth in the engagement letter (the "Engagement Letter") dated March 4, 2017, by and between Carroll Services and the Debtors. A true and correct copy of the Engagement Letter is attached as Exhibit 1 to the *Declaration of James Patrick Carroll* (the "Carroll Declaration"), attached hereto as **Exhibit B**. In further support of this Application, the Debtors respectfully states as follows:

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): (i) Bostwick Laboratories, Inc., a Delaware corporation (3169); and (ii) Bostwick Laboratories Holdings, Inc., a Delaware corporation (1042). The mailing address for the Debtors is 100 Charles Lindbergh Blvd., Uniondale, NY 11553.

-1-

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtors confirm their consent pursuant to Rule 9013-1(f) of the *Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware* (the "Local Rules") to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. The bases for the relief requested herein are sections 105 and 363 of the Bankruptcy Code, Bankruptcy Rule 2016 and Local Rules 2014-1 and 2016-2.

## BACKGROUND

4. On March 15, 2017 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases.

5. The Debtors operate an independent, full-service anatomic pathology laboratory and are a specialty provider of diagnostic testing services for urologists and gynecologists in the U.S. The Debtors operate a reference laboratory offering a comprehensive suite of anatomic pathology and molecular testing services to independent physicians nationally.

6. The Debtors continue to operate their business and manage their property as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7. No trustee, examiner, creditors' committee, or other official committee has been appointed in these chapter 11 cases.

8. Additional information regarding the Debtors and these cases, including the Debtors' business, organizational structure, financial condition, and the reasons for and objectives of these cases, is set forth in the *Declaration of Tammy Hunt in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") (Docket No. 3), incorporated herein by reference.

## RELIEF REQUESTED

9. By this Application, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the engagement and retention of Carroll Services and (ii) designating Mr. Carroll to serve as Independent Director and CRO *nunc pro tunc* to March 15, 2017, pursuant to the terms set forth in the Engagement Letter.

## CARROLL SERVICES' QUALIFICATIONS

10. Mr. Carroll, the principal of Carroll Services, has considerable experience in providing interim management services and enjoys an excellent reputation for services he has rendered in large and complex chapter 11 cases on behalf of debtors and creditors throughout the United States. Mr. Carroll has provided restructuring and liquidating services to companies experiencing operational and financial difficulties across a broad spectrum of industries, including construction, manufacturing, retail, engineering, utilities, automotive, and financial services. In addition, prior to Mr. Carroll's involvement in restructuring or liquidating troubled

companies, he was employed by Stone & Webster Incorporated in a variety of positions, culminating in the role of President and Chief Restructuring Officer.

11.     Based on the experience noted above, the Debtors believe that Mr. Carroll can provide the skills and experience necessary for an efficient and effective administration of these bankruptcy cases and to maximize recovery for the Debtors' estates. Furthermore, Mr. Carroll performed significant prepetition work for the Debtors, and as a result has acquired significant knowledge of the Debtors and their businesses, and familiarity with the Debtors' financial affairs, debt structure, operations, and related matters. Likewise, in providing prepetition services to the Debtors, Mr. Carroll has worked closely with the Debtors' management and their other advisors. Accordingly, Mr. Carroll has experience, expertise, and specifically relevant knowledge regarding the Debtors that will assist him in providing effective and efficient services in these chapter 11 cases. The Debtors submit that the designation of Mr. Carroll as Independent Director and CRO and the retention of Carroll Services on the terms and conditions set forth herein and the Engagement Letter are necessary and appropriate, in the best interest of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## SERVICES TO BE PROVIDED

12.     Prior to the Petition Date, the Debtors and Carroll Services entered into the Engagement Letter, which governs the relationship between them. Below is a summary of the terms of the Engagement Letter.

  a.     <u>Services to Be Provided</u>:

(1) In connection with this engagement, Carroll Services shall make available to the Debtors James Patrick Carroll to serve as Independent Director and CRO of the Debtors.

(2) <u>Independent Director Role</u>: (1) Assisting the Debtors' board of directors ("<u>Board</u>") in bringing to bear for the benefit of the Board the Independent Director's particular knowledge and experience; (2) faithfully, efficiently, competently and diligently perform his duties and exercise such powers as are appropriate to his role as an Independent Director; (3) insofar as reasonably possible, attend all meetings of the Board and of any committees of the Board of which he is a member; (4) promptly declare, so far as he is aware, the nature of any interest, whether direct or indirect, in any contract or proposed contract entered into by any member of the Debtors; (5) comply with all reasonable requests, instructions and regulations given by the Chairman of the Board (or by any duly authorized committee thereof) and give to the Chairman of the Board such explanations, information and assistance as the Chairman of the Board may reasonably require; and (6) act in the best interests of the Debtors.

(3) <u>CRO Role</u>: (1) Take any and all actions that are necessary, advisable or appropriate to assist the Debtors with their ongoing operations; (2) assist the Debtors in preparation for a transaction; and (3) to assist Debtors' counsel in the preparation of and support for any legal actions to be undertaken by the Debtors, including but not limited to, the filing of these chapter 11 cases and the sale of the Debtors' assets in a section 363 proceeding.

(4) <u>Additional Responsibilities</u>.  Upon the mutual agreement of the Debtors and Carroll Services, Carroll Services may provide such additional personnel as the

Debtors may request to assist in performing the services described above and such other services as may be agreed to, on such terms and conditions, and for such compensation as the Debtors and Carroll Services shall agree.

## NO DUPLICATION OF SERVICES

13. The services provided by Carroll Services will complement, and not duplicate, the services to be rendered by other professionals retained in these chapter 11 cases.

## TERMS OF RETENTION

14. Carroll Services' decision to accept this engagement is conditioned upon its ability to be retained in accordance with its customary terms and conditions of employment, compensated for its services, and reimbursed for the out-of-pocket expenses it incurs in accordance with its customary billing practices. As set forth in the Engagement Letter, Carroll Services will be compensated at a rate of $435 per hour for the services of James Patrick Carroll as Independent Director and Chief Restructuring Officer. In addition, Carroll Services will be reimbursed by the Debtors for the reasonable out-of-pocket expenses of the Independent Director and Chief Restructuring Officer, and if applicable, other personnel of Carroll Services, incurred in connection with this assignment, such as travel, lodging, and telephone charges.

15. To the best of the Debtors' knowledge, the compensation arrangement described above is consistent with and typical of arrangements entered into by Carroll Services and other restructuring consulting firms with respect to rendering similar services for clients such as the Debtors. Moreover, there is no agreement or understanding between Carroll Services and any other person or entity for sharing compensation received or to be received for services rendered by Carroll Services in connection with these chapter 11 cases, except as permitted by

Bankruptcy Code section 504. Carroll Services has received no payments, either before or after the Petition Date, from any entity in connection with the engagement proposed herein.

16. Upon approval of the relief requested, Carroll Services will not be employed as a professional under section 327 of the Bankruptcy Code, and it will not submit fee applications pursuant Bankruptcy Code sections 330 and 331. Carroll Services will, however, file with the Court, and provide reports of compensation earned and expenses incurred on a quarterly basis ("Compensation Reports") to the U.S. Trustee and counsel to any statutory committee appointed in these chapter 11 cases (the "Notice Parties"). Carroll Services will submit Compensation Reports within 30 days of the end of each three-month quarterly period. Such reports shall summarize the services provided and identify the compensation earned and expenses incurred by Carroll Services. The Notice Parties shall have 14 days after the date each Compensation Report is served upon them to object. Such compensation and expenses will be subject to Court review in the event an objection is filed. Carroll Services will file its first Compensation Report by July 30, 2017 for the period covering the Petition Date through June 30, 2017.

17. Prior to the Petition Date, the Debtors paid Carroll Services $25,000 (the "Retainer"). The Debtors and Carroll Services have agreed that any portion of the Retainer has not been used to compensate Carroll Services for its prepetition services and reasonable and documented out-of-pocket expenses will be held and applied against its final post-petition billing and will not be placed in a separate account.

**CARROLL SERVICES' DISINTERESTEDNESS**

18. To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Carroll Declaration: (a) Carroll Services has no connection with the Debtors,

-7-

#43043618 v4

their creditors, or other parties in interest, or the attorneys or accountants of the foregoing, or the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") or any person employed in the Office of the U.S. Trustee; and (b) does not hold any interest adverse to the Debtors' estates.

19. Although the Debtors respectfully submit that the retention of Carroll Services is not governed by section 327 of the Bankruptcy Code, the Carroll Declaration discloses certain connections with creditors, equity security holders, and other parties-in-interest in these chapter 11 cases. Carroll Services does not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these chapter 11 cases. Accordingly, the Debtors submit that Carroll Services is a "disinterested person" as that term is defined by section 101(14) of the Bankruptcy Code.

20. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Carroll Services' retention are discovered or arise, Debtors submit that Carroll Services will use reasonable efforts to file promptly a supplemental declaration.

**INDEMNIFICATION**

21. The Engagement Letter provides that the Debtors will indemnify the Independent Director and the Chief Restructuring Officer to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Debtors' bylaws and corporate charter, by contract or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to the Independent Director and the Chief Restructuring Officer.

22. The Debtors and Carroll Services believe that the indemnification provisions contained in the Engagement Letter are customary and reasonable for Carroll Services and comparable firms providing restructuring services.

23. The terms and conditions of the indemnification provisions were negotiated by the Debtors and Carroll Services at arm's length and in good faith. The provisions contained in the Engagement Letter are reasonable and in the best interest of the Debtors, their estates, and creditors in light of the fact that the Debtors require Carroll Services' services to successfully reorganize.

**APPLICABLE AUTHORITY**

24. Bankruptcy Code section 105 provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). As noted above, the Debtors believe that their entry into the Engagement Letter is in furtherance of their liquidation and reorganization efforts and is in accordance with their fiduciary obligations to their bankruptcy estates.

25. Moreover, Bankruptcy Code section 363(b) provides, in relevant part, that a debtor in possession "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Under applicable case law, in this and other circuits, if a debtors' proposed use of its assets pursuant to Bankruptcy Code section 363(b) represents a reasonable business judgment on the part of the debtor, such use should be approved. See, e.g., In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (Bankr. D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate under this section, courts require the debtor to show that a sound business purpose justifies such actions."); see also In re Del. & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

The retention of corporate officers as proposed by the Motion is proper under Bankruptcy Code section 363. Numerous courts have authorized retention of officers based on this provision of the Bankruptcy Code. <u>See e.g.</u>, <u>In re Radnor Holdings Corp.</u>, (Case No. 06-10894) (PJW) (Bankr. D. Del. March 13, 2007) (retention of Carroll Services and James P. Carroll as chief liquidating officer).

26. The decision to retain Carroll Services and employ Mr. Carroll as Independent Director and CRO should be authorized because it is a sound exercise of the Debtors' business judgment. As set forth above, Mr. Carroll has extensive experience as an officer and advisor for many companies undertaking restructuring efforts, and as such he is well qualified and equipped to assist the Debtors in these chapter 11 cases. Carroll Services and Mr. Carroll, in his capacity as Independent Director and CRO, will provide services that are in the best interests of all parties in interest in these chapter 11 cases.

**NOTICE**

27. Notice of this Application shall be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' consolidated top twenty (20) largest unsecured creditors, as identified in their chapter 11 petitions; (c) the DIP Lender; and (d) all parties requesting notices in these cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested in this Application, the Debtors submit that no further notice is necessary.

**NO PRIOR REQUEST**

28. No prior Application for the relief requested herein has been made to the Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Application and such other and further relief as may be just and proper.

Dated: March 22, 2017

Bostwick Laboratories, Inc., *et al.*

Name: Tammy Hunt
Title: Chief Financial Officer

#43043618 v4