# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Bostwick Laboratories, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-10570 (BLS)<br><br>(Jointly Administered)<br><br>Objection Deadline: April 6, 2017 at 4:00 p.m. (ET)<br>Hearing Date: April 13, 2017 at 9:00 a.m. (ET) |

**APPLICATION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE EMPLOYMENT AND RETENTION OF LEERINK PARTNERS LLC AS INVESTMENT BANKER *NUNC PRO TUNC* TO THE PETITION DATE AND (II) WAIVING CERTAIN TIME-KEEPING REQUIREMENTS OF LOCAL RULE 2016-2**

The above-captioned debtors and debtors in possession (the "Debtors") file this application (the "Application") for an order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors to retain and employ Leerink Partners LLC ("Leerink") to serve as the Debtors' investment banker, pursuant to sections 327(a) and 328(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2014-1 and 2016-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), *nunc pro tunc* to March 15, 2017 in accordance with the terms and conditions set forth in that certain engagement letter dated as of August 24, 2016, attached hereto as **Exhibit B**, and as revised pursuant to this Application the ("Engagement Letter") (ii) waiving certain time-keeping requirements pursuant to Local Rule 2016-2 and (iii) granting such other and further relief as is just and proper. In support of this Application,

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): (i) Bostwick Laboratories, Inc., a Delaware corporation (3169); and (ii) Bostwick Laboratories Holdings, Inc., a Delaware corporation (1042). The mailing address for the Debtors is 100 Charles Lindbergh Blvd., Uniondale, NY 11553.

the Debtors submit the declaration of Jeff Danesis (the "Danesis Declaration") attached hereto as **Exhibit C**. In further support of this Application, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. The bases for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1 and 2016-2.

## BACKGROUND

4. On March 15, 2017 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby commencing the above captioned bankruptcy cases.

5. The Debtors operate an independent, full-service anatomic pathology laboratory and are a specialty provider of diagnostic testing services for urologists and gynecologists in the U.S. The Debtors operate a reference laboratory offering a comprehensive suite of anatomic pathology and molecular testing services to independent physicians nationally.

6. The Debtors continue to operate their business and manage their property as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

7. No trustee, examiner, creditors' committee, or other official committee has been appointed in these chapter 11 cases.

8. Additional information regarding the Debtors and these cases, including the Debtors' business, organizational structure, financial condition, and the reasons for and objectives of these cases, is set forth in the Declaration of Tammy Hunt in Support of Chapter 11 Petitions and First Day Pleadings (the "First Day Declaration") (Docket No. 3), which is incorporated herein by reference.

**RELIEF REQUESTED**

9. By this Application, the Debtors respectfully request the entry of an order, substantially in the form attached hereto as **Exhibit A**, (a) authorizing the Debtors to employ and retain Leerink as the Debtors' investment banker pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016 and Local Rules 2014-1 and 2016-2, *nunc pro tunc* March 15, 2017 in accordance with the terms and conditions set forth in the Engagement Letter; (b) waiving certain time-keeping requirements of Local Rule 2016-2 and (c) granting related relief. The Engagement Letter describes (i) the various services that the Debtors seek Leerink to perform on their behalf during these cases and (ii) the terms and conditions of the proposed engagement of Leerink by the Debtors (as modified by this Application).

## LEERINK'S QUALIFICATIONS
## AND THE NEED FOR LEERINK'S SERVICES

10. In consideration of the size and complexity of their businesses, as well as the exigencies of the circumstances, the Debtors have determined that the services of experienced investment bankers are necessary and will substantially enhance their attempts to maximize the value of their estates. Leerink is an investment banking firm with extensive experience in the health care industry. Leerink's sole focus is that of providing investment banking services to the health care industry, with substantial experience across equity underwriting and mergers and acquisitions. Leerink's investment bankers have substantive experience as a mergers and acquistions advisor, including having acted as advisors on several transactions within the laboratory services sector. Leerink leverages their 200 employees across four offices to provide their clients with market leading health care knowledge and sector insights with unique resources and relationships to evaluate strategic transactions

11. As a result of the prepetition work performed on behalf of the Debtors, Leerink has acquired significant insight into and institutional knowledge of the Debtors and their businesses and their assets and is intimately familiar with the Debtors' financial affairs, debt structure, operations and related matters. In providing prepetition services to the Debtors, Leerink has worked closely with the Debtors' senior management and their other advisors and has gained familiarity with the Debtors' assets and major issues that will be involved in these chapter 11 cases. Accordingly, Leerink has developed relevant experience and expertise regarding the Debtors that (i) make Leerink a natural selection as the Debtors' investment banker and (ii) will assist Leerink in providing effective and efficient services in these chapter 11 cases.

## SERVICES TO BE PROVIDED BY LEERINK

12. The parties have entered into the Engagement Letter. The terms and conditions of the Engagement Letter were negotiated between the Debtors and Leerink at arm's-length and in good faith, and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Under the Engagement Letter, in consideration for the compensation contemplated by this Application, Leerink has provided and has agreed to provide such of the following investment banking services if and as the Debtors may reasonably request:

   a. assist the Company in analyzing and evaluating the business, operations, and financial position of the Company;

   b. assist the Company in the preparation of descriptive materials for distribution and presentation to potential purchasers;

   c. assist the Company in the preparation and implementation of a marketing plan;

   d. assist the Company in the screening of potential purchasers assist the Company in coordinating the potential purchasers' due diligence investigations;

   e. assist the Company in evaluating proposals that are received from potential purchasers;

   f. assist the Company in structuring and negotiating a Transaction (including, as to form and structure of, and consideration to be received or paid, as the case may be, in a Transaction- as that term is defined in the Engagement Letter);

   g. meet with the Company's Board of Directors (or equivalent governing body) (the "Board of Directors") to discuss a proposed Transaction and its financial implications; and

   h. perform any such additional services as may be mutually agreed by the Company and Leerink.

13. The services that Leerink will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates. The Debtors believe that the services will not duplicate the services that other professionals will be providing to the Debtors in these

chapter 11 cases. Specifically, Leerink will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

**TERMS OF RETENTION**

14. Subject to approval by the Court, the Debtors propose to employ and retain Leerink to serve as the Debtors' investment banker on the terms and conditions set forth in the Engagement Letter and this Application.

**COMPENSATION AND EXPENSES**

15. Notwithstanding anything contained in the Engagement Letter, the Debtors and Leerink have agreed on the following terms of compensation and expenses (the "Fee and Expense Structure"):

   a. <u>Compensation</u>. Leerink shall be paid (i) $50,000 per month for two months (*i.e.*, March 15, 2017 – April 14, 2017 and April 15, 2017 – May 14, 2017) (the "<u>Monthly Fee</u>") plus (ii) a transaction fee (the "<u>Transaction Fee</u>") equal to 3% of the Aggregate Consideration received by the Debtors as a result of any Transaction; provided, however, that the Aggregate Consideration shall not include any cure costs under section 365 of the Bankruptcy Code or any other liabilities of the Debtors that are assumed for payment by the buyer; provided, further, the Aggregate Consideration shall include the payment by the buyer of the Center for Medicare and Medicaid Services' setoff claim;

   b. <u>Expenses</u>. The Company shall promptly reimburse Leerink for all reasonable expenses incurred by Leerink (including travel and lodging, data processing and communications charges, courier services and other expenditures) and the reasonable fees (at standard hourly rates) and expenses of counsel, if any, retained by Leerink. The Company shall, upon request, reimburse Leerink for all reasonable out-of-pocket expenses (including, without limitation, the reasonable fees and expenses of its legal counsel, if any, and any other advisor retained by Leerink in connection with Leerink's engagement or the services to be provided by Leerink to the Company) incurred from time to time in connection with its services hereunder and prior to the termination of this Agreement;

provided, however, that the expenses for which the Company shall be obligated to reimburse Leerink pursuant to this Section 4 shall not exceed $25,000 in the aggregate, without the Company's prior written consent, which consent shall not be unreasonably withheld, delayed, or conditions.

16. During the pendency of the Debtors' chapter 11 cases, Leerink shall apply to the Court for the allowance of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the proposed compensation arrangement set forth in the Engagement Letter and this Application.

17. The Debtors believe that the Fee and Expense Structure set forth above is reasonable. The Fee and Expense Structure appropriately reflects the nature of the services to be provided by Leerink and the fee structures typically utilized by investment banking firms of similar stature to Leerink for comparable engagements, both in and out of court. The Fee and Expense structure is consistent with Leerink's normal and customary billing practices for cases of this size and complexity that require the level of scope and services outlined herein. Moreover, the Fee and Expense Structure is reasonable in light of (a) industry practice, (b) market rates charged for comparable services both in and out of the chapter 11 context, (c) Leerink's substantial experience with respect to investment banking services and (d) the nature and scope of work to be performed by Leerink in these cases.

**WAIVER OF COMPLIANCE WITH TIME-DETAIL REQUIREMENTS**

18. Leerink will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these chapter 11 cases. Leerink's applications for compensation and expenses will be paid by the Debtors pursuant to the

terms of the Engagement Letter as modified herein, in accordance with Local Rule 2016-2(e), and any applicable procedures established by the Court.

19. In accordance with Local Rule 2016-2(h), Leerink seeks a waiver of certain information requirements under Local Rule 2016-2(d). Leerink should be excused from compliance with certain information requirements set forth in Local Rule 2016-2(d) because it is (a) not the general practice of investment banking firms, such as Leerink, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d), and (b) Leerink does not ordinarily maintain contemporaneous time records in tenth-hour (0.10) increments or provide or conform to a schedule of hourly rates for its professionals.

20. Leerink should be required to maintain time records in half-hour (0.50) increments, not decimal hours, setting forth, in a summary format, a description of the services rendered by each professional, and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors. To the extent that Leerink would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or other applicable procedures and orders of the Court, the Debtors respectfully request that this Court waive or excuse compliance with such requirements or guidelines pursuant to Local Rule 2016-2(h).

**PAYMENTS TO LEERINK PRIOR TO THE PETITION DATE**

21. No payments for professional fees were made by the Debtors to Leerink prior to the Petition Date. The Debtors did reimburse Leerink for expenses incurred in the amount of $15,136.97.

#43043193 v5

## INDEMNIFICATION

22. Restructuring. investment banking and financial advisors rely heavily on information provided by debtors in making contacts with potential lenders, investors, buyers, or other parties to potential transactions. It is customary, for this reason, that restructuring and financial advisors receive indemnification from the entities for whom they work. Section 8 of the Engagement Letter incorporates Exhibit A to the Engagement Letter (the "<u>Indemnity Provision</u>"), which includes an indemnification provision that is customary in scope. The Indemnity Provision makes clear that no indemnification is available for losses that result from Leerink's own gross negligence, bad faith or knowing and willful misconduct.

23. The terms of the Indemnity Provision reflect the qualifications and limits on such terms that are customary in this jurisdiction, and are substantially in the same form as terms that were approved by courts in this District and others. *See, e.g., Walton v. Houlihan, Lokey, Howard & Zukin (In re United Artists Theatre Co.)*, 315 F.3d 217 (3d Cir. 2003); *In re Limited Stores Company, LLC*, Case No. 17-10124 (KJC) (Bankr. D. Del. Feb 16, 2017). The Debtors submit that the terms of the Indemnity Provision are customary and reasonable for engagements of this type and should be approved in these cases.

## **Legal Basis for Relief Requested**

24. The Debtors seek authority to retain and employ Leerink as their investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [Debtors] in carrying out their duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11

of the Bankruptcy Code and provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 § 1107(b). Leerink's prepetition relationship with the Debtors is therefore not an impediment to Leerink's retention as the Debtors' postpetition investment bankers.

25. In addition, the Debtors seek approval of the Fee Structure and Engagement Letter pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis . . . ." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

Id. at 862 (citations omitted).

26. The Debtors submit that the Court's approval of its retention of Leerink in accordance with the terms and conditions of the Engagement Letter is warranted for the reasons

set forth herein and in the Danesis Declaration. Leerink's employment is necessary to facilitate its restructuring, Leerink has extensive experience serving as an investment banker and the Debtors believe that Leerink is well qualified to provide its services to the estates in a cost effective, efficient, and timely manner.

27. Additionally, given the numerous issues that Leerink may be required to address in the performance of its services for the Debtors, Leerink's commitment to the variable level of time and effort necessary to address all such issues as they arise and the market prices for Leerink's services for engagements of this nature, the Debtors believe that the terms and conditions of the Engagement Letter are fair, reasonable, and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

28. Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee basis*, or on a contingent fee

11 U.S.C. § 328(a) (amendment emphasized). This change makes clear that the Debtors are able to retain a professional on a fixed or percentage fee basis, such as the Fee and Expense Structure, with bankruptcy court approval.

29. The Engagement Letter appropriately reflects (i) the nature and scope of services to be provided by Leerink, (ii) Leerink's substantial experience with respect to investment banking services and (iii) the fee and expense structures typically utilized by Leerink and other leading investment bankers that do not bill their clients on an hourly basis.

30. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. *See, e.g.*, *In re Chaparral Energy, Inc.*, No. 16-11144 (Bankr. D. Del. June 10, 2016); *In re Ryckman Creek Res., LLC*, No. 16-10292 (Bankr. D. Del. Feb. 29, 2016); *In re Parallel Energy LP*, No. 15-12263 (Bankr. D. Del. Dec. 16, 2015); *In re Altegrity, Inc.*, No. 15- 10226 (Bankr. D. Del. March 16, 2015); *In re Mineral Park, Inc.*, No. 14-11996 (Bankr. D. Del. Sept. 23, 2014); *In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del. Sept. 16, 2014). Accordingly, the Debtors believe that Leerink's retention on the terms and conditions proposed herein is appropriate.

## LEERINK'S DISINTERESTEDNESS

31. To the best of the Debtors' knowledge and except to the extent disclosed herein and in the Danesis Declaration: (i) Leerink is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtors' estates with respect to the matter on which Leerink will be employed; and (ii) Leerink has no connection to the Debtors, their creditors or other parties in interest in these chapter 11 cases.

32. As set forth in further detail in the Danesis Declaration, Leerink has certain connections with certain creditors and other parties in interest in these chapter 11 cases. All of these matters, however, are unrelated to these chapter 11 cases. Leerink does not believe that any of these matters represent an interest materially adverse to the Debtors' estates or otherwise create a conflict of interest regarding the Debtors or these chapter 11 cases.

33. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Leerink's retention are discovered or arise, Leerink will use reasonable efforts to file promptly a notice with the Court.

## NOTICE

34. Notice of this Application shall be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Debtors' consolidated top twenty (20) largest unsecured creditors, as identified in their chapter 11 petitions; (c) the DIP Lender; and (d) all parties requesting notices in these cases pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested in this Motion, the Debtors submit that no further notice is necessary.

## NO PRIOR REQUEST

35. No previous request for the relief sought herein has been made to this Court or any other court.

#43043193 v5

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the Debtors: (i) the relief requested herein; and (ii) such other and further relief as the Court may deem proper.

Dated: March 23, 2017
       Wilmington, Delaware

Respectfully submitted,

BOSTWICK LABORATORIES INC.

/s/ Tammy Hunt
By: Tammy Hunt
    Chief Financial Officer

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the Debtors: (i) the relief requested herein; and (ii) such other and further relief as the Court may deem proper.

Dated: March 23, 2017  
       Wilmington, Delaware

Respectfully submitted,

BOSTWICK LABORATORIES INC.

_____  
By: Tammy Hunt  
    Chief Financial Officer