# EXHIBIT B

**(Engagement Letter)**



August 24th, 2016

Bostwick Laboratories Holdings, Inc.
100 Charles Lindbergh Boulevard
Uniondale, NY 11553

Attention:    Fazle Husain
               Member of the Board of Directors

Ladies and Gentlemen:

This letter agreement (the "Agreement") confirms our understanding that Bostwick Laboratories Holdings, Inc. (the "Company") hereby engages Leerink Partners LLC ("Leerink") as its exclusive financial advisor in connection with a possible Transaction (as defined below).

The Company acknowledges and agrees that Leerink may provide its services hereunder through or in conjunction with one or more of its affiliates and all references in this Agreement to "Leerink" shall, except where the context otherwise requires, be deemed to include and refer to any such affiliates; provided, however, that such affiliates agree to be bound by the terms of this Agreement and of the Confidentiality Agreement (as defined herein).

1.  **Financial Advisory Services**
    In connection with Leerink's engagement hereunder, Leerink will, if appropriate and if requested by the Company, in connection with a proposed Transaction:

    (a) assist the Company in analyzing and evaluating the business, operations and financial position of the Company;

    (b) assist the Company in the preparation of descriptive materials for distribution and presentation to potential purchasers;

    (c) assist the Company in the preparation and implementation of a marketing plan;

    (d) assist the Company in the screening of interested potential purchasers;

    (e) assist the Company in coordinating the potential purchasers' due diligence investigations;

    (f) assist the Company in evaluating proposals that are received from potential purchasers;

    (g) assist the Company in structuring and negotiating a Transaction (including, as to form and structure of, and consideration to be received or paid, as the case may be, in a Transaction);

    (h) meet with the Company's Board of Directors (or equivalent governing body) (the "Board of Directors") to discuss a proposed Transaction and its financial implications; and

    (i) perform any such additional services as may be mutually agreed by the Company and Leerink.

    The Company shall have absolute discretion to refuse to discuss or negotiate a Transaction with any party, approve or reject any and all offers or terms of any offer, and may terminate negotiations with any party at any time, all for any reason whatsoever.

2. **Information; Discussions**
   In connection with Leerink's engagement hereunder, the Company will furnish Leerink (and, if appropriate or otherwise requested by Leerink, will request that a potential counterparty to a Transaction furnish Leerink) with all information that Leerink reasonably deems appropriate and will provide Leerink with access to Company officers, directors, employees, accountants, counsel and other representatives (collectively, the "Representatives"). The Company understands and confirms that (a) Leerink will rely, without independent investigation or verification, upon the accuracy and completeness of such information supplied by the Company and its Representatives and upon publicly available information and such other information as Leerink deems appropriate in connection with Leerink's engagement, (b) Leerink will not be responsible for assuming, and does not assume, any responsibility for independent investigation or verification of any such information or for the accuracy or completeness thereof, and shall not be liable for any inaccuracies or omissions therein; and (c) Leerink has not made and will not make any physical inspection or independent evaluation or appraisal of any of the properties, assets or liabilities (contingent or otherwise) of the Company or any other party, or any evaluation of the solvency of any party under any applicable laws. Leerink shall be entitled to assume that the information to be furnished by or on behalf of the Company and its Representatives to Leerink in connection with Leerink's engagement hereunder will be true, complete and correct in all material respects when delivered and will not omit any material fact. Leerink shall be entitled to assume that any financial or other projections furnished to Leerink have been or will be reasonably prepared in good faith on bases reflecting the best then currently available estimates and judgments of the Company as to the expected future financial or other results of the Company.

   In the event that either the Company or Leerink receives any inquiry regarding a Transaction from any potential purchaser, such party shall promptly inform the other of such inquiry so that Leerink can assist the Company in assessing such inquiry and in any resulting discussions.

3. **Fees**
   As compensation for the financial advisory services rendered hereunder, the Company shall pay Leerink the following cash fees:

   (a) **Transaction Fee.** A fee, payable at the closing of a Transaction, equal to the sum of (i) $1,500,000, plus (ii) 3.0% of the incremental Aggregate Consideration (as defined below) above $50,000,000.

   To the extent Leerink is requested by the Company to perform any financial advisory or other services that are not within the scope of this engagement, the Company shall pay Leerink such fees as shall be mutually agreed upon by Leerink and the Company in writing, in advance, depending on the level and type of services required, and shall be in addition to the fees and expenses described elsewhere in this Agreement. The Company's obligation to pay the fees and expenses set forth in this Section 3 and in Section 4 shall not be subject to counterclaim or set-off or otherwise be affected by any claim or dispute the Company may have involving Leerink or any other party.

4. **Out-of-Pocket Expenses**
   Regardless of whether any Transaction is proposed or consummated, in addition to the amounts payable under Section 3 above, the Company shall, upon request, reimburse Leerink for all reasonable out-of-pocket expenses (including, without limitation, the reasonable fees and expenses of its legal counsel, if any, and any other advisor retained by Leerink in connection with Leerink's engagement or the services to be provided by Leerink to the Company hereunder) incurred from time to time in connection with its services hereunder and prior to the termination of this Agreement; provided, however, that the expenses for which the Company shall be obligated to reimburse Leerink pursuant to this Section 4 shall not exceed $25,000 in the aggregate, without the Company's prior written consent, which consent shall not be unreasonably withheld, delayed, or conditioned. The retention of any such advisor, other than legal counsel, will be made only with the prior approval of the Company, which approval will not be unreasonably withheld, delayed or conditioned.

5. **Definitions**

For purposes of this Agreement, the following terms shall have the following meanings:

(a) **Transaction**. The term "Transaction" shall mean any transaction or series or combination of related transactions whereby, directly or indirectly, any sale, transfer, exchange or other disposition to an unaffiliated third party for consideration of all or more than 50% of the business, assets, divisions or outstanding capital stock of the Company, whether by way of negotiated purchase merger, consolidation, tender offer, exchange offer or other share exchange, leveraged buyout, or any other similar means by which an unaffiliated third party acquires control of the Company. For the avoidance of doubt, the term "Transaction" does not include any public offering of securities of the kind subject to the requirements of Rule 5110 of the Financial Industry Regulatory Authority, Inc. ("FINRA Rule 5110") and in which the Company would be the "issuer" of the securities being offered (a "Public Offering").

(b) **Aggregate Consideration**. The term "Aggregate Consideration" shall mean, subject to the provisions concerning "Deferred Payments" below, the gross value of all cash, notes, securities, assets and other property paid or payable to, or received or receivable by, directly or indirectly, the Company or any of its securityholders (including, without limitation, the holders of capital stock of the Company and the holders of convertible securities, options, warrants, stock appreciation rights or similar rights or securities in the Company, whether or not vested), in each case in connection with any Transaction The value of any such securities (whether debt or equity) or other non-cash property shall be determined as follows: (A) the value of securities for which there is an established public market shall be equal to the average of their closing market prices for the five trading days ending three days prior to the closing date of such Transaction and (B) the value of securities that have no established public market and the value of consideration that consists of other non-cash property, shall be the fair market value thereof as provided in the definitive agreement for a Transaction, or if no such value is stated therein, as determined by mutual agreement of Leerink and the Company. In connection with a Transaction involving the sale, transfer or other disposition of more than 50% of the outstanding capital stock of the Company, the amount of Aggregate Consideration deemed received by the Company or its securityholders shall be calculated as if 100% of the Company's outstanding capital stock has been acquired at the highest per share amount paid in such Transaction. If the Aggregate Consideration involved in a Transaction is paid in any currency other than the U.S. dollar, the value of such foreign currency for purposes hereof shall be converted into U.S. dollars at the prevailing exchange rate on the date on which such Aggregate Consideration is paid. Aggregate Consideration shall exclude all cash dividends or other consideration paid in respect of cash or cash equivalents of the Company and shall exclude any compensation to be paid under compensation agreements with current members of management of the Company. No element of Aggregate Consideration shall be subject to double counting or shall otherwise be included more than once in determining the Aggregate Consideration paid in a Transaction. The term "Aggregate Consideration" also shall be deemed to include the gross value of:

(1) (x) any amounts paid into escrow at the closing of such Transaction and (y) any contingent payment, earn-out or milestone payment or any other deferred payment that is or may become payable to the Company and/or its securityholders after the closing of such Transaction (collectively, "Deferred Payments"); provided, however, that notwithstanding anything to the contrary contained in this Agreement, the value of such Deferred Payments shall be determined when actually made and received, and Leerink's fees in respect of such Deferred Payments shall be calculated based upon such value and paid at the time of such receipt;

(2) any of the following that, directly or indirectly, whether contractually or by operation of law, are assumed (or that remain on the Company's financial statements at the closing of a Transaction, in the case of a Transaction involving the sale, transfer, exchange or purchase (including, without limitation, by merger) of substantially all of the Company's equity securities) or are retired, repaid, redeemed or otherwise satisfied,

in each case in connection with such Transaction: (x) the aggregate principal amount of any indebtedness for money borrowed and preferred stock obligations; (y) any unfunded pension liabilities and guarantees of the Company; and (z) all deferred compensation, all off-balance sheet debt (including, without limitation, operating leases) and all other indebtedness, capital leases, liabilities and obligations.

6. **Disclosure**

Except as required by applicable law or legal process, any written or oral advice to be provided by Leerink under this Agreement is exclusively for the benefit and confidential use of the Company, and such advice and the terms of this Agreement shall not be disclosed publicly or made available to third parties (other than to the Company's advisors who have a need to know and have been informed by the Company of the confidential nature of such advice or to applicable regulatory authorities having jurisdiction over the activities of the Company or Leerink) without the prior written approval of Leerink, which approval shall not be unreasonably withheld, delayed or conditioned); provided, however, that the Company may disclose (a) all such information to its directors, officers, employees, members, affiliates and advisors; (b) to any potential purchaser that Leerink is acting as the Company's advisor, the terms of this Agreement and the fee to be paid to Leerink in connection with its services hereunder; (c) as required by law, regulation or legal process, in which case reasonable prior notice shall be provided to Leerink in advance of such disclosure (to the extent legally permitted and/or reasonably practicable), and (d) the fact that Leerink has acted as financial advisor to the Company in connection with the Transaction in any press release or other communication (including responses to inquiries) related to the Transaction that the Company believes in good faith to be appropriate, and accordingly such advice shall not be relied upon by any person or entity other than the Company (and the Board of Directors).

Leerink agrees to abide by the terms of the Confidentiality Agreement by and between Leerink and the Company dated August 24th, 2016 (the "Confidentiality Agreement"). The parties agree that execution of this Agreement shall not constitute a termination of the Confidentiality Agreement and that the Confidentiality Agreement shall remain in full force and effect. This paragraph shall survive termination of the Agreement.

7. **Publicity and Advertisements**

The Company acknowledges that Leerink may, at its option and expense and after announcement of a Transaction by the Company, and with the Company's prior approval as to form and substance, place announcements and advertisements or otherwise publicize such Transaction and Leerink's role in it (which may include the reproduction of the Company's logo and a hyperlink to the Company's website) on Leerink's website and in such financial and other publications (including electronic media) as Leerink may choose, stating that Leerink has acted as exclusive financial advisor to the Company in connection with such Transaction.

8. **Indemnification**

In consideration of the services to be provided by Leerink hereunder, the Company and Leerink hereby agree to the indemnity provisions and other matters set forth in Exhibit A attached hereto which is incorporated by reference into this Agreement.

9. **Term and Termination**

Subject to the terms and conditions hereof, the term of this Agreement shall extend from the date hereof until the earliest of (a) termination by either party by giving the other party at least 15 days' prior written notice, (b) termination immediately by the Company for Cause (as defined herein), (c) consummation of a Transaction and (d) 6 months from the date hereof (any such period is referred to as the "Term"); provided, however, that, notwithstanding the foregoing, (i) all of Leerink's accrued but unpaid fees and expenses will become due and payable in full immediately upon any such termination; (ii) the provisions of this Agreement that define terms used herein, Exhibit A attached hereto and the provisions of Sections 2 (other than the first and last sentences of the first paragraph thereof and the second paragraph thereof), 3, 4, 5, 6, 7, 8, 9, 10, 11,

12, and 13 shall survive any termination of this Agreement; and (iii) Leerink will continue to be entitled to receive the full amount of the fees contemplated by Section 3 above if, at any time during a period of 6 months after the effective termination date of this Agreement (other than an automatic termination upon consummation of a Transaction, a termination by Leerink or a termination by the Company for Cause) (the "Tail"), (a) the Company consummates a Transaction pursuant to the terms of such definitive agreement with a purchaser introduced to the Company and/or contacted by Leerink with respect to a Transaction during the Term (a "Tail Party) or (b) the Company enters into a definitive agreement during the Term or the Tail with a Tail Party that results in a Transaction, and any such fees shall be payable in full in cash upon the closing of any such Transaction. For purposes of this Agreement, "Cause" shall mean Leerink's bad faith, willful misconduct or gross negligence or Leerink's material breach of the Confidentiality Agreement. Within 10 days of the expiration or earlier termination of this Agreement, the parties shall mutually agree on a list of Tail Parties which have been introduced to the Company and/or contacted by Leerink with respect to a Transaction.

10. **Independent Contractor**
    The Company acknowledges and agrees that:

    (a) Leerink is a full-service securities firm engaged in securities trading and brokerage activities as well as investment banking and financial advisory services. Some of the parties that Leerink approaches as potential purchasers in connection with a Transaction, as well as other parties that may have interests with respect to the Company or a Transaction, or other parties (including financing sources) involved in a Transaction, may be entities to which Leerink or its affiliates have provided or continue to provide such services, and from which conflicting interests or duties may arise. Further, in the ordinary course of Leerink's trading and brokerage activities, Leerink or its affiliates may hold positions, for its own account or the accounts of customers, in equity, debt or other securities or financial instruments of the Company or any other entity that may be involved in the matters contemplated by this Agreement, or may have other relationships with such parties. Leerink and such affiliates reserve the right to provide such services and to maintain such relationships and positions. Leerink shall have no obligation to disclose to the Company or utilize for the Company's benefit any such services to other third parties or any information acquired in the course of Leerink's providing such services, engaging in any transaction (on its own account or otherwise) or otherwise carrying on its business. Information which is held elsewhere within Leerink but as to which none of the individuals actually providing the services contemplated by this engagement actually has (or without breach of internal procedures can properly obtain) knowledge will not for any purpose be taken into account in determining Leerink's responsibilities to the Company under this engagement.

    (b) Leerink (i) has been retained hereunder solely as the exclusive financial advisor of the Company with respect to the matters contemplated hereby, and not as an advisor to any other person, and any duties (which will not be fiduciary duties) arising out of Leerink's engagement will be owed solely to the Company with respect to the matters contemplated hereby and not to any other person, (ii) is engaged hereunder as an independent contractor, (iii) is not acting as an agent of the Company or in a fiduciary capacity with respect to the Company or its securityholders, employees, agents, creditors or any other person, and the Company agrees that it shall not make, and hereby waives, any claim based on the assertion of such an agency or fiduciary relationship, and (iv) is not assuming any duties or obligations other than those expressly set forth in this Agreement.

    (c) Leerink is not providing any advice on tax, legal, regulatory or accounting matters and the Company will seek the advice of its own professional advisors for such matters and make an independent decision regarding any transaction contemplated herein based upon such advice. Leerink is not and will not be responsible for any underlying business decision to effect a Transaction or for the advice or services provided by any of the Company's other advisors or contractors.

Leerink agrees that, during the Term and during the Tail, it will not be engaged to provide financial advisory services or financing to any other person or entity (a "Counterparty") with respect to such Counterparty entering into a Transaction without obtaining the prior written consent of the Company.

11. **Governing Law and Jurisdiction**
    This Agreement and Exhibit A attached hereto, and all matters arising out of or relating to this Agreement or Exhibit A attached hereto, shall be governed by and construed in accordance with the laws of the state of New York, applicable to contracts made and to be performed therein and without regard to its conflicts of law principles that would result in the application of the law of any other jurisdiction. Leerink and the Company (on its own behalf and to the extent permitted by law, on behalf of its securityholders, creditors and other constituencies) each waives any right to trial by jury in any action, claim, suit or proceeding arising out of or relating to this Agreement (including, without limitation, with respect to Leerink's engagement hereunder or its services hereunder) or Exhibit A attached hereto. Solely for the purpose of enforcing this Agreement and the provisions of Exhibit A attached hereto, the Company hereby submits to the exclusive jurisdiction of federal and state courts of New York, agrees not to commence any action, suit or proceeding except in such courts and waives to the fullest extent permitted by law, the right to move to dismiss or transfer any action, suit or proceeding brought in any such courts on the basis of any objection to personal jurisdiction venue or inconvenient forum. Service of process, summons, notice or document by mail to the Company's address set forth above shall be effective service of process for any action, suit or proceeding brought in such courts.

12. **Power and Authorization**
    Each of Leerink and the Company hereby represents and warrants that each of this Agreement and Exhibit A attached hereto: (i) has been duly and validly authorized by all necessary corporate action on the part such party; (ii) has been duly executed and delivered by an authorized representative of such party; and (iii) constitutes a legal, valid and binding obligation of such party, enforceable against such party in accordance with their respective terms.

13. **Entire Agreement**
    The parties hereto agree that they have been represented by counsel during the negotiation and execution of this Agreement and Exhibit A attached hereto and, therefore, waive the application of any law or rule of construction providing that ambiguities in an agreement or other document will be construed against the party drafting such agreement or document. This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute one and the same instrument. Executed counterparts of this Agreement transmitted by facsimile or electronic mail (in PDF form) shall be deemed to constitute an original for all purposes. This Agreement, the Confidentiality Agreement and Exhibit A attached hereto contain the entire agreement contemplated by the parties hereto with respect to the subject matter hereof and supersede all prior negotiations, commitments, agreements and understandings, whether written or oral, between any of them with respect to such subject matter. This Agreement, the Confidentiality Agreement and Exhibit A attached hereto, and the rights and obligations of the parties hereunder and thereunder, shall be binding upon the Company and Leerink and their respective successors and assigns and any successor or assigns of any substantial portion of the Company's or Leerink's respective businesses and/or assets. Notwithstanding anything contained herein to the contrary, none of the parties hereto shall assign any of its obligations hereunder without the prior written consent of each of the other parties hereto. This Agreement and Exhibit A attached hereto can be amended, supplemented or changed, and any provision hereof or thereof can be waived, only by a written instrument making specific reference to this Agreement which is signed by the parties hereto. The waiver by any party hereto of a breach of any provision of this Agreement or of Exhibit A attached hereto shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy hereunder or under Exhibit A attached hereto shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. The parties hereto agree that irreparable damage may occur in the event that any of the provisions of this Agreement or Exhibit A attached hereto were not performed in accordance with their specific terms or were otherwise breached. It is

accordingly agreed that Leerink shall be entitled to seek an injunction or injunctions to prevent breaches of this Agreement or Exhibit A attached hereto and to enforce specifically the terms and provisions hereof and thereof in any court of the United States or any state having jurisdiction, this being in addition to any other remedy to which Leerink is entitled at law or in equity. Nothing in this Agreement, expressed or implied, is intended to confer or does confer on any person or entity other than the parties hereto or their respective successors and assigns, and to the extent expressly set forth in Exhibit A attached hereto, the Indemnified Persons (as defined in Exhibit A attached hereto), any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Leerink hereunder. The invalidity or unenforceability of any provision of this Agreement or Exhibit A attached hereto shall not affect the validity or enforceability of any other provisions of this Agreement or Exhibit A, as applicable, which shall remain in full force and effect.

We are delighted to accept this engagement and look forward to working with the Company. Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the enclosed duplicate of this Agreement.

Very truly yours,

LEERINK PARTNERS LLC

By: _____
Name: Doug Brown
Title: Senior Managing Director

Accepted and agreed to as of the date first written above:

BOSTWICK LABORATORIES HOLDINGS, INC.

By: _____
Name: Fazle Husain
Title: Director

# EXHIBIT A

This Exhibit A is made a part of the attached letter agreement dated August 24th, 2016 (the "Agreement"), between Leerink and the Company. Capitalized terms used and not defined in this Exhibit A shall have the respective meanings assigned them in the attached Agreement.

In partial consideration of Leerink's engagement under the Agreement, the Company agrees to indemnify, defend and hold harmless each of Leerink, its affiliates and their respective partners, members, directors, officers, consultants, employees, advisors, agents, representatives and controlling persons (each an "Indemnified Person") from and against any and all claims, losses, damages, costs, expenses or liabilities, joint or several (collectively, "Losses"), relating to, arising out of or otherwise in connection with the Agreement or Leerink's role in connection therewith, including, without limitation, in connection with the enforcement of the Company's obligations under the Agreement and/or this Exhibit A, unless a court of competent jurisdiction shall have determined in a final judgment not subject to further appeal that such Losses resulted from the gross negligence, bad faith or knowing and willful misconduct of such Indemnified Person or from the material breach of the Confidentiality Agreement.

The Company further agrees that it will reimburse each Indemnified Person for Losses and out-of-pocket expenses (including, without limitation, reasonable attorneys' fees and expenses) as they are incurred in connection with investigating, preparing, defending, paying, settling or compromising any action, claim or proceeding, whether pending or threatened, relating to, arising out of or otherwise in connection with the Agreement or Leerink's role in connection therewith, including, without limitation, in connection with the enforcement of the Company's obligations under the Agreement and/or this Exhibit A; so long as the Company has received a written undertaking of such Indemnified Person to repay to the Company the amount so advanced if it shall be finally determined that such Indemnified Person was not entitled to indemnification hereunder.

If the indemnification provided for herein should be, for any reason whatsoever, unenforceable, unavailable or otherwise insufficient to hold each Indemnified Person harmless (other than because of the gross negligence, bad faith or knowing and willful misconduct of any Indemnified Person or the material breach of the Confidentiality Agreement by any Indemnified Person), the Company shall pay to or on behalf of each Indemnified Person contributions for Losses so that the Indemnified Person ultimately bears only a portion of such Losses as is appropriate (i) to reflect the relative benefits received by such Indemnified Person on the one hand and the Company on the other hand in connection with the engagement contemplated by the Agreement and any transactions contemplated thereby or (ii) if the allocation on the basis set forth in the immediately preceding clause (i) is not permitted by applicable law, to reflect not only the relative benefits referred to in such clause (i) but also the relative fault of the Indemnified Person, on the one hand, and of the Company, on the other hand, as well as any other relevant equitable considerations; provided, however, that in no event (other than because of the gross negligence, bad faith or knowing and willful misconduct of any Indemnified Person or the material breach of the Confidentiality Agreement by any Indemnified Person) shall the aggregate contribution of all Indemnified Persons to all Losses exceed the amount of the fees actually received by Leerink pursuant to the Agreement. The respective relative benefits received by all Indemnified Persons, on the one hand, and the Company, on the other hand, shall be deemed to be in the same proportion as (a) the aggregate fees actually paid to Leerink pursuant to the Agreement bears to (b) the Aggregate Consideration paid or contemplated to be paid to, or received by, the Company or its securityholders, as the case may be, in connection with transactions contemplated by the Agreement, whether or not such transactions are consummated. The relative fault of each Indemnified Person and the Company shall be determined by reference to, among other things, whether the actions or failures to act were by such Indemnified Person or the Company, and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such action or failure to act.

The Company also agrees that no Indemnified Person shall have any liability, regardless of the legal theory advanced, to the Company or any other person or entity (including, without limitation, the Company's directors, officers, employees, consultants, advisors, agents, representatives, control persons or securityholders), directly or indirectly, related to or arising out of the Agreement or any transactions contemplated thereby or Leerink's engagement thereunder, and the Company will reimburse each Indemnified Person for all costs and expenses as they are incurred by such Indemnified Person in connection with investigating, preparing for or defending any such assertion of liability, except for Losses incurred by the Company to the extent a court of competent jurisdiction shall have determined in a final judgment not subject to further appeal that such Losses resulted from the gross negligence, bad faith or knowing and willful misconduct of such Indemnified Person or from the material breach of the Confidentiality Agreement.

A-1

In case any proceeding shall be instituted involving any Indemnified Person, such Indemnified Person shall promptly notify the Company in writing. The failure or delay of an Indemnified Person to provide such prompt notice shall not reduce such Indemnified Person's right to indemnification or contribution hereunder except to the extent that such failure materially prejudices the Company's ability to defend such proceeding. The Company may elect to assume the defense of any proceeding for which an Indemnified Person seeks indemnification hereunder, subject to the provisions set forth herein, in which case the Company shall retain counsel reasonably satisfactory to Leerink to represent the Indemnified Persons and any others the Company may designate in such proceeding, shall have sole control of the defense of any such proceeding and shall pay the fees and disbursements of such counsel related to such proceeding. In any such proceeding in which the Company assumes the defense thereof, any Indemnified Person shall have the right to retain its own counsel and to participate in the defense thereof, but the fees and expenses of such counsel shall be at the expense of such Indemnified Person, except to the extent that (i) the Company and the Indemnified Person shall have mutually agreed to the retention of such counsel at the Company's expense, (ii) the Company shall have failed to employ counsel reasonably satisfactory to such Indemnified Person in a timely manner or (iii) the named parties to any such proceeding (including, without limitation, any impleaded parties) include both the Company or any others the Company may designate and one or more Indemnified Persons, and representation of the Indemnified Persons and such other parties by the same counsel would be inappropriate due to actual or potential conflicting interests between them. In any case in which one or more Indemnified Persons are entitled to separate counsel due to such actual or potential differing interests, the Company shall not be liable for the expenses of more than one firm of attorneys in any one jurisdiction in any one legal action or group of related legal actions, and such counsel shall be designated in writing by Leerink. If the Company assumes the defense of a proceeding, the Company shall have sole control of any settlement of any such proceeding for which it is obligated to provide indemnification hereunder. Notwithstanding the foregoing, the Company shall not, without the prior written consent of the Indemnified Person, effect any settlement of, or consent to the entry of any judgment in connection with, any pending or threatened proceeding in respect of which such Indemnified Person is or could have been a party and indemnity or contribution could have been sought hereunder by such Indemnified Person, unless such settlement or judgment (w) includes an unconditional release of such Indemnified Person from all liability on claims that are the subject matter of the proceeding or dispute; (x) involves only the payment by the Company of monetary damages and would not result in an order, injunction or other equitable remedy in respect of the Indemnified Person; (y) does not include any findings of fact or admission of culpability as to such Indemnified Person; and (z) the terms of such settlement or judgment are confidential and not publicly disclosed. Notwithstanding anything to the contrary contained herein, (a) in any action between the parties (or any affiliate of a party), the non-prevailing party shall pay all of the other party's costs and expenses (including without limitation, reasonable fees and expenses of counsel) in an enforcement proceeding or otherwise in connection with any litigation between the parties relating to this Agreement or the subject matter hereof or thereof or any Transaction if the court in such proceeding determines that the prevailing party is entitled to recover amounts due and (b) if a court of competent jurisdiction determines that an Indemnified Person is not entitled to indemnification, contribution or reimbursement hereunder, Leerink will repay the Company any amounts previously paid or reimbursed.

If the Company shall fail to promptly undertake any such defense, the Indemnified Person shall have the right to undertake the defense or settlement thereof, at the Company's expense. If the Indemnified Person assumes the defense of any such claim or proceeding pursuant to this paragraph and proposes to settle such claim or proceeding prior to a final judgment thereon or to forgo any appeal with respect thereto, then the Indemnified Person shall give the Company prompt written notice thereof and the Company shall have the right to participate in the settlement or assume or reassume the defense of such claim or proceeding in the event the Company agrees to assume liability for any Losses arising from such claim or proceeding and pay the existing expenses incurred by the Indemnified Person in conducting the defense to date. Notwithstanding anything to the contrary contained herein, the Company shall not be liable to any Indemnified Person for any indemnification, contribution or reimbursement obligations with respect to any amounts paid or payable in settlement, or compromise or consent to the entry of a judgment, of or in respect to any pending or threatened Proceeding, if such settlement, compromise or consent occurred without the prior written consent of the Company, which consent shall not be unreasonably withheld, conditioned or delayed.

The indemnity, reimbursement, contribution, and other obligations and agreements of the Company set forth herein (i) shall also apply to any services provided by Leerink in connection with this engagement prior to the date hereof and to any modifications of the Agreement, (ii) shall be in addition to any obligation or liability which the Company may otherwise have to any Indemnified Person, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of, or any information furnished to, the Company or any Indemnified Person, and

A-2

58457140_3

(iv) shall survive the consummation of any Transaction and the completion of the services described in, and any expiration or termination of the relationship established by, the Agreement and shall remain operative and in full force and effect.

The obligations of the Company referred to in this Exhibit A shall be in addition to any rights that any Indemnified Person may otherwise have and shall inure to the benefit of and be binding upon any successors, assigns, heirs and personal representatives of any Indemnified Person and the Company.

58457140_3