# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Bostwick Laboratories, Inc., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 17-10570 (BLS)<br><br>(Jointly Administered)<br><br>**Related Docket No.: 15** |

**ORDER (I) AUTHORIZING AND APPROVING THE SALE
OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE
AND CLEAR OF ALL CLAIMS, LIENS, RIGHTS, INTERESTS AND
ENCUMBRANCES, (II) APPROVING THE ASSET PURCHASE AGREEMENT
AND (III) AUTHORIZING THE DEBTORS TO ASSUME AND ASSIGN
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Upon the motion (the "Motion")[2] of the above-captioned debtors (the "Debtors") for entry of an order approving the sale of substantially all of the Debtors' assets; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that no other or further notice is needed or necessary; and the Court having reviewed the Motion, the First Day Declaration and the Declaration of Donald Matz in Support of Sale of Purchased Assets to Poplar Healthcare, PLLC and having heard statements in support of the Motion at a hearing held before the Court on April 28, 2017 (the "Sale Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors, and other parties in

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): (i) Bostwick Laboratories, Inc., a Delaware corporation (3169); and (ii) Bostwick Laboratories Holdings, Inc., a Delaware corporation (1042). The mailing address for the Debtors is 100 Charles Lindbergh Blvd., Uniondale, NY 11553.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

interest; and any objections to the relief requested in the Motion having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AS FOLLOWS:**

      A.      <u>Notice</u>. Notice of the Motion, the Auction, and the Sale Hearing was good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, the Auction, the Sale Hearing, the Stalking Horse Asset Purchase Agreement attached hereto as **<u>Exhibit A</u>** (the "<u>APA</u>") or the transactions contemplated thereby (the "<u>Transactions</u>") is required. The disclosures made by the Debtors concerning the APA, the Auction, the Transactions and the Sale Hearing were good, complete, and adequate.

      B.      <u>Cure Notice</u>. The Debtors have filed and served cure notices (the "<u>Cure Notices</u>") upon all non-Debtor counterparties to all Assumed Leasehold Interests and Assumed Contracts notifying such parties: (i) that the Debtors seek to assume and assign such Assumed Leasehold Interests and Assumed Contracts as provided in the APA and (ii) of the Debtors' good faith estimates of the cure amounts required in connection with such Assumed Leasehold Interest or Assumed Contract. The service of the Cure Notice was good, sufficient and appropriate under the circumstances, and no further notice is required.

      C.      <u>Opportunity to Bid</u>. As demonstrated by the evidence proffered or adduced at the Sale Hearing and the representations of counsel made on the record at the Sale Hearing, the Debtors conducted a marketing process in accordance with, and have otherwise complied in all material respects with, the Bid Procedures. The Bid Procedures were non-collusive and substantively and procedurally fair to all parties. All interested persons and entities have been afforded a full, fair and reasonable opportunity to (i) conduct due diligence investigations, (ii) submit higher or otherwise better bids to purchase the assets of the Debtors and (iii) object and

be heard in connection with the Sale Motion and the relief granted by this Order. The Debtors did not receive any Qualified Bids for the Purchased Assets prior to the Qualified Bid Determination Deadline. Therefore, no Auction was necessary under the terms of the Bid Procedures and Poplar Healthcare, PLLC ("Purchaser") was named by the Debtors as the Successful Bidder.

        D.        Highest and Best Bid. The Purchaser submitted the highest and best bid for the Purchased Assets pursuant to the APA.

        E.        Good Faith Purchaser; No Fraudulent Transfer. The Purchaser is a "good faith" purchaser entitled to the full benefits and protections of section 363(m) of the Bankruptcy Code with respect to entry into the APA and consummation of the Transactions and no reversal or modification of this Order on appeal will affect the validity of the APA or the Transactions. The APA and the Transactions have been negotiated and entered into by the Debtors and Purchaser in good faith, at arms' length and without collusion or fraud. The Aggregate Purchase Price constitutes reasonably equivalent and fair value in consideration for the Purchased Assets (as those terms are defined in the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code), the terms and conditions of the APA and the Transactions are fair and reasonable, and approval of the APA and consummation of the Transactions are in the best interest of the Debtors, their creditors, and their estates. The Transactions are not for the purpose of hindering, delaying or defrauding the Debtors' creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. Neither the Debtors nor the Purchaser is or will be entering into the APA or Transactions fraudulently.

F.       No Collusion. The APA was not controlled by or the result of an agreement between potential or actual bidders within the meaning of Bankruptcy Code section 363(n). Purchaser has not violated Bankruptcy Code section 363(n) by any action or inaction. The Debtors and the Purchaser have not engaged in any conduct that would cause or permit the APA or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under section 363 of the Bankruptcy Code or otherwise. The Purchaser is entitled to all the protections and immunities of a good faith purchaser for value, including without limitation under section 363(m) of the Bankruptcy Code.

G.       Satisfaction of Section 363(f). The Debtors may sell the Purchased Assets free and clear of Encumbrances (except Permitted Encumbrances) as provided in this Order because one or more of the provisions set forth in section 363(f) of the Bankruptcy Code have been satisfied with respect to each of the Encumbrances. Those holders of Encumbrances who did not object or who withdrew their objections to the Motion are deemed to have consented to the Motion and the sale of the Purchased Assets pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Encumbrances who did object, if any, fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Encumbrances, if any, attach to the proceeds of the sales ultimately attributable to the Purchased Assets in which such holders allege Encumbrances, in the same order of priority, with the same validity, force and effect that such holder had before such sale, and subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

H.       Compliance with Bankruptcy Code. The consummation of the sale of the Purchased Assets is legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including without limitation, sections 363(b), 363(f), 363(m), and 365 and all

of the applicable requirements of such sections have been or will be complied with in respect of the Sales.

**IT IS HEREBY ORDERED, THAT:**

1. <u>Relief Granted</u>. The Motion is GRANTED as set forth herein.

2. <u>Approval and Authorization</u>. The Debtors and Purchaser are authorized to (i) enter into the APA and the Transition Services Agreement (the "<u>TSA</u>") attached hereto as **Exhibit B** and to take all actions necessary to consummate the transactions contemplated thereby and (ii) execute such other documents and take such other actions as are necessary to effectuate the terms of the APA, the TSA and the transactions contemplated thereby, without further order of the Court.

3. <u>Purchased Assets</u>. The term "Purchased Assets" as defined in Section 2.1(b) of the APA shall include, as set forth in Section 2.1(b)(vi) of the APA, the trademark and trade name of QC Sciences along with the domain name and website www.qcsciences.com and the inventory, customer and vendor lists used in the business of Purchaser marketed under the QC Sciences trade name. The term "Purchased Assets" as defined in Section 2.1(b) of the APA shall also include assumption by the Purchaser of the non-disclosure agreements executed by potential bidders in connection with the sale of the Debtors' assets.

~~3~~4. <u>Sale Free and Clear of Encumbrances</u>. Pursuant to sections 105(a) and 363 of the Bankruptcy Code, the sale and transfer of the Purchased Assets (as defined in the APA) to Purchaser as the party that submitted the highest and best bid pursuant to the APA is a legal, valid and effective disposition of the Purchased Assets, and vests the Purchaser with all right, title and interest of the Debtors in and to the Purchased Assets free and clear of all liens and claims, including but not limited to the Excluded Liabilities (as defined in the APA), other than

the Permitted Encumbrances (as defined in the APA), with all such liens and claims attaching to the sale proceeds, pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code. All Encumbrances (except Permitted Encumbrances) on the Purchased Assets shall attach to the proceeds of the Sale of the Purchased Assets pursuant to this order to the same extent and with the same priority as such Encumbrances existed in respect of the Purchased Assets immediately before the Closing; <u>provided</u>, <u>however</u>, that any Excess Amount (as defined in the Final Financing Order[3]) <u>paid</u> by the Centers for Medicare & Medicaid Services or its contractors ("<u>CMS</u>") to a Debtor and received by the Purchaser shall be remitted to the United States in accordance with Paragraph 36 of the Final Financing Order, which order shall remain in full force and effect and shall govern, *inter alia*, the responsibilities of the Debtors and Purchaser with respect to any Excess Amount paid.

4<u>5</u>.    <u>Order Authorizes Recording Offices</u>. All filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets are hereby authorized to do so in accordance with this Order. Each and every federal, state, and local governmental agency or department or office is hereby authorized to accept this Order and any and all documents and instruments necessary and appropriate to consummate the sale

---

[3]    The Final Financing Order means the *Final Order Pursuant to Sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(d)(1), 364(e) and 507 of the Bankruptcy Code Authorizing Bostwick Laboratories, Inc. to (A) Obtain Post-Petition Secured Financing from Poplar Healthcare, PLLC (B) Utilize Cash Collateral and (C) Provide for Adequate Protection* [Docket No 170].

contemplated by the APA and to cancel, terminate and release the Encumbrances (other than Permitted Encumbrances).

5<u>6</u>. <u>Authorization to Release Encumbrances</u>. If any person or entity that has filed a financing statement, deed of mortgage, or other deeds, documents or agreements evidencing an Encumbrance on a Purchased Asset shall not have delivered, in proper form for filing, termination statements, deeds of cancelation of mortgage, instruments of satisfaction, cancelation, termination, releases, and other deeds and documents to the Debtors before the Closing, then the Debtors and the Purchaser shall be and hereby are authorized to execute such termination statements, deeds of cancelation of mortgage, instruments of satisfaction, cancelation, termination, releases, and other deeds and documents on behalf of such person or entity and to file the same with any appropriate registry or public filing office. Notwithstanding the foregoing, the provisions of this Order authorizing the sale and assignment of the Purchased Assets free and clear of Encumbrances (subject to Permitted Encumbrances) shall be self-executing.

6<u>7</u>. <u>Release of Escrow</u>. The Debtors are hereby authorized and directed to release and deliver the Buyer Deposit pursuant to the terms of the APA.

7<u>8</u>. <u>No Successor Liability</u>. By consummating the Transactions, Purchaser is not and shall not become a successor to the Debtors or their estates by reason of any theory of law or equity, whether with respect to any liens or claims against the Debtors, the Purchased Assets or otherwise, and the Purchaser shall not be subject to successor liabilities for products sold or services rendered prior to the closing; <u>provided</u>, <u>however</u>, nothing herein shall affect the Purchaser's obligations under Paragraph 36 of the Final Financing Order.

8̶9.     Good Faith. The Purchaser will be acting in good faith in closing under the APA and consummating the Transactions at any time on or after entry of this Order and is entitled to the protections of section 363(m) of the Bankruptcy Code. The Purchaser is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.

9̶10.-    Assignment of Contracts; Cure of Defaults. The Debtors are authorized to assume and assign each of the Assumed Leasehold Interests and Assumed Contracts to Purchaser in accordance with the APA and this Order free and clear of all interests pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code and to execute and deliver to Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Leasehold Interests and Assumed Contracts to Purchaser. The payment of the applicable Cure Amounts by Purchaser shall (i) effect a cure of all defaults existing thereunder as of the Closing, (ii) compensate for any actual pecuniary loss to such non-Debtors counterparty resulting from such default and (iii) together with the assumption of the Assumed Leasehold Interests and Assumed Contracts by the Debtors and the assignment of such Assumed Leasehold Interests and Assumed Contracts to Purchaser, constitute adequate assurance of future performance thereof. For purposes of this Order, "Cure Amounts" shall mean the applicable Cure Amounts set forth on **Exhibit C** attached hereto, or such other Cure Amounts as agreed, in writing, by the Debtors, Purchaser and the counterparty to the applicable Assumed Leasehold Interest or Assumed Contract.

1̶0̶11.    Provisions Prohibiting Assignment Unenforceable. Any provisions in any Assumed Leasehold Interest or Assumed Contract that prohibit or condition the assignment of such Assumed Leasehold Interest or Assumed Contract or allow the counterparty to such Assumed Leasehold Interest or Assumed Contract to terminate, recapture, impose any penalty,

condition on renewal or extension or modify any term or condition upon the assignment of such Assumed Leasehold Interest or Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect with respect to the Debtors' assumption and assignment of such Assumed Leasehold Interests and Assumed Contracts in accordance with the APA but will be effective and binding upon Purchaser with respect to any purported assignment for the remaining term of such Assumed Leasehold Interest or Assumed Contract. All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to Purchaser of the Assumed Leasehold Interests and Assumed Contracts have been satisfied. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assumed Leasehold Interests and Assumed Contracts, and such Assumed Leasehold Interests and Assumed Contracts shall remain in full force and effect for the benefit of Purchaser. For the avoidance of doubt, notwithstanding anything else contained in the APA or this Order, (i) no Debtor shall assume and assign or otherwise transfer any national provider identifier, provider transaction access number or Medicare enrollment agreement to the Purchaser; (ii) no Debtor shall loan or otherwise permit the Purchaser to use or submit claims under a Debtor's provider transaction access number or Medicare enrollment agreement; and (iii) nothing shall affect recoupment rights of the United States under Paragraph 31 of the Final Financing Order, which shall remain in full force and effect.

<span style="text-decoration:line-through">11</span>12. <u>Injunction Against Certain Actions by Assumed Contract Counter-Parties</u>. Each non-Debtor counterparty to the Assumed Leasehold Interests and Assumed Contracts shall be forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or Purchaser or their respective property any assignment fee, acceleration, default, breach or claim

or pecuniary loss, or condition to assignment existing, arising or accruing as of the Closing or arising by reason of the Closing or the transfer of the Purchased Assets, including any breach related to or arising out of change-in-control provisions in such Assumed Leasehold Interests and Assumed Contracts, or any purported written or oral modification to the Assumed Leasehold Interests and Assumed Contracts and (ii) asserting against Purchaser (or its property, including the Purchased Assets) any claim, counterclaim, breach, or condition asserted or assertable against the Debtors existing as of the Closing or arising by reason of the transfer of the Purchased Assets, except for the Assumed Liabilities.

~~12~~13.    Effect of Assumption; Payment of Cure Amounts. Upon the Closing, Purchaser shall be deemed to be substituted for the Debtors as a party to the applicable Assumed Leasehold Interests and Assumed Contracts and shall pay all outstanding undisputed Cure Amounts with respect thereto, and the Debtors shall be released, pursuant to section 365(k) of the Bankruptcy Code, from any liability under the Assumed Leasehold Interests and Assumed Contracts from and after such assignment. There shall be no assignment fees, increases or any other fees charged to Purchaser or the Debtors as a result of the assumption and assignment of the Assumed Leasehold Interests and Assumed Contracts.

~~13~~14.    Adequate Assurance. Purchaser has provided adequate assurance of future performance under the Assumed Leasehold Interests and Assumed Contracts within the meaning of sections 365(b)(1)(c), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

~~14~~15.    Binding Effect of Order. This Order and the APA shall inure to the benefit of and be binding on the Purchaser and the Debtors, their estates, their creditors, and any trustees, if

any, subsequently appointed in the Debtors' chapter 11 case or upon a conversion to Chapter 7 under the Bankruptcy Code, and their respective successors and assigns.

~~15~~16.  **Interpretation**.  To the extent of any inconsistency between this Order and the APA, this Order shall control.

~~16~~17.  **Reservation of Rights**.  All rights of the Official Committee of Unsecured Creditors appointed in these cases and any other party with standing are reserved to assert claims seeking recovery for the benefit of the Debtors' estates of the payments or other transfers made or to be made by the Purchaser on account of the Second Lien Notes and/or ~~the Centers for Medicare and Medicaid Services~~CMS in connection with the Sale, in accordance with Paragraphs 41 and 42 of the Final Financing Order~~.~~ and all defenses thereto of the holders of the Second Lien Notes and CMS are also reserved.

~~17~~18.  **Payment of Government Claim Amount**.  The Purchaser shall pay $1,100,000 in full in cash to the United States upon Closing in satisfaction of the Government Claim Amount (as defined in the Final Financing Order) in accordance with Paragraph 36 of the Final Financing Order.

~~18~~19.  Solely to the extent provided by applicable law, the Post-Petition CMS Payables shall be subject to any valid and enforceable right of setoff in favor of the United States in accordance with and subject to the Final Financing Order.

~~19~~20.  For the avoidance of doubt, nothing in this Order shall limit, modify, or in any way affect the United States Secretary (the "**Secretary**") of Health and Human Services' authority to regulate the Debtors' or the Purchaser's enrollment or participation as a Medicare supplier (to the extent the Purchaser enrolls or participates as a Medicare supplier) or the right and authority of the Secretary, CMS or its contractors to review, approve, deny, or pay Medicare

claims in the ordinary course of business in accordance with the Medicare statute and regulations under 42 U.S.C. § 1395-1395lll, 42 C.F.R. Chapter IV, and the policies and procedures thereunder. The United States takes no position with respect to, and nothing herein shall be construed as the Secretary's consent to, or acceptance of, the APA, the TSA or the underlying Transactions supporting the APA.

2021. <u>Debtors' Privacy Policy</u>. For purposes of section 363 (b)(1) of the Bankruptcy Code, the Debtors have in connection with offering a product or service, previously disclosed to one or more individuals a policy prohibiting the transfer of "personally identifiable information" (as defined in 11 U.S.C. § 101 (41A)) about individuals to persons that are not affiliated with the Debtors. The sale is consistent with that policy because the policy contains an exception permitting the transfer of such information in connection with the sale of the Debtors' business. The policy further provides that in such a situation, personally identifiable information will only be used in a manner consistent with the Debtors' privacy policy. Notwithstanding anything to the contrary in the APA, the Purchaser shall comply with the Debtors' privacy policy as set forth on the Debtors' website.

2122. <u>Compliance with HIPAA</u>. The sale may include the transfer of "personally identifiable information" (as defined in 11 U.S.C. § 101(41A)), which may include "protected health information" (as defined in 45 C.F.R. § 160.103). To the extent the Purchaser is not already a "covered entity" under the Health Insurance Portability and Accountability Act ("<u>HIPAA</u>"), the Debtors shall not transfer this information to the Purchaser for health care operations purposes unless and until: (a) Purchaser and its affiliated "covered entities" execute a valid, HIPAA-compliant Business Associate Agreement ("<u>BAA</u>") which provides for the transfer of the protected health information for the sole purpose of health care operations for at

least one of the Purchaser's affiliated "covered entities"; or (b) pursuant to 45 C.F.R. §164.508(a)(4), Debtors obtain an authorization for any disclosure of protected health information which is a sale of protected health information.

~~22~~23.  Approval of APA; Modification.  The failure to specifically include any particular provision of the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety. The APA and any related agreements, documents or other instruments, including the TSA, may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

~~23~~24.  No Surcharge.  No expenses of administration of the Debtors' bankruptcy cases or of any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered, under Bankruptcy Code § 506(c) or any similar principle of law, from Purchaser or the Purchased Assets.

~~24~~25.   No Stay; Order Effective Immediately. The Debtors have shown cause as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(h) and 6006(d). Accordingly, notwithstanding any Bankruptcy Rules to the contrary, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

~~25~~26.  Retention of Jurisdiction. Except with respect to Medicare matters referenced in Paragraph ~~19~~20, the Court retains jurisdiction with respect to all matters arising from, or related to, the implementation, enforcement and interpretation of this Order.

Dated: April ___, 2017
Wilmington, Delaware

_____
HONORABLE BRENDAN L. SHANNON
CHIEF UNITED STATES BANKRUPTCY JUDGE

-14-

#43108845 v9#43108845 v10

| Summary report: Litéra® Change-Pro TDC 10.0.0.42 Document comparison done on 4/27/2017 9:58:19 AM ||
|---|---|
| **Style name:** PH Standard ||
| **Intelligent Table Comparison:** Active ||
| **Original DMS:** iw://PHDMS/Active/43108845/9 ||
| **Description:** Bostwick -- Sale Order ||
| **Modified DMS:** iw://PHDMS/Active/43108845/10 ||
| **Description:** Bostwick -- Sale Order ||
| **Changes:** ||
| Add | 34 |
| Delete | 29 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 63 |