**EXHIBIT A**

**FORM OF BID PROCEDURES ORDER**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Bostwick Laboratories, Inc., *et al.*,[1] | Case No. 17-_____ (___) |
| Debtors. | (Joint Administration Requested) |

**ORDER (I) AUTHORIZING AND APPROVING BIDDING PROCEDURES, BREAK-UP FEE AND EXPENSE REIMBURSEMENT, (II) AUTHORIZING AND APPROVING THE DEBTORS' PERFORMANCE OF PRE-CLOSING OBLIGATIONS UNDER THE STALKING HORSE ASSET PURCHASE AGREEMENT, (III) APPROVING NOTICE PROCEDURES, (IV) SCHEDULING A SALE HEARING AND (V) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND DETERMINING CURE AMOUNTS**

Upon the motion (the "Motion") of the above-captioned debtors (the "Debtors") in the above-captioned chapter 11 case (the "Chapter 11 Case"), for entry of an order (this "Bidding Procedures Order"), pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), (i) authorizing and approving (a) certain proposed bidding procedures (as attached hereto as **Exhibit 1**, the "Bidding Procedures")[2] governing the submission of competing proposals to purchase the Purchased Assets pursuant to section 363 of the Bankruptcy Code and (b) the Break-Up Fee and Expense Reimbursement to the extent payable pursuant to and on the terms set forth in Section 6.5 of the Stalking Horse Asset

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): (i) Bostwick Laboratories, Inc., a Delaware corporation (3169); and (ii) Bostwick Laboratories Holdings, Inc., a Delaware corporation (1042). The mailing address for the Debtors is 100 Charles Lindbergh Blvd., Uniondale, NY 11553.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures, the Stalking Horse APA, or the Motion, as applicable.

Purchase Agreement (as appended to the Motion as **Exhibit A** and, together with all exhibits thereto and as may be further amended, modified or supplemented from time to time in accordance with the terms thereof, the "Stalking Horse APA"), dated as of March 13, 2017, by and among Botwick Laboratories, Inc. and Poplar Healthcare, PLLC (the "Stalking Horse Bidder"), (ii) authorizing and approving the Debtors' performance of certain pre-closing obligations under the Stalking Horse APA, pursuant to which the Debtors have agreed to sell the Purchased Assets to the Stalking Horse Bidder, subject to the terms and conditions contained therein, (iii) approving the form and manner of notice of the sale of the Purchased Assets (the "Sale Notice"), (iv) scheduling a hearing for approval of the sale of the Purchased Assets (the "Sale Hearing") and setting other related dates and deadlines and (v) approving procedures for the assumption and assignment of the Assumed Leasehold Interests and Assumed Contracts and the form of and manner of notice of proposed cure amounts; and the Court having considered the Motion and all exhibits, objections, and other papers filed in connection therewith; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors and all other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full record of the Chapter 11 Case; and after due deliberation, and good and sufficient cause appearing therefor, it is hereby:

**FOUND AND DETERMINED THAT:**[3]

A.      This Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue in this district is proper under 28 U.S.C. §§ 1408

---

[3]  Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable.

and 1409.

B.      Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing. A reasonable opportunity to object or to be heard regarding the relief provided herein has been afforded to parties in interest.

C.      The Debtors' proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of the Debtors' assets, and the Bidding Procedures to be employed in connection therewith.

D.      The Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, including: (i) the scheduling of a Qualified Bid Determination Deadline, Auction, and Sale Hearing for the sale of the Debtors' assets; and (ii) the establishment of procedures to fix the cure amounts to be paid under section 365 of the Bankruptcy Code in connection with the assumption, assignment and transfer of the Assumed Leases and Contracts.

E.      The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Debtors' assets.

F.      The entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED to the extent provided herein.

2.      All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled

and denied on the merits.

3.    The Stalking Horse APA, including the Break-Up Fee and Expense Reimbursement provided therein, are approved, and the Break-Up Fee and Expense Reimbursement are entitled to administrative priority pursuant to sections 503(a) and 507(a)(2) of the Bankruptcy Code.  Except for the Stalking Horse Bidder, no other Qualified Bidder shall be entitled to any breakup fee, overbid fee, termination fee, expense reimbursement, or similar type of payment.

4.    The Stalking Horse APA is a Qualified Bid, and the Stalking Horse Bidder is authorized to submit any Overbids during the Auction at any time, pursuant to the Bidding Procedures.

5.    The Debtors are authorized and directed to perform all of their pre-closing obligations under the Stalking Horse APA, including, without limitation, all obligations set forth in Article VIII (Pre-Closing Covenants) and XI (Termination) (collectively, the "Pre-Closing Obligations").

6.    The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are hereby approved, and the Debtors are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures. The Bidding Procedures shall govern the submission, receipt and analysis of all bids relating to sale of the Purchased Assets, and any party desiring to submit a higher or better offer for the Purchased Assets shall do so in accordance with the terms of the Bidding Procedures and this Bidding Procedures Order.

7.    As described in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than from the Stalking Horse Bidder, or if no bidder other than the Stalking Horse Bidder indicates its intent to participate in the Auction, the Debtors will not hold the

Auction, the Stalking Horse Bidder will be named the Successful Bidder and the Debtors will seek approval of the Stalking Horse APA at the Sale Hearing. If one or more Qualified Bids are timely received from a Qualified Bidder (other than the Stalking Horse Bidder) in accordance with the Bidding Procedures, the Debtors shall conduct the Auction as set forth herein.

8.      If the Auction is conducted, each Qualified Bidder participating in the Auction shall be required to confirm on the record that it has not engaged in any collusion with respect to the bidding process or the proposed Sale. The Auction will be conducted openly and shall be transcribed, audiotaped or videotaped.

9.      The Auction and Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is hereby approved.

10.     Within three (3) Business Days of entry of this Bidding Procedures Order, the Debtors shall serve the Auction and Sale Notice by email or first class mail upon the following parties: (i) the Office of the United States Trustee for the District of Delaware, (ii) the Internal Revenue Service, (iii) the United States Attorney for the District of Delaware, (iv) counsel to any committee of unsecured creditors appointed in the Chapter 11 Case, (v) the U.S. Securities and Exchange Commission, (vi) any party known or reasonably believed to have asserted any lien, claim, encumbrance or other interest in the Purchased Assets, (vii) all non-Debtor parties to the Leases and Contracts and any parties who are known to claim interests therein; (viii) all applicable federal, state, and local taxing authorities; (ix) the Debtors' twenty (20) largest unsecured creditors; (x) the Debtors' insurance providers; (xi) all known parties that have expressed interest to the Debtors, within the six (6) months prior to the Petition Date or since the Petition Date, in purchasing some or all of the Debtors' assets; and (xii) all parties that have requested or that are required to receive special notice pursuant to Bankruptcy Rule 2002. In

addition to the foregoing, electronic notification of the Motion, this Bidding Procedures Order and the Auction and Sale Hearing also will be posted on the Court's electronic case filing (ECF) website, http://ecf.deb.uscourts.gov.

11.     On or before three (3) Business Days after entry of this Order, the Debtors will (i) serve by email or first class mail the Auction and Sale Notice on all creditors appearing on the Debtors' creditor matrix (to the extent not already served pursuant to paragraph above); and (ii) subject to applicable submission deadlines and cost considerations, publish the Auction and Sale Notice once in one or more publications as the Debtors deems appropriate, including but not limited to *USA Today* or *The Wall Street Journal* (national edition).

12.     The procedures set forth below regarding the proposed assumption and assignment of certain Assumed Leasehold Interests and Assumed Contracts that may be designated to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder selected at the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code (as defined in the Stalking Horse APA, collectively, the "Assumed Leases and Contracts") in connection with the sale of the Purchased Assets are hereby approved (the "Assumption Procedures").

13.     These Assumption Procedures, as may be modified or supplemented by the Sale Order, shall govern the assumption and assignment of all Assumed Leases and Contracts:

a.     **Cure Notice**. The Cure Notice, substantially in the form attached hereto as **Exhibit 3**, is hereby approved. On or before the date that is three (3) Business Days following the entry of this Bidding Procedures Order, the Debtors shall file with the Bankruptcy Court and serve via first class mail the Cure Notice on all non-Debtor counterparties to all Assumed Leases

and Contracts and their respective known counsel, and provide a copy of same to the Stalking Horse Bidder. The Cure Notice shall inform each recipient that its respective Assumed Lease or Contract may be designated by the Stalking Horse Bidder as either assumed or excluded and the timing and procedures relating to such designation, and, to the extent applicable, (i) the name of the counterparty to the Assumed Lease or Contract (ii) the Debtors' good faith estimates of the cure amounts required in connection with such Assumed Lease or Contract, (iii) the identity of the Stalking Horse Bidder and (iv) the deadline by which any such Assumed Lease or Contract counterparty may file an objection to the proposed assumption and assignment or cure amount, and the procedures relating thereto; provided, however, that service of a Cure Notice does not constitute an admission that such Assumed Lease or Contract is an executory contract or unexpired lease.

b.   **Adequate Assurance**. Upon request by a counterparty under any Assumed Lease or Contract, the Debtors shall serve, by electronic mail, the evidence of adequate assurance of future performance under the Assumed Leases and Contracts provided by the Stalking Horse Bidder, including the legal name of the proposed assignee, the proposed use of any leased premises, the proposed assignee's financial ability to perform under the Assumed Lease or Contract and a contact person with the proposed assignee that counterparties may contact if they wish to obtain further information regarding the Stalking Horse Bidder.

c.    **Objections**. Objections, if any, to the proposed assumption and assignment of any Assumed Lease or Contract, or to the cure amount proposed with respect thereto <u>must</u>: (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any orders of the Bankruptcy Court, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof and (iv) be filed with the Bankruptcy Court and served so as to be **<u>actually received</u>** by the Notice Parties before the Sale Objection Deadline.

d.    Promptly following the Debtors' selection of the Successful Bidder and the Back-Up Bidder, if any, at the conclusion of the Auction, the Debtors shall announce the Successful Bidder and the Back-Up Bidder, if any, and shall file with the Bankruptcy Court a notice of the Successful Bidder and the Back-Up Bidder, if any. If and only if the Stalking Horse Bidder is **<u>not</u>** the Successful Bidder for the Debtors' assets, counterparties to the Assumed Leases and Contracts shall have until **April 27, 2017 at 4:00 p.m.** to object to the assumption and assignment of an Assumed Lease or Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code.* For the avoidance of doubt, if the Stalking Horse Bidder is the Successful Bidder, all adequate assurance objections must be filed by the Sale Objection Deadline.

    e.    **Dispute Resolution**. Any objection to the proposed assumption and assignment or related cure of an Assumed Lease or Contract in connection with the proposed sale that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing (or at a later date as fixed by the Bankruptcy Court) provided that any such objection may be adjourned, in full or in part, by the Debtors with the consent of the Successful Bidder to a later date by listing such adjournment in a notice of agenda or other notice filed on the docket of the Chapter 11 Case and served on the affected counterparty.

14.    Any non-Debtor counterparty to any Assumed Leasehold Interest or Assumed Contract wishing to know the identities of all Qualified Bidders (and therefore the potential Successful Bidder), and the actual Successful Bidder, prior to the Sale Hearing, may provide such non-Debtor counterparty's email address or fax number to Debtors' counsel prior to the Qualified Bid Determination Deadline. All such parties who provide an email address or fax number as provided above (i) will be emailed by Debtors' counsel the identities of all Qualified Bidders the day after the Qualified Bid Determination Deadline; and (ii) if they wish, may request prior to the Auction copies from Debtors' counsel of the adequate assurance information submitted to the Debtors by any Qualified Bidder (which information shall be provided subject to such non-Debtor counterparty's entry into a confidentiality agreement acceptable to such Qualified Bidder). All such non-Debtor counterparties who provide an email address or fax number to Debtors' counsel in accordance with the foregoing will be notified of the Successful Bidder by email or fax (as applicable) from Debtors' counsel immediately (and by no later than two (2) hours) after the Auction concludes.

15.    **Any party who fails to timely file an objection to its scheduled cure amount listed on the Cure Notice or to the assumption and assignment of an Assumed Lease or Contract shall (i) be deemed to have consented to the assumption, assignment and transfer of such of the Assumed Lease or Contract to Stalking Horse Bidder or other Successful Bidder selected at the Auction, if any; (ii) be forever barred from objecting thereto, including (a) making any demands for additional cure amounts or monetary compensation on account of any alleged defaults for the period prior to the applicable objection deadline against the Debtors, their estates or the Stalking Horse Bidder or other Successful Bidder selected at the Auction, if any, with respect to any such Assumed Lease or Contract and (b) asserting that the Stalking Horse Bidder or other Successful Bidder has not provided adequate assurance of future performance as of the date of the Sale Order.**

16.    Except as otherwise provided in this Bidding Procedures Order or the Bidding Procedures, the Debtors further reserve the right as it may reasonably determine to be in the best interests of their estates, subject to conformity with the Bidding Procedures, to:  (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v);waive terms and conditions set forth herein with respect to all bidders; (vi) impose additional terms and conditions with respect to all bidders; (vii) extend the deadlines set forth herein; (viii)or (ix) withdraw the Motion at any time prior to the Sale Hearing with or without prejudice.

17.    The Debtors are authorized and empowered to take all actions necessary to effectuate the relief granted in this Bidding Procedures Order in accordance with the Motion.

18.    Notwithstanding any Bankruptcy Rules to the contrary, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

19.    The Bankruptcy Court retains jurisdiction with respect to all matters arising from, or related to, the implementation and interpretation of this Bidding Procedures Order.

Dated: _____, 2017
      Wilmington, Delaware

                                   _____
                                   UNITED STATES BANKRUPTCY JUDGE

<u>Exhibit 1 to Bidding Procedures Order</u>

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Bostwick Laboratories, Inc., *et al.*,[1] | Case No. 17-_____ (___) |
| Debtors. | (Joint Administration Requested) |

## BIDDING PROCEDURES

The following bidding procedures shall apply in connection with counteroffers for certain assets of Bostwick Laboratories, Inc. (the "Purchased Assets") as described in the Asset Purchase and Sale Agreement between Bostwick Laboratories, Inc. ("Debtors") and Poplar Healthcare, PLLC ("Purchaser") (such agreement, the "Stalking Horse APA"):[2]

**Bid Requirements**

1. Any counteroffer or bid for any of the Purchased Assets (a "Qualified Bid") shall comply with the following requirement:

    1.1. Any Qualified Bid shall provide for a purchase price with a minimum cash or cash equivalent component payable at closing equal to the sum of (i) the purchase price, $5,405,000.00 plus (ii) $500,000 (the "Initial Overbid Requirement").

2. Any Qualified Bid shall further comply with all of the following requirements; provided, that the Debtors may, in their discretion exercised in good faith and without further order of the Bankruptcy Court, waive any such requirements:

    2.1. Any Qualified Bid shall:

        2.1.1. be in writing and be served (both electronic copy and hard copy) on counsel to the Debtors, Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899-1709, Attn: David B. Stratton, strattod@pepperlaw.com and counsel to the Stalking Horse, (a) Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 165 Madison Avenue, Memphis, TN 38103, Attn: E. Franklin Childress, Jr., fchildress@bakerdonelson.com; and (b) Morris Nichols Arsht & Tunnell, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Derek C. Abbott, dabbott@mnat.com

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): (i) Bostwick Laboratories, Inc., a Delaware corporation (3169); and (ii) Bostwick Laboratories Holdings, Inc., a Delaware corporation (1042). The mailing address for the Debtors is 100 Charles Lindbergh Blvd., Uniondale, NY 11553.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the order approving these bidding procedures.

<u>so as to be received</u> on or before 12:00 noon (Prevailing Eastern Time) on April 24, 2017 (the "<u>Qualified Bid Determination Deadline</u>"); and

2.1.2.  be accompanied by (i) a deposit in the amount of ten percent of the initial bid, delivered to an escrow agent (the identity of which is to be determined by the Debtors), by certified or cashier's check or wire transfer, so as to be received on or before April 25, 2017 (the "<u>Good Faith Deposit</u>"); (ii) an executed asset purchase agreement (the "<u>Counteroffer Asset Purchase Agreement</u>") and executed copies of all other transaction documents necessary to effect the proposed transaction (including all schedules) and a copy of the Stalking Horse APA marked to show all changes requested by the bidder (including those related to purchase price); (iii) an executed confidentiality agreement; (iv) written evidence of a commitment for financing or other evidence of the party's ability to consummate the transaction and pay the purchase price at the Closing; (v) if any bid is conditioned on the assumption and assignment of executory contracts and/or unexpired leases, then such party shall provide evidence of its ability to provide adequate assurance of future performance of such contracts or leases along with the bid; (vi) confirm that the offer shall remain open and irrevocable as provided below; (vii) fully disclose the identity of each entity that will be bidding for the assets or otherwise participating in connection with such bid, and the complete terms of any such participation; and (viii) not be conditioned on obtaining financing or the outcome of any due diligence.

2.2.  The entity submitting a Qualified Bid shall enter into joint escrow instructions with the Debtors regarding the deposit delivered in connection with such Qualified Bid.

2.3.  The terms and conditions of the Qualified Bid must be, in aggregate, not materially more burdensome to Debtors than provisions contained in the Stalking Horse APA.

2.4.  Any entity submitting a Qualified Bid shall demonstrate to Debtors' satisfaction, in Debtors' sole discretion exercised in good faith, that such entity is able to consummate the transaction on the date and on the terms contemplated by the Counteroffer Asset Purchase Agreement.

2.5.  The Debtors reserves their right to contact bidders before or after the Qualified Bid Determination Deadline to discuss or clarify the terms of their bid and to indicate any terms which may need to be modified in order to conform the bid to a Qualified Bid or otherwise evaluate the bid.

2.6.  Each bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such bidder's financial wherewithal to consummate and perform obligations in connection with the sale. Failure by the bidder to comply with requests for additional information may be a basis for the Debtors to determine that a bidder is not a Qualified Bidder and that a bid made by a

2

bidder or a Qualified Bidder is not a Qualified Bid. A bidder that submits a Qualified Bid shall be a "Qualified Bidder".

2.7. The Debtors shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders and the Stalking Horse Bidder whether the relevant bids have been determined to be Qualified Bids by no later than one business day after the Qualified Bid Determination Deadline.

2.8. After the Qualified Bid Determination Deadline, the Debtors shall determine which Qualified Bid or combination of Qualified Bids represents the baseline bid for purposes of the Auction (the "Starting Qualified Bid"). No later than one business day prior to the commencement of the Auction, the Debtors shall distribute copies of all Qualified Bids to each Qualified Bidder, and shall indicate therein which Qualified Bid has been selected by the Debtors as the Starting Qualified Bid.

**The Auction**

3. If more than one Qualified Bid by a Qualified Bidder is received by the Qualified Bid Determination Deadline, other than the bid of the Stalking Horse Bidder, an auction (the "Auction") for the Purchased Assets will be conducted by the Debtors at the offices of their counsel, Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899-1709, on April 26, 2017, at 10:00 a.m. (Prevailing Eastern Time), or at such other date and time as determined by the Debtors with the consent of the Stalking Horse Bidder. The Debtors will send notice by electronic mail to the Notice Parties and counsel to any entity that has submitted a Qualified Bid if the date, time, or place of the Auction changes.

4. If, however, no such Qualified Bids other than the bid of the Stalking Horse Bidder are received by the Qualified Bid Determination Deadline, then the Auction will not be held, the Stalking Horse APA shall be designated as the Successful Bid, and the Debtors shall seek approval of the sale of the Assets to the Stalking Horse Bidder in accordance with the Stalking Horse Agreement at the Sale Hearing

4.1. The Auction will be conducted openly and shall be transcribed, audiotaped or videotaped.

4.2. Only Qualified Bidders who have submitted a Qualified Bid for some or all of the assets and their authorized representatives will be eligible to participate at the Auction and to increase their bids.

4.3. The Debtors and their professionals will direct and preside over the Auction.

4.4. At the Auction, the Debtors may announce additional procedural or bidding rules for the Auction so long as the rules are not inconsistent with these Bidding Procedures. The Debtors shall maintain a transcript of all bids made and announced at the Auction.

3

4.5. Each bidder participating at the Auction will certify on record at the commencement of the Auction that it has not and will not engage in any collusion with respect to the bidding or the sale; provided, however, in order to obtain the highest and/or otherwise best bid, the Debtors may engage in discussions with one or more Qualified Bidders if the Debtors determine that the combination of all or a portion of bids received from such Qualified Bidders would yield the highest and/or otherwise best offer at the Auction.

4.6. The Break-Up Fee and Expense Reimbursement will be credited to the Stalking Horse Bidder's bid.

4.7. Each subsequent bid at the Auction must comply with the requirements for a Qualified Bid set forth herein and be at least $50,000.00 greater than the preceding bid (such bid, an "Overbid") or such greater amount as designated by the Debtors.

4.8. During the course of the Auction, the Debtors shall inform each participant which Qualified Bid(s) reflects, in the Debtors' view, the highest or otherwise best offer or combination of offers.

4.9. At the conclusion of the Auction, the Debtors, in the exercise of their business judgment, will select (i) the highest or otherwise best bid for the Purchased Assets (the "Successful Bid" and the bidder who makes the Successful Bid, the "Successful Bidder") and (ii) at the Debtors' discretion, the next highest or otherwise best bid after the Successful Bid (the "Back-Up Bid" and the bidder who makes the Back-Up Bid, the "Back-Up Bidder").

4.10. The Auction will close when the Debtors announce that the Auction has concluded and a Successful Bid and, at the Debtors' discretion, a Back-Up Bid, have been selected.   Notwithstanding anything herein to the contrary, the Debtors are authorized, but not required, to select a Back-Up Bidder and Back-Up Bid.

4.11. The Back-Up Bid, if any, will remain open and binding on the Back-Up Bidder until the earlier of (x) consummation of the Successful Bid with the Successful Bidder and (y) 20 days after the Sale Hearing. If the Successful Bidder fails to consummate the Successful Bid within the time set forth therein, the Debtors will be authorized, but not required, to select the Back-Up Bidder, if any, as the new Successful Bidder, and shall proceed to consummate the Successful Bid of the new Successful Bidder. In such case, the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Debtors and the Debtors shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder.

4.12. If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid at the Auction, (ii) definitive documentation has been executed in respect thereof and (iii) the Court has approved the sale to the Successful Bidder.  Such acceptance by the Debtors is conditioned upon approval by the Court of the Successful Bid and the entry of an order approving such Successful Bid.

4

**Other Terms**

5.   Except to the extent provided for in the Stalking Horse APA and the Bidding Procedures Order, any bidder presenting bids shall bear their own expenses in connection with the proposed sale, whether or not such sale is ultimately approved.

6.   All Good Faith Deposits will be held by counsel to the Debtors. Good Faith Deposits of bidders other than the Successful Bidder and the Back-Up Bidder, if any, will be returned to the unsuccessful bidders within five (5) Business Days after selection of the Successful Bidder and Back-Up Bidder, if any, in accordance with these Bidding Procedures. The Successful Bidder's Good Faith Deposit will be applied to the purchase price of the Successful Bid at closing.

7.   A hearing to consider approval of the sale to Purchaser pursuant to the Stalking Horse APA or another bidder submitting a higher and better offer at the Auction and any objections to such sale will be held on [April 28], 2017, at [ ] a.m./p.m. (Prevailing Eastern Time) at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.

8.   Except as otherwise provided in the Bidding Procedures Order or these Bidding Procedures, the Debtors reserve the right as it may reasonably determine to be in the best interests of their estates, to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) waive terms and conditions set forth herein with respect to all bidders; (vi) impose additional terms and conditions with respect to all bidders; (viii) extend the deadlines set forth herein with the consent of the Stalking Horse Bidder; or (ix) modify the Bidding Procedures, as the Debtors may determine to be in the best interests of their estates.

**Exhibit 2 to Bidding Procedures Order**

**Form of Auction and Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Bostwick Laboratories, Inc., *et al.*,[1] | Case No. 17-_____ (___) |
| Debtors. | (Joint Administration Requested) |

### NOTICE OF SALE BY AUCTION AND SALE HEARING

PLEASE TAKE NOTICE that, on [March 15], 2017, Bostwick Laboratories, Inc. (the "Debtors") in the above-captioned chapter 11 case filed a motion [Docket No. [ ]] (the "Bidding Procedures Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking an order (a) authorizing and approving bidding procedures for the sale of the Purchased Assets, (b) approving the form and manner of notice of the Auction and Sale Hearing, and (c) scheduling an Auction and a Sale Hearing and setting other related dates and deadlines all as further described in the Bidding Procedures Motion. On [ ], the Bankruptcy Court entered an order (the "Bidding Procedures Order")[2] approving certain bidding procedures attached thereto as Exhibit 1 (the "Bidding Procedures").

.         . PLEASE TAKE FURTHER NOTICE that the Debtors are soliciting offers for the purchase of the Purchased Assets. All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order. To the extent there are any inconsistencies between this notice and the Bidding Procedures, the latter shall govern in all respects. If you are a party to an executory contract or lease with the Debtors, you will receive a separate notice that contains relevant dates and other information that may impact you as a party to an executory contract or lease.

PLEASE TAKE FURTHER NOTICE that, if the Debtors receive competing bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") for the Purchased Assets at the offices of their counsel, Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899-1709, on April 26, 2017, at 10:00 a.m. (Prevailing Eastern Time).

PLEASE TAKE FURTHER NOTICE that the Debtors will seek approval of the sale of the Purchased Assets at a hearing scheduled to commence on [April 28], 2017 at [ ] a.m./p.m. (prevailing Eastern Time) (the "Sale Hearing") or as soon thereafter as counsel may be heard, before the Honorable [ ], United States Bankruptcy Judge in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): (i) Bostwick Laboratories, Inc., a Delaware corporation (3169); and (ii) Bostwick Laboratories Holdings, Inc., a Delaware corporation (1042). The mailing address for the Debtors is 100 Charles Lindbergh Blvd., Uniondale, NY 11553.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order.

The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing.

PLEASE TAKE FURTHER NOTICE that objections to the proposed sale of the Purchased Assets (other than with respect to cure amounts and adequate assurance which are subject to a separate notice), if any, must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules and the Local Bankruptcy Rules; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Bankruptcy Court and served so the objection is actually received no later than [April 21], 2017 at 4:00 p.m. (Eastern Time) (the "Sale Objection Deadline") by the following parties (the "Notice Parties"): (a) counsel to the Debtors, Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899, Attn: David B. Stratton; (b) counsel to any committee of unsecured creditors appointed in the Chapter 11 Case; (c) counsel to the Stalking Horse Bidder, (1) Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 165 Madison Avenue, Memphis, TN 38103, Attn: E. Franklin Childress, Jr.; and (2) Morris Nichols Arsht & Tunnell, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Derek C. Abbott; and (d) parties required by Bankruptcy Rule 2002(a).

**PLEASE TAKE FURTHER NOTICE THAT UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND THE BANKRUPTCY COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER HEARING AND NOTICE.**

PLEASE TAKE FURTHER NOTICE that this Notice and the Sale Hearing is subject to the complete terms and conditions of the Motion, the Bidding Procedures Order, and the Bidding Procedures, which shall control in the event of any conflict and the Debtors encourage parties-in-interest to review such documents in their entirety.   Copies of the Motion, the Bidding Procedures Order, the Bidding Procedures and other relevant documents can be found: (a) on the Court's website, http://ecf.deb.uscourts.gov and (b) with the Clerk of the Bankruptcy Court, 824 N. Market St., Wilmington, DE 19801.

Dated: _____, 2017
Wilmington, Delaware

PEPPER HAMILTON LLP

_____
David B. Stratton (DE No. 960)
Evelyn J. Meltzer (DE No. 4581)
John H. Schanne, II (DE No. 5260)
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, DE  19899-709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390

*Proposed Counsel for the Debtors*

2

**Exhibit 3 to Bidding Procedures Order**

**Cure Notice**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Bostwick Laboratories, Inc., *et al.*,[1] | Case No. 17-_____ (___) |
| Debtors. | (Joint Administration Requested) |

NOTICE OF (A) PROPOSED ASSUMPTION AND
ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES IN CONNECTION WITH SALE AND (B) ASSOCIATED CURE COSTS

PLEASE TAKE NOTICE OF THE FOLLOWING:

1.    On [ ], 2017, the above-captioned debtors (the "Debtors") filed the *Debtors' Motion for (I) an Order (A) Authorizing and Approving Bidding Procedures, Break-Up Fee and Expense Reimbursement, (B) Authorizing and Approving the Debtors' Entry Into and Assumption of the Stalking Horse Asset Purchase Agreement, (C) Approving Notice Procedures, (D) Scheduling A Sale Hearing and (E) Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts and (II) an Order (A) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Claims, Liens, Rights, Interests and Encumbrances, (B) Approving the Asset Purchase Agreement and (C) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases* [Docket No. [ ]] (the "Sale Motion") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").[2]

2.    As outlined in the Sale Motion, the Debtors have agreed upon the terms of a Stalking Horse APA with the Stalking Horse Bidder and will seek capable and willing bidders

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): (i) Bostwick Laboratories, Inc., a Delaware corporation (3169); and (ii) Bostwick Laboratories Holdings, Inc., a Delaware corporation (1042).  The mailing address for the Debtors is 100 Charles Lindbergh Blvd., Uniondale, NY 11553.

[2] Capitalized terms not otherwise defined herein have the meanings given them in the Sale Motion.

for all or substantially all of the Debtors' assets (the "Purchased Assets") prior to the Auction date as provided in the Sale Motion and the Bidding Procedures Order.

3.      On [ ], the Bankruptcy Court entered the *Order (I) Authorizing and Approving Bidding Procedures, Break-Up Fee and Expense Reimbursement, (II) Authorizing and Approving the Debtors' Performance of Pre-Closing Obligations Under the Stalking Horse Asset Purchase Agreement, (III) Approving Notice Procedures, (IV) Scheduling a Sale Hearing and (V) Approving Procedures for Assumption and Assignment of Certain Contracts and Leases and Determining Cure Amounts* [Docket No. [ ]] (the "Bidding Procedures Order"). The Bidding Procedures Order specifies, among other things, the procedures regarding the proposed assumption and assignment of the executory contracts and unexpired leases that may be designated to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse Bidder (or other Successful Bidder selected at the Auction, if any) pursuant to section 365(f) of the Bankruptcy Code in connection with the sale of substantially all of the Debtors' assets (the "Sale").

4.      A list of the Debtors' executory contracts and unexpired leases that are subject to potential assumption and assignment (the "Assumed Leases and Contracts") in connection with the Sale and the cure costs associated therewith (the "Contract and Cure Schedule") is attached to this notice (the "Cure Notice") as **Schedule 1**. The Debtors believe that any and all defaults (other than the filing of this Chapter 11 Case) and actual pecuniary losses under the Assumed Leases and Contracts can be cured by the payment of the cure amounts listed on Contract and Cure Schedule.

5.      Objections, if any, to the proposed assumption and assignment of any of the executory contracts or unexpired leases listed on the Contract and Cure Schedule or to the

cure amount proposed with respect thereto must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules and any order orders of the Bankruptcy Court; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof; (iv) be filed with the Bankruptcy Court no later than **[April 21], 2017 at 4:00 p.m. (Eastern Time)** (the "Assignment and Cure Objection Deadline"); provided, that if and only if the Stalking Horse Bidder is **not** the Successful Bidder for the Debtors' assets, counterparties to the Assumed Leases and Contracts shall have until **[April 27], 2017 at 12:00 p.m. (Eastern Time)** to object to the assumption and assignment of an Assumed Lease or Contract *solely on the issue of whether the Successful Bidder or Back-Up Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code*; and (v) be served so as to be actually received no later than the Assignment and Cure Objection Deadline, as applicable, by the following parties: (a) counsel to the Debtors, Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 N. Market Street, P.O. Box 1709, Wilmington, DE 19899, Attn: David B. Stratton; (b) the Office of the United States Trustee for the District of Delaware; (c) counsel to the any official committee of unsecured creditors appointed in the Chapter 11 Case; and (d) counsel to the Stalking Horse Bidder, (a) Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, 165 Madison Avenue, Memphis, TN 38103, Attn: E. Franklin Childress, Jr., fchildress@bakerdonelson.com; and (b) Morris Nichols Arsht & Tunnell, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899-1347, Attn: Derek C. Abbott, dabbott@mnat.com

      6.      Any non-Debtor counterparty to any Assumed Leasehold Interest or Assumed Contract wishing to know the identities of all Qualified Bidders (and therefore the

4

potential Successful Bidder), and the actual Successful Bidder, prior to the Sale Hearing, may provide such non-Debtor counterparty's email address or fax number to Debtors' counsel prior to the Qualified Bid Determination Deadline. All such parties who provide an email address or fax number as provided above (i) will be emailed by Debtors' counsel the identities of all Qualified Bidders the day after the Qualified Bid Determination Deadline; and (ii) if they wish, may request prior to the Auction copies from Debtors' counsel of the adequate assurance information submitted to the Debtors by any Qualified Bidder (which information shall be provided subject to such non-Debtor counterparty's entry into a confidentiality agreement acceptable to such Qualified Bidder). All such non-Debtor counterparties who provide an email address or fax number to Debtors' counsel in accordance with the foregoing will be notified of the Successful Bidder by email from Debtors' counsel immediately (and by no later than two (2) hours) after the Auction concludes.

       7.     The Sale Hearing will be held in the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, Wilmington, Delaware 19801, on **[April 28], 2017, at [ ] a.m./p.m. (Eastern Time)**, or such other date and time that the Bankruptcy Court may later direct. Any objection to the proposed assumption and assignment or related cure of an executory contract or unexpired lease listed on the Contract and Cure Schedule in connection with the proposed sale that remains unresolved as of the Sale Hearing shall be heard at the Sale Hearing (or at a later date as fixed by the Bankruptcy Court) provided that any such objection may be adjourned, in full or in part, by the Debtors to a later date by listing such adjournment in a notice of agenda or other notice filed on the docket of the Chapter 11 Cases and served on the affected counterparty.

5

8.    *Any party who fails to timely file an objection to its scheduled cure amount listed on the Contract and Cure Schedule or to the assumption and assignment of an executory contract or unexpired lease listed on the Contract and Cure Schedule shall (i) be deemed to have waived and released any and all rights to assert against the Debtors, the Stalking Horse Bidder or other Successful Bidder selected at the Auction, if any, cure amounts different from the cure amounts listed on Contract and Cure Schedule and (ii) be forever barred from objecting thereto, including (a) making any demands for additional cure amounts or monetary compensation on account of any alleged defaults for the period prior to the applicable objection deadline against the Debtors, their estates or the Stalking Horse Bidder or other Successful Bidder selected at the Auction, if any, with respect to any such an executory contract or unexpired lease and (b) asserting that the Stalking Horse Bidder or other Successful Bidder has not provided adequate assurance of future performance as of the date of the Sale Order.*

9.    The Stalking Horse Bidder or other Successful Bidder selected at the Auction, if any, may determine to add or exclude any the executory contracts or unexpired leases listed on the Contract and Cure Schedule to be assumed and assigned under the Stalking Horse APA or Counteroffer Asset Purchase Agreement through the Closing Date; provided, however, the non-Debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice.

10.    Copies of the Bidding Procedures Order and other relevant documents can be found: (a) on the Court's website, http://ecf.deb.uscourts.gov and (b) with the Clerk of the Bankruptcy Court, 824 N. Market St., Wilmington, DE 19801.

60989580_2

11.    The Debtors' decision to sell, assign and transfer to the Stalking Horse Bidder or other Successful Bidder selected at the Auction, if any, the Assumed Leases and Contracts is subject to Court approval and the Closing Date of the Sale. Accordingly, absent such Closing Date, the Assumed Leases and Contracts shall not be deemed to be sold, assigned and/or transferred, and shall in all respects be subject to further administration under the Bankruptcy Code. The inclusion of any document on the Contract and Cure Schedule shall not constitute or be deemed to be a determination or admission that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code (all rights with respect thereto being expressly reserved). Nor shall the inclusion of any document constitute an admission of liability by the Debtors or their estates.

Dated: _____, 2017          PEPPER HAMILTON LLP
Wilmington, Delaware

                                     _____
                                     David B. Stratton (DE No. 960)
                                     Evelyn J. Meltzer (DE No. 4581)
                                     John H. Schanne, II (DE No. 5260)
                                     Hercules Plaza, Suite 5100
                                     1313 N. Market Street
                                     P.O. Box 1709
                                     Wilmington, DE  19899-709
                                     Telephone:  (302) 777-6500
                                     Facsimile:  (302) 421-8390

                                     *Proposed Counsel for the Debtors*

7

## SCHEDULE 1

**Contract and Cure Schedule**

60989580_2